UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYONS PARTNERSHIP, L.P. and HIT
     ENTERTAINMENT, INC.,

                   Plaintiffs,        Docket No. 07-7121 (LLS)(THK)

        v.

PARTY ART PRODUCTIONS INC., ROBERTA
     HERMAN, PHILIP HERMAN, PARTY
     POOPERS, INC., MARLA MASE, 57TH
     STREET PARTY CORP. D/B/A SAVE
     THE DATE, JENNIFER GILBERT, THE
     MAGIC AGENCY INC., SHELLEY
     CARROLL and ERIC SILVEY D/B/A
     ERIC SILVEY ENTERTAINMENT,

                  Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS
FOR RECONSIDERATION OF ORDER PERMITTING DEPOSITIONS OF COUNSEL,
AND FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION ............................................................................................................... 1
PROCEDURAL HISTORY .................................................................................................. 3
LEGAL ARGUMENT .......................................................................................................... 5
I.      STANDARDS ON MOTION FOR RECONSIDERATION AND FOR A
        PROTECTIVE ORDER ............................................................................................ 5
II.     RECONSIDERATION OF THE DECEMBER 17, 2007 ORDER IS NECESSARY
        BECAUSE THE COURT OVERLOOKED CONTROLLING PRECEDENT ....................... 6
        A.     Defendants Have Not Demonstrated Any Specific Need to Depose
              Plaintiffs' Counsel .............................................................................. 8
              1.   Defendants' Affirmative Defenses do not Justify Attorney Depositions ............... 9
              2.   Defendants' Unfiled Motion for Disqualification Would Not Justify Attorney
                  Depositions. ....................................................................... 10
              3.   Defendants' Unfiled Rule 11 Motion Would Not Justify Attorney
                  Depositions. ....................................................................... 12
        B.     The Ordered Attorney Depositions Sought Would Undoubtedly
              Expose Information Protected by the Attorney Work Product
              Doctrine and Attorney Client Privilege ....................................................... 14
        C.     Depositions of Plaintiffs Counsel Are Improper Because Defendants
              Failed to Exhaust the Discovery Methods Already Permitted by the
              Court and Plaintiffs Have Been Precluded From Taking Any Discovery. ................. 15
III.    ALTERNATIVELY, IF THE COURT DOES NOT RECONSIDER AND VACATE ITS
        DECEMBER 17, 2007 ORDER AS REQUESTED HEREIN, A PROTECTIVE ORDER
        SHOULD BE ENTERED TO PROTECT AGAINST THE DISCLOSURE OF
        PRIVILEGED OR OTHER CONFIDENTIAL INFORMATION. ....................................... 17
        A.     Defendants Should Be Precluded From Taking Depositions of Plaintiffs Counsel
              Until They Demonstrate The Specific Need for Such Depositions
              and the Fact That Such Evidence Cannot Be Obtained Through Other Means .......... 18
        B.     The Depositions of Plaintiffs' Counsel Should be Limited. ...................................... 19
        C.     Defendants Should Be Precluded From Obtaining Discovery From Sources That
              Impinge Upon the Attorney Client Privilege, Attorney Work Product or
              Disclose Confidential Business Information. ........................................................ 20
IV.    CONCLUSION ................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

Alcon Labs., Inc. v. Pharmacia Corp.,
225 F. Supp. 2d 340 (S.D.N.Y. 2002) ....................................................................................7

Apple Corps v. International Collectors Soc.,
15 F. Supp. 2d 456 (D.N.J. 1998) ........................................................................................9

Bennett Silvershein Assoc. v. Furman,
776 F. Supp. 800 (S.D.N.Y. 1991) ....................................................................................11

Bohack Corp. v. Gulf & Western Indus., Inc.,
607 F.2d 258 (2d Cir.1979) ...............................................................................................11

Brown v. Party Poopers, Inc.,
2001 WL 1380536 (S.D.N.Y. July 9, 2001) .......................................................................13

Cartier v. Symbolix, Inc.,
386 F. Supp. 2d 354 (S.D.N.Y. 2005) ..................................................................................9

Diversified Group, Inc. v. Daugerdas,
304 F.Supp.2d 507, 514 (S.D.N.Y. 2003) ......................................................................14,15

Evans v. Artek,
715 F.2d 788 (2d Cir.1983) ...............................................................................................11

Feacher v. International Hotels Group,
2007 WL 3104329 (N.D.N.Y. Oct. 22, 2007) ...................................................................14

Fidelity & Deposit Co. of Maryland v. McCulloch,
168 F.R.D. 516 (E.D.Pa. 1996) ..........................................................................................18

Forrest v. Par Pharm., Inc.,
46 F. Supp. 2d 244 (S.D.N.Y.1999) ...................................................................................11

Genentech, Inc. v. United States Int'l Trade Comm'n,
122 F.3d 1409 (Fed.Cir. 1997) ..........................................................................................21

Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.,
1983 WL 425 (S.D. Fla. 1983) .............................................................................................9

Indianapolis Colts v. Mayor & City Council of Baltimore,
775 F.2d 177 (7th Cir. 1985) .............................................................................................12

{A061112.DOC\6}

In re Connecticut,
   179 Misc.2d 623 (N.Y. Sup. Ct. Nassau Cty. 1999)....................................................22

In re Subpoena Issued to Dennis Friedman,
   350 F.3d 65 (2d Cir. 2003) ....................................................................................passim

In re Terrorist Acts on September 11, 2001,
   454 F. Supp. 2d 220 (S.D.N.Y. 2006) ...........................................................................6

Lopez v. City of New York,
   2007 WL 869590 (E.D.N.Y. Mar. 20, 2007)..................................................................22

Lyons Partnership v. AAA Entertainment,
   1999 WL 1095608 (S.D.N.Y. Dec. 3, 1999) ..................................................................13

Mitchell v. Fishbein,
   227 F.R.D. 239 (S.D.N.Y. 2005) ....................................................................................6

Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.,
   125 F.R.D. 578 (N.D.N.Y. 1998) ..................................................................................18

Paddington Partners v. Bouchard,
   34 F.3d 1132 (2d Cir. 1994) ...........................................................................................9

Patsy's Italian Restaurant, Inc. v. Banas,
   2007 WL 174131 (E.D.N.Y. Jan. 19, 2007) ...............................................................8, 16

Register.com, Inc. v. Domain Registry of America, Inc.,
   2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002) ..............................................................13

Revson v. Cinque & Cinque, P.C.,
   221 F.3d 71 (2d Cir. 2000) ............................................................................................14

Riddell Sports, Inc. v. Brooks
   1995 WL 20260 (S.D.N.Y. Jan. 19, 1995)......................................................................15

S & S Hotel Ventures Ltd. P'Ship v. 777 S.H. Corp.,
   69 N.Y.2d 437 (1987) ....................................................................................................11

Schrader v. CSX Transportation, Inc.,
   70 F.3d 255 (2d Cir. 1995) ..........................................................................................5, 6

Sea Tow Intern., Inc. v. Pontin,
   2007 WL 4180679 (E.D.N.Y. 2007) ..............................................................................11

Sea Tow Intern, Inc. v. Pontin,
   2007 WL 3409416 (Nov. 9, 2007)...............................................................................7, 15

iii

Sussman v. Bank of Israel,
    56 F.3d 450 (2d Cir. 1995) ........................................................................................14

United States v. Adlman,
    134 F.3d 1194 (2d Cir.1998) ...................................................................................21

United States v. Adlman,
    68 F.3d 1495 (2d Cir. 1995) ...................................................................................21

United States v. Nobles,
    422 U.S. 225, 238-39 (1975) .............................................................................21, 22

United States v. Yonkers Bd. of Educ.,
    946 F.2d 180 (2d Cir. 1991) .....................................................................................6

Varsity Gold, Inc. v. Elite Fundraising LLC,
    2005 WL 2246468 (W.D. Wash. Sept. 15, 2005) .....................................................13

West Peninsular Title Co. v. Palm Beach County,
    132 F.R.D. 301 (S.D. Fla. 1990) ..............................................................................18

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ...........................................................................................................6, 18

Fed. R. Civ. P. 45 ...............................................................................................................6

## INTRODUCTION

Plaintiffs respectfully seek reconsideration of the Court's Order entered December 17, 2007 (the "Order"), attached as Exhibit 28 to the accompanying Declaration of Matthew Kaplan ("Kaplan Dec."). The Order permits defendants to depose three of plaintiffs' attorneys. The Court has overlooked relevant Second Circuit precedent disfavoring attorney depositions – particularly at the onset of an action – and rejecting them unless the party seeking them provides evidence showing the compelling relevance and necessity for such depositions.

In this action, plaintiffs assert copyright infringement and trademark and trade dress infringement *inter alia* against various businesses and individuals alleged to have provided entertainment services using counterfeit costumes. These costumes infringe upon plaintiffs' rights in the Barney®, Baby Bop®, BJ®, and Bob the Builder® characters. Plaintiffs' investigators obtained clear evidence establishing that defendants provide children's entertainment services using such counterfeit costumes. Now, confronted with evidence of liability, defendants assert – before any discovery or depositions, and without a shred of credible evidence – that plaintiffs "overreached" by investigating defendants' wrongdoing.

Prematurely granting defendants' request, the Court failed to consider Second Circuit precedent establishing preconditions for and limitations on the extraordinary discovery device of depositions of opposing counsel. In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003). Indeed, because the Court refused to permit defendants to file their threatened Rule 11 motion, plaintiffs have not even briefed how baseless that motion is. Nevertheless, the Court issued the Order permitting unrestricted depositions of plaintiffs' counsel. Defendants' attempted diversion would unnecessarily create the risk that defendants' counsel will question plaintiffs' counsel regarding information protected by the attorney client privilege and attorney work product doctrine. Given defendants' express intent to move to

{A061112.DOC\6}

disqualify plaintiffs' counsel, permitting unrestricted depositions of plaintiffs' counsel greatly prejudices plaintiffs' ability to protect privileged information and retain their counsel of choice. This ploy to should not be countenanced, certainly not on defendants' thin factual record. Consequently, the portion of the December 17, 2007 Order permitting the depositions of Ralph J. Sutton, Esq., Mason A. Weisz, Esq. and Lisa K. Digernes, Esq. should be vacated.

In the event the Court does not vacate the portion of the Order permitting depositions of plaintiffs' counsel, plaintiffs respectfully request the Court enter a Protective Order:  (a) precluding defendants from taking the depositions of plaintiffs' counsel until they specifically identify the information they seek from plaintiffs' counsel and demonstrate that there are no other ways for defendants to obtain the information sought, including submission of declarations by all defendants of exactly what they allege plaintiffs investigators said or did which "overreached" their investigation; or (b) limiting the topics of deposition of plaintiffs' counsel to:  (1) testimony into counsel's personal knowledge about the investigation of the defendants herein; and (2) testimony regarding the instructions given by plaintiffs' counsel to the plaintiffs' investigators.  Further, plaintiffs request entry of a protective order to prohibit discovery from any source (including testimony of plaintiffs' counsel and plaintiffs' investigators) regarding: (1) plaintiffs' investigative strategies and techniques; (2) plaintiffs' investigation of and litigation with parties other than the defendants herein; and (3) plaintiffs' settlement communications as these categories of information are work product and/or attorney/client privilege protected.

2

## PROCEDURAL HISTORY[1]

Prior to the Initial Conference on November 9, 2007, Mr. Ingber, counsel for Defendants Party Art Productions Inc., Roberta Herman & Philip Herman and The Magic Agency Inc. and Shelley Carroll presented (but did not file) a joint Rule 11/Disqualification Motion (the "Unfiled Motion") to the Court as an attachment to a letter. As plaintiffs' counsel pointed out, Mr. Ingber improperly presented the Unfiled Motion before the end of the 21-day "safe harbor" required by Rule 11. Kaplan Dec., ¶ 9. In it, Mr. Ingber made wide-ranging claims that plaintiffs' investigators had somehow "tricked" his clients into offering the infringing costumes in issue. Remarkably, the declaration from Mr. Ingber's client Ms. Herman said absolutely nothing about the alleged conduct of any investigator. Instead, she simply claimed that someone who worked for her had received "emails and/or phone calls" from an investigator. Declaration of Roberta Herman ("Herman Dec."), ¶ 7. Ms. Herman did not deny that she or her employee had responded by offering the infringing costume in issue, nor did she attempt to explain the e-mail which plaintiffs' investigator received from her business enclosing a photograph of a counterfeit costume. Kaplan Dec., Ex. 4. Instead, Ms. Herman claimed that her business "did not notice or retain these e-mails…," Herman Dec. ¶ 8, although she had no trouble identifying that "SuperNina624" was the e-mail address used by plaintiff's investigator and that the investigator had been "seeking "Bob the Builder" and/or "Clifford" character costumes. Id., ¶ 7.

Citing the Herman Dec., Mr. Ingber's Unfiled Motion characterized plaintiffs' allegations as "an error or a scam…" Memorandum of Law in Support of the Unfiled Motion ("Rule 11 Br."), p. 14, ¶ (viii) and concluded that plaintiffs' counsel had "attempted acts of

---

[1] The Procedural History is set forth in more detail in the Kaplan Declaration.

solicitation and entrapment." <u>Id.</u>, at 24. Yet it said absolutely nothing about what the investigator allegedly did or said.

During the Initial Conference, the Court acknowledged that it reviewed the Unfiled Rule 11/Disqualification Motion "in [its] entirety" and did not find any seductive e-mails or other indicia that would indicate an improper investigation by plaintiffs. Kaplan Dec ¶ 13. However, the Court orally ruled that to get to the "truth" quicker, "discovery" should progress in "baby steps." <u>Id.</u>, ¶ 16. The Court did not conduct a Discovery or Rule 26 Conference, issue a Scheduling Order, or ask for or receive briefing about when attorney depositions are justified or the extent of plaintiffs' privileges. Instead, the Court orally directed plaintiffs to produce the investigation files of the defendants, identify by November 13, 2007 the investigators who contacted defendants, and produce those investigators for deposition by the end of November, 2007. Concluding the November 9, 2007 conference, the Court noted that such informal non-discovery should start with the investigators, and only if it was proven to be "necessary" thereafter would the Court consider moving "up the ladder" to permit discovery concerning how the investigators were trained. <u>Id.</u>, ¶ 17.

Pursuant to the Court's direction, plaintiffs produced their investigation files.[2] Ignoring the Court's initial instructions about how discovery should progress, Defendants' counsel instead asserted "discovery deficiencies" and declined to take the investigators' depositions as the Court had directed. During a November 26, 2007 in-person conference, the Court then ruled it would require plaintiffs' counsel, Mr. Sutton and Ms. Digernes, to testify

---

[2]    Earlier, the Court ruled at the end of the Initial Conference that Mr. Ingber's Unfiled Motion should not be filed, saying it is "on ice." Kaplan Dec. ¶ 17. Paragraph 3 of the December 17, 2007 Order suggests that the Court intended to order limited discovery concerning defendants' Rule 11 and disqualification motions. In fact, the only parties who have actually taken steps in furtherance of such a motion are the Party Art Production Defendants and Magic Agency Defendants, who served (but have not filed) their joint motion; the other defendants have only indicated that they would like to bring a similar motion. It is impossible to know what documents are relevant to such future motions, and neither the Court nor the moving defendants identified documents which are relevant to those motions. Nor have any defendants served document requests. Nevertheless, Plaintiffs complied with the Order, producing documents concerning the investigations of all defendants herein.

regarding the instructions given to the investigators.    The Court did not explain why a deposition of opposing counsel was justified, let alone before plaintiffs' investigators or the defendants had been deposed.  The Court then directed defendants to prepare a proposed form of order memorializing the Court's ruling.  When defendants' counsel disagreed about what had occurred in Chambers on November 26, the Court conducted another conference on December 14, 2007 to address the scope of discovery.  During that conference, the Court summarily ruled that it would now also permit defendants to depose Mason A. Weisz, Esq., another of plaintiffs' counsel.  All such depositions were ordered on the strength of the Unfiled Motion, without a filed opposition by plaintiffs, without reference to the Second Circuit law controlling attorney depositions, and without any record of the proceedings prior to December 14, 2008.  Nor did the Court request any briefing on any legal or factual issues before issuing the Order, the first written discovery order in this case.  Consequently, the Court has overlooked controlling law requiring defendants to establish why they should be granted the extraordinary relief of depositions of plaintiffs' counsel.  Defendants made no showing of legal or factual relevance or of necessity - the high legal burden required for depositions of opposing counsel.  Plaintiffs respectfully request that the Court revoke the portion of its December 17, 2007 Order directing the depositions of plaintiffs' counsel.

## **LEGAL ARGUMENT**

### I.    STANDARDS ON MOTION FOR RECONSIDERATION AND FOR A PROTECTIVE ORDER.

A party moving for reconsideration of an order must demonstrate that the Court has overlooked factual matters or controlling precedent presented on the underlying motion and that might reasonably be expected to have altered the conclusion reached.  See Schrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995) S.D.N.Y. L. Civ. R. 6.3.  In support of a

motion for reconsideration, a moving party may introduce additional relevant case law not previously presented to or reviewed by the Court. See Schrader, 70 F.3d at 257.

Regarding the entry of a protective order, while parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b), the Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … that the disclosure or discovery not be had; … that certain matters not be inquired into, or that the scope of disclosure or discovery be limited to certain matters; … [and] that a trade secret or other confidential research, development, or commercial information not be revealed …." Fed. R. Civ. P. 26(c)(1)(A), (D), (G). See also Fed. R. Civ. P. 45(c)(3)(A)(iii) (courts are required to quash a subpoena requiring disclosure of privileged or other protected matter).

The party seeking a protective order has the burden of showing good cause for the issuance of that order. In re Terrorist Acts on September 11, 2001, 454 F. Supp. 2d 220, 221 (S.D.N.Y. 2006) (quoting In Re Agent Orange Product Liability Litigation, 821 F.2d 139, 145 (2d Cir. 1987)). "The appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectable interests of the party from whom discovery is sought." Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005); (quoting Apex Oil Co. v. DiMauro, 110 F.R.D. 490, 496 (S.D.N.Y. 1985)).

## II.    RECONSIDERATION OF THE DECEMBER 17, 2007 ORDER IS NECESSARY BECAUSE THE COURT OVERLOOKED CONTROLLING PRECEDENT

In entering the December 17, 2007 Order, the Court failed to consider the well-developed case law in this Circuit that "depositions of opposing counsel are disfavored." United States v. Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir. 1991). The rationale behind the

6

presumption against attorney depositions is that "even a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." Alcon Labs., Inc. v. Pharmacia Corp., 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002) (quoting Madanes v. Madanes, 199 F.R.D. 135, 151 (S.D.N.Y. 2001)). Consequently, a request to depose the opposing party's attorney "must be weighed by balancing … the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." Sea Tow Int'l, Inc. v. Pontin, ___ F.R.D. __, 2007 WL 3409416, at * 2 (E.D.N.Y. Nov. 9, 2007) (citing Madanes).

In the seminal case, In re Subpoena Issued to Dennis Friedman ("Friedman"), the Second Circuit explained that in determining whether a lawyer's deposition is appropriate, "the judicial officer supervising discovery should take into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." 350 F.3d 65, 72 (2d Cir. 2003). The Second Circuit then articulated a nonexclusive list of factors to be considered:

> **[1] the need to depose the lawyer, [2] the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, [3] the risk of encountering privilege and work-product issues, and [4] the extent of discovery already conducted.**

> Id. (emphasis added). See also Resqnet.Com, Inc. v. Lansa, Inc., 2004 WL

1627170 (S.D.N.Y. 2004) (applying Friedman and denying request to depose opposing counsel). Because the Court did not address the Friedman factors in granting defendants the right to conduct depositions of plaintiffs' counsel, the December 17, 2007 Order granting such depositions must be vacated.

7

**A.    Defendants Have Not Demonstrated Any Specific Need to Depose Plaintiffs' Counsel**

Defendants have not demonstrated any need that justifies the extraordinary relief of permitting the depositions of plaintiffs' counsel.  Nor have defendants presented any evidence from their own clients on any issue going to a defense on the merits of the action.  See Herman Dec. ¶¶ 7-8 ("Upon information and belief, one of our summer hires received emails and/or phone calls from a woman who identified herself as "SuperNina624" seeking "Bob the Builder" and/or "Clifford" character costumes."  "I did not notice or retain these emails…").  Defendants never explain why all information relevant to the issues in this case, e.g. statements by and to the investigators, or even the instructions given to the investigators, cannot be obtained from their own personal knowledge or by deposing the investigators themselves – something defendants have yet to do.  See Patsy's Italian Restaurant, Inc. v. Banas, 2007 WL 174131 (E.D.N.Y. Jan. 19, 2007) (holding that party did not establish need for taking opposing counsel's deposition because it failed to provide valid reasons why the information had not or could not be obtained by any means other than deposing opposing counsel).  Indeed, even if a pattern of "entrapping" questions constituted a defense, shouldn't defendants first be obliged to testify that they were entrapped by such a pattern?  Yet defendants' answers and the Unfiled Motion say nothing about what the investigators said or how defendants responded.

It is clear from the allegations and arguments set forth in Mr. Ingber's Unfiled Rule 11 and Disqualification Motion presented to the Court that the motion is merely an improper attempt to disqualify plaintiffs' chosen counsel – which does not justify the depositions of plaintiffs' counsel.[3]  "The fact that an attorney is deposed, or that the adversary claims the

---

[3]    In fact, Mr. Ingber's request to take plaintiffs' counsel's depositions contradicts his own statement that the grounds for sanctions and disqualification are "amply supported."  Rule 11 Br., p. 26 (emphasis added).  If the bases of his Rule 11 motion are "amply supported", then defendants need no further discovery on the issue – particularly extraordinary discovery as burdensome, prejudicial and disfavored as depositions of opposing counsel.

8

{A061112.DOC\6}

testimony is or may be material, does not establish the attorney should be a witness at trial or must be disqualified.  This remedy is not to be lightly imposed."  Bogan v. Northwestern Mut. Life Ins. Co., 152 F.R.D. 9, 14 (S.D.N.Y. 1993).  Similarly, none of the affirmative defenses asserted by defendants support the need for deposition of plaintiffs' counsel cite to caselaw showing need for defenses to be specific and factual.  See Paddington Partners v. Bouchard, 34 F.3d  1132, 1138 (2d Cir. 1994) (The object of discovery is not to determine if a party has a claim or defense, but to determine the factual basis for its claim or defense).

>1.    **Defendants' Affirmative Defenses do not Justify Attorney Depositions.**

Claiming without substantiation that the investigation was somehow improper, defendants seek to depose three attorneys from plaintiffs' counsel's firm.  Defendants never explain what relevant facts those depositions could establish.  What is clear is that "entrapment" is not a defense as a matter of law.  Entrapment is not available in any civil action between private persons.  Gucci Shops, Inc. v. Dreyfoos & Associates, Inc., 1983 WL 425 at *3 (S.D. Fla. 1983).  Yet the only defense which Mr. Ingber (or any other defense counsel) has asserted which could possibly be supported by evidence about the investigation is "unclean hands."  See Answer, p. 21.  It is questionable, however, whether this is even a valid defense.[4]

---

[4]    In Cartier v. Symbolix, Inc., 386 F. Supp. 2d 354 (S.D.N.Y. 2005), the court rejected the assertion of an unclean hands defense where plaintiff used an undercover investigator to order and obtain infringing watches, ruling that:

> plaintiffs' employment of the private investigator is a matter collateral to the subject matter of the litigation – trademark infringement.  In any event, "[t]he prevailing understanding in the legal profession is that a public or private lawyer's use of an undercover investigator to detect ongoing violations of the law is not ethically proscribed, especially where it would be difficult to discover the violations by other means.

Id. (citing Gidatex, 82 F. Supp. 2d at 123 (emphasis added); Apple Corps v. International Collectors Soc., 15 F. Supp. 2d 456, 475 (D.N.J. 1998).  The court explained that an unclean hands defense can apply where a plaintiff "'is guilty of conduct involving fraud, deceit, unconscionability or bad faith' related to plaintiffs' use of the trademark."  Id. at 362 (quoting Gidatex S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999)).  Here, defendants make no allegations whatsoever regarding plaintiffs' use of their own trademarks.

9

Even if defendants could assert a valid defense to their infringement, information from the lawyers whom defendants seek to depose would not establish those defenses. Those lawyers did not directly participate in the investigation of the defendants herein. None of these lawyers ever even spoke to defendants (except for Mr. Weisz, who briefly engaged in privileged settlement discussions[5] with Defendant Roberta Herman. Defendants have no evidence to the contrary. Any evidence elicited from plaintiffs' counsel therefore cannot establish any pleaded defense.

Nor should defendants be permitted to go on a fishing expedition to construct additional, unpleaded defenses by taking the depositions of plaintiffs' counsel. Defendants' counsel assert that their clients were somehow "tricked" into offering infringing costumes, suggesting an unpleaded defense of entrapment. As explained above, entrapment is not a defense. It cannot be the basis to permit depositions of plaintiffs' counsel. See Resqnet.Com, Inc., 2004 WL 1627170, at *5 (rejecting attorney deposition sought on the basis of an unpleaded defense of inequitable conduct).

In short, the law requires a party to identify a specific need for specific information which may only be obtained from the opposing counsel before permitting opposing counsel to be deposed. Resqnet.Com, Inc., 2004 WL 1627170, at *5. Defendants cannot do so, as they do not plead any defenses that justify depositions of plaintiffs' counsel.

**2.    Defendants' Unfiled Motion for Disqualification Would Not Justify Attorney Depositions.**

Similarly, the Court improperly granted depositions of plaintiffs' counsel to support the unfiled disqualification motion. While Mr. Ingber's Unfiled Motion cites DR 5-102, the "witness-advocate" rule, that motion is a naked attempt to turn plaintiffs' counsel into fact

---

[5] In violation of FRE 408 and Rule 11, Mr. Ingber submitted his Unfiled Motion to the Court, citing in support an attorney letter clearly marked as privileged. See Kaplan Dec., Ex. 4.

{A061112.DOC\6}

witnesses in order to disqualify them. Courts reject this strategy of bootstrapping an unneeded attorney deposition into a disqualification motion. See Sea Tow Intern., Inc. v. Pontin, 2007 WL 4180679, at *5 (E.D.N.Y. 2007) (Nov. 19, 2007) (quashing subpoena for deposition of plaintiff's counsel and denying related motion to disqualify plaintiff's counsel under DR 5-102).

        In this Circuit, motions to disqualify opposing counsel are viewed with disfavor precisely because they are "'often interposed for tactical reasons' and result in unnecessary delay." Bennett Silvershein Assoc. v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (quoting United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (collecting cases)). The Second Circuit has "been loathe to separate a client from his chosen attorney," Bohack Corp. v. Gulf & Western Indus., Inc., 607 F.2d 258, 263 (2d Cir.1979), noting that "[t]he delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance ...." Id. The party seeking disqualification thus bears a "heavy burden" of demonstrating that disqualification is warranted. Evans v. Artek, 715 F.2d 788, 794 (2d Cir.1983). Indeed, New York courts interpret DR 5-102(a) to require disqualification "only when it is likely that the testimony to be given by the witness **is necessary**." S & S Hotel Ventures Ltd. P'Ship v. 777 S.H. Corp., 69 N.Y.2d 437, 445-46 (1987) (emphasis added). An attorney's "testimony may be relevant and even highly useful but still not strictly necessary" for purposes of disqualification. Forrest v. Par Pharm., Inc., 46 F. Supp. 2d 244, 248 (S.D.N.Y.1999) (denying motion for disqualification because attorney deposition was not necessary). In contrast here, merely trying to develop grounds for a disqualification motion does not justify depositions of plaintiffs' counsel.

11

### 3.    Defendants' Unfiled Rule 11 Motion Would Not Justify Attorney Depositions.

Similarly, it is improper to justify depositions of plaintiffs' counsel based upon any defendants' unfiled Rule 11 motion.  It is well settled that "Rule 11 motions … should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings."  Advisory Committee Notes for 1993 Amendments to FRCP 11.  See Indianapolis Colts v. Mayor & City Council of Baltimore, 775 F.2d 177, 183 (7th Cir. 1985).  Otherwise, any defendant could stymie a case by insisting on discovery about how the complaint came to be drafted, filed and served, rather than dealing with a plaintiff's claims of liability.  Yet that is exactly what defendants have done in this case.

Even if the Court allowed it to be filed, the Unfiled Motion is demonstrably frivolous, no matter what testimony could be elicited from plaintiffs' counsel.  Four simple facts establish the frivolity of Mr. Ingber's Unfiled Motion, all of which are demonstrated by exhibits to that motion:

(1)    Defendant Herman e-mailed to plaintiffs' investigator a photograph of an infringing knock-off "Bob the Builder" costume as part of Ms. Herman's offer to provide an entertainer wearing a knock-off "Bob the Builder" costume;

(2)    Defendant Carroll e-mailed to plaintiffs' investigator an offer to provide an entertainer wearing an infringing knock-off "Barney" costume, refusing to provide pictures because of the "licensing issue" and admitting had provided "Barney" costumes previously;[6]

(3)    Both defendants offered counterfeit costumes depicting plaintiffs' Protected Characters using the trademarked names of the Protected Characters to plaintiffs' investigators; and

---

[6]    Indeed, while discussing Defendant Shelley Carroll's e-mail during the Initial Conference, the Court remarked that Ms. Carroll's statement in her e-mail regarding her awareness of the "licensing issue" is typically evidence supporting a finding of willful infringement.  Kaplan Dec. ¶ 13.

     (4)    Neither Defendants Herman nor Carroll deny that Plaintiffs' investigators were sent the above-described e-mails – in fact, they presented copies of those e-mails to the Court.[7]

Kaplan Dec., Ex. 3-4.

These facts clearly establish plaintiffs' good faith basis for bringing their lawsuit against these defendants.  See Brown v. Party Poopers, Inc., 2001 WL 1380536 (S.D.N.Y. July 9, 2001) (awarding statutory damages under the Copyright Act and damages under the Lanham Act against Defendant Party Poopers for offering infringing costumes depicting another copyrighted and trademarked character owned by another rightsholder); Lyons Partnership v. AAA Entertainment, 1999 WL 1095608 (S.D.N.Y. Dec. 3, 1999) (awarding plaintiff trademark and copyright damages in a default judgment against two defendants where defendants were found to be renting unauthorized "Barney" character dinosaur costumes based on declarations of investigators who were offered costumes during phone calls made to defendants).

Indeed, even without the "smoking gun" photograph of Ms. Herman's knock-off "Bob the Builder" costume or Ms. Carroll's e-mail confirming that she previously dealt in knock-off "Barney" costumes (or similar evidence obtained from a number of the other defendants), defendants' false and misleading descriptions of their goods and services made over the phone to plaintiffs' investigators are sufficient to ground a false advertising claim under Section 43(a)(1)(B) of the Lanham Act.  See Register.com, Inc. v. Domain Registry of America, Inc., 2002 WL 31894625 at *12 (S.D.N.Y. Dec. 27, 2002) ("false statements or representations need not be made in a classic advertising campaign, but may consist of more informal types of promotion such as the mailer, emails, and telephone calls used by defendants here"); Varsity

---

[7]    *Nowhere in Ms. Herman's declaration does she state that the investigation was done improperly or that she even recalled being called by plaintiffs' investigator.  Instead, she focuses her argument on her confidential settlement negotiations with Mr. Weisz.  Ms. Carroll did not submit a declaration in support of the Unfiled motion.*

Gold, Inc. v. Elite Fundraising LLC, 2005 WL 2246468 (W.D. Wash. Sept. 15, 2005) (granting preliminary injunction where defendant's promotion over the phone of fund-raising cards was likely to mislead consumers).

Defendants thus have no need for the testimony of plaintiffs' counsel to support a doomed Rule 11 motion. Plaintiffs did not assert their claims against defendants herein until their investigation yielded sufficient evidence to support of claim of infringement. Plaintiffs' attempts to engage in settlement discussions prior to litigation is good policy -- not grounds for Rule 11 sanctions. See Sussman v. Bank of Israel, 56 F.3d 450, 456 (2d Cir. 1995)(reversing Rule 11 sanctions awarded under the theory that pre-litigation settlement communications were evidence that the complaint was filed for an improper purpose); Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 80 (2d Cir. 2000) (reversing award of Rule 11 sanctions based on pre-litigation settlement communications because "an attorney is entitled to warn the opposing party of his intention to assert colorable claims, as well as to speculate about the likely effect of those claims being brought").

    **B.**    **The Ordered Attorney Depositions Sought Would Undoubtedly Expose Information Protected by the Attorney Work Product Doctrine and Attorney Client Privilege.**

The unrestricted depositions of plaintiffs' counsel are also improper under the third Friedman factor because such depositions would inevitably encroach upon information protected by the attorney work-product doctrine and the attorney client privilege. Plaintiffs' investigation strategies, techniques and activities at a minimum constitute attorney work product. Feacher v. International Hotels Group, 2007 WL 3104329 at *4 (N.D.N.Y. Oct. 22, 2007). Similarly, communications between plaintiffs and their counsel regarding the investigations and the litigation strategy regarding which targets justified suit, when and why all constitute attorney-client privileged communications that defendants are precluded from discovering. Diversified

14

Group, Inc. v. Daugerdas, 304 F.Supp.2d 507, 514 (S.D.N.Y. 2003). Further, settlement information, such as plaintiffs' counsel's assessment of the extent of defendants' liability and potential damages, constitutes attorney work product. Riddell Sports, Inc. v. Brooks, 1995 WL 20260 at *1 (S.D.N.Y. Jan. 19, 1995).

Given defendants' proclivity to expand the scope of discovery beyond that which the Court permits, granting defendants the unfettered right to depose plaintiffs' counsel unnecessarily requires plaintiffs to risk exposure of their privileged communications and of their counsel's work product and will unnecessarily burden the adversary process, as plaintiffs will object to any attempt to obtain testimony regarding privileged information. Moreover, because defendants have never identified any specific topics for which they wish to depose plaintiffs' counsel, the Court should not assume that the subjects about which defendants depose plaintiffs' counsel will not raise issues of attorney-client privilege or attorney work product. See Sea Tow Int'l, 2007 WL 3409416, at * 5 (finding third Friedman factor weighed against permitting attorney deposition because defendants had not identified the topics for deposition); see also ResQNet, 2004 WL 1627170, at *6 (finding that even where counsel seeking attorney deposition identified topical areas for deposition, "the risk that privilege and attorney work-product issues might arise were [the attorney's] deposition to go forward is not negligible.") This Friedman factor therefore also weighs against permitting the depositions of plaintiffs' counsel.

**C.     Depositions of Plaintiffs Counsel Are Improper Because Defendants Failed to Exhaust the Discovery Methods Already Permitted by the Court and Plaintiffs Have Been Precluded From Taking Any Discovery.**

Finally, the last Friedman factor weighs against permitting the depositions of plaintiffs' counsel. Courts in this Circuit rarely permit an attorney deposition, and they typically do so only if the proponent of the deposition has conducted substantial other discovery which indicates that an attorney deposition is relevant and needed. See e.g., ResQnet.com, 2004 WL

15

1627170, at *5 (S.D.N.Y. 2007) ("[a]s ... [defendant] has not specified particular subjects not already covered by the prior discovery and has not indicated why the information has not been or cannot be obtained through means other than ... [plaintiffs' counsel's] testimony, it has not established the need for ... [plaintiffs' counsel's] deposition ...").  Here, defendants have not exhausted all avenues of discovery prior to seeking the depositions of plaintiffs' counsel.

Defendants should not be permitted to take depositions of plaintiffs' counsel because they failed to exhaust the discovery methods that the Court has already granted them. As explained above, plaintiffs failed to provide their own declarations showing a constant pattern of improper behavior or any at all.  Instead of providing any evidence, or even taking the depositions which the Court directed occur before "going up the ladder," Kaplan Dec.¶ 17, defendants improperly petitioned the Court again for depositions of plaintiffs' counsel.

Further, without papers, briefing or explanation, the Court rejected plaintiffs' counsel's argument that, if discovery of plaintiffs' counsel must occur at this stage, less intrusive discovery devices than depositions can be used.  Kaplan Dec., ¶ 54.  In Friedman, however, the Second Circuit advocated a "flexible" approach of using interrogatories or other discovery methods initially and sometimes in lieu of a deposition.  350 F.3d at 72.  See also Patsy's Italian Restaurant, Inc., 2007 WL 174131 at *3 (E.D.N.Y. 2007) (quashing attorney deposition subpoena "because the information sought can be obtained from alternative means, such as through document requests and interrogatories)."

By permitting defendants the opportunity to take depositions of plaintiffs' counsel without requiring them to establish the specific needs for taking the depositions of plaintiffs' counsel and demonstrate why defendants are unable to obtain such information from other sources, the Court has failed to consider the Second Circuit precedent set forth in Friedman, rewarded defendants for lack of a factual record and for the improper presentation of Mr.

16

Ingber's Unfiled Rule 11 motion, and has permitted parties' discovery to be side-swiped by an effort to disqualify counsel. Unrestricted depositions of plaintiffs' counsel would greatly increase the potential for disclosure of privileged information, as defendants are explicitly trying to make plaintiffs' counsel into fact witnesses. Using discovery to generate testimony to disqualify plaintiffs' counsel is an improper litigation tactic. Consequently, the Court should vacate the December 17, 2007 Order requiring depositions of Mr. Sutton, Mr. Weisz and Ms. Digernes.

**III.  ALTERNATIVELY, IF THE COURT DOES NOT RECONSIDER AND VACATE ITS DECEMBER 17, 2007 ORDER AS REQUESTED HEREIN, A PROTECTIVE ORDER SHOULD BE ENTERED TO PROTECT AGAINST THE DISCLOSURE OF PRIVILEGED OR OTHER CONFIDENTIAL INFORMATION.**

In the event the Court is still inclined to permit the depositions of plaintiffs' counsel, plaintiffs respectfully request entry of a protective order precluding defendants from taking those depositions until they have demonstrated that there are no other means for defendants to obtain the information sought through those depositions, including by submission of declarations by all defendants of the precise nature of overreaching in the investigation and a showing that plaintiffs' counsel possesses relevant information not obtainable from other sources such as by deposition of investigators, and to limit the scope of those attorney depositions, as the December 17, 2007 Order merely orders plaintiffs produce Mr. Sutton, Ms. Digernes and Mr. Weisz for deposition. Further, plaintiffs seek a protective order precluding defendants from obtaining discovery from any source regarding plaintiffs' investigative strategies and techniques, plaintiffs' investigation of and litigation and settlement with parties other than the defendants herein, and plaintiffs' settlement communications – all of which constitute attorney-work product and/or highly confidential business information.

17

As explained above, the Court has discretion to issue a protective order upon a showing of "good cause." Fed. R. Civ. P. 26(c). In <u>Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.</u>, 125 F.R.D. 578 (N.D.N.Y. 1998), the court granted plaintiff's motion for a protective order to stay the deposition of plaintiff's counsel explaining: "Because deposition of a party's attorney is usually both burdensome and disruptive, **the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c) protective order**." (quoting <u>N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.</u>, 117 F.R.D. 83, 85 (M.D.N.C. 1987) (emphasis added)). Likewise, demands for discovery of information protected by the attorney work product doctrine or other privilege constitutes good cause for the entry of a protective order. <u>See</u> <u>Fidelity & Deposit Co. of Maryland v. McCulloch</u>, 168 F.R.D. 516, 522 (E.D.Pa. 1996) (finding request for attorney-client privileged information sufficient good cause to grant a protective order under Rule 26(c)). <u>See also</u> <u>West Peninsular Title Co. v. Palm Beach County</u>, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (explaining deposition of attorney is presumed to threaten attorney-client privilege, and this presumption may constitute good cause for a protective order).

### A.    Defendants Should Be Precluded From Taking Depositions of Plaintiffs Counsel Until They Demonstrate The Specific Need for Such Depositions and the Fact That Such Evidence Cannot Be Obtained Through Other Means.

First, if the Court is not inclined to reconsider its prior order, defendants should still be precluded from taking the depositions of plaintiffs' counsel until they have demonstrated their entitlement to such discovery under the <u>Friedman</u> factors; including that they have shown a specific need for such attorney depositions and that they cannot obtain the information needed by any other, less intrusive means. As explained in depth above, depositions of a party's counsel are generally used as a litigation tactic to attempt to turn opposing counsel into a fact witness

18

who could be subject to disqualification, and this case is no exception.  Moreover, deposing an

attorney increases the risk that the questioning could intrude upon information protected by the

attorney client privilege and/or attorney work product doctrine, particularly where, as here,

defendants have admitted they will seek such information.

           To date, defendants have presented no evidence of wrongdoing in plaintiffs'

investigations, offering only defendants' counsel's oral, unsworn allegations during conferences

before the Court and unsupported attorney rhetoric in written correspondence.  Kaplan Dec. ¶ 12

(Plaintiffs and their counsel were accused of running an "extortion scheme, and their actions

constituted "champerty" and "barratry"); Rule 11 Br., p. 3 (Plaintiffs' investigations are "the

legal equivalent of pointing a gun at someone and demanding money to avoid unpleasant

consequences.")  Indeed, no defendant has submitted a sworn declaration or any other evidence

suggesting that plaintiffs' investigation was done improperly.  Defendant Herman's Declaration

submitted with the Unfiled Motion does not even assert any impropriety in plaintiffs'

investigation.  It says nothing about the content of calls from Investigator Sherman, and does not

deny that Party Art sent a photograph of infringing costume to the investigator.  Defendants <u>still</u>

have not taken depositions of plaintiffs' investigators, who could testify regarding what they

said, and their instructions.  Those depositions should obviate the need to depose the lawyers

themselves – as the Court previously directed during the Initial Conference.  Defendants should

not be permitted to depose plaintiffs' counsel unless and until they have demonstrated a need to

do so.

       **B.**      <u>**The Depositions of Plaintiffs' Counsel Should be Limited.**</u>

           If the Court is still inclined to permit the depositions of plaintiffs' counsel (or if

defendants are somehow able to demonstrate their need for such depositions), the Court should

enter a protective order limiting the topics about which defendants can depose plaintiffs' counsel.

The Court clearly stated that it does not want this litigation to turn into a fact- finding mission to support a class action lawsuit by one or more of defendants' counsel. The Court has further been clear that discovery regarding the investigations should be limited to the investigation of defendants herein and not a broader review of plaintiffs' enforcement program. However, no protections have been included in that portion of the December 17, 2007 Order ordering production of Plaintiffs' counsel.

Therefore, the Court should enter a protective order limiting the topics of deposition of plaintiffs' counsel to: (1) testimony into counsel's personal knowledge about the investigation of the defendants herein; and (2) testimony regarding the instructions given by plaintiffs' counsel to the plaintiffs' investigators related to the investigation of defendants herein, if any.

### C. Defendants Should Be Precluded From Obtaining Discovery From Sources That Impinge Upon the Attorney Client Privilege, Attorney Work Product or Disclose Confidential Business Information.

Finally, the Court should enter a protective order precluding defendants from obtaining discovery from any source (including testimony of plaintiffs' counsel and plaintiffs' investigators) regarding: (1) plaintiffs' investigative strategies and techniques; (2) plaintiffs' investigation of and litigation with parties other than the defendants herein; and (3) plaintiffs' settlement communications. These categories of information are clearly protected by the work product doctrine and/or the attorney-client privilege.

Here, the December 17, 2007 Order merely directs that plaintiffs' investigators and Mr. Sutton, Ms. Digernes and Mr. Weisz must be produced for deposition without any limitations on the scope of questions that may be asked. While the Court has stated that discovery should be limited to plaintiffs' investigation of the defendants herein, defendants' counsel has repeatedly attempted to expand the scope of discovery beyond what the Court has

{A061112.DOC\6}

ordered.  Defendants have openly expressed their desire to discover the strategy behind

plaintiffs' intellectual property enforcement program, plaintiffs' counsel's subjective beliefs and

thoughts as to the strengths of and legal theories behind plaintiffs' claims, and to gain access to

plaintiffs' investigations of and settlements and litigations with nonparties.[8]  Kaplan Dec. Ex. 14.

Such information is clearly protected by either the attorney work product doctrine or attorney-

client privilege.  The attorney work product doctrine "is intended to preserve a zone of privacy in

which a lawyer can prepare and develop legal theories and strategy 'with an eye towards

litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134

F.3d 1194, 1196 (2d Cir.1998); Genentech, Inc. v. United States Int'l Trade Comm'n, 122 F.3d

1409, 1415 (Fed.Cir. 1997) ("'The work product privilege protects the attorney's thought

processes and legal recommendations.'")(quoting Zenith Radio Corp. v. United States, 764 F.2d

1577, 1580 (Fed.Cir.1985)).  To earn work product protection, the material must (1) be a

document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was

prepared by or for a party, or by or for his representative.  United States v. Adlman, 68 F.3d

1495, 1900-01 (2d Cir. 1995).  Moreover, as the Supreme Court noted in United States v.

Nobles, materials prepared by investigators or communications with investigators may be

protected by the attorney-work product doctrine as well:

---

[8]        Indeed, Mr. Ingber has gone as far as to threaten to file a class action lawsuit against plaintiffs and
Mr. Adelman has unsuccessfully requested disclosure of the names of other investigated businesses.  However,
because defendants have never provided any evidence that plaintiffs' investigation was improper, either as to
themselves or as to others, it is clear that defendants are trying to avoid having to actually litigate the claims against
them by going on a fishing expedition concerning others.

> [T]he [work-product] doctrine is an intensely practical one, grounded in the realities of litigation on our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

422 U.S. 225, 238-39 (1975)[9]

      To subject plaintiffs' counsel and investigators to such improper questioning—particularly in the absolute absence of any evidence of any misconduct by plaintiffs — would impose a substantial hardship on plaintiffs' ability to protect their valuable copyright and trademark assets and would interfere with plaintiffs' right to select and confide in their counsel of their choice.  Moreover, a protective order precluding defendants from seeking discovery into those areas should streamline the litigation and save judicial resources, because plaintiffs will not have to continually object to defendants' planned improper expansion of the scope of discovery.

      Consequently, plaintiffs seek a Protective Order:

(a)    prohibiting discovery from any source (including testimony of plaintiffs' counsel and plaintiffs' investigators) of : (1) plaintiffs' investigative strategies and techniques; (2) plaintiffs' investigation of and litigation with parties other than the defendants herein; and (3) plaintiffs' settlement communications; and either:

(b)    precluding defendants from taking the depositions of plaintiffs' counsel until they demonstrate that there are no other ways for defendants to

---

[9]    see also Lopez v. City of New York, 2007 WL 869590, at *2 (E.D.N.Y. Mar. 20, 2007) (witness statements secured by an investigator working at the request of plaintiffs' counsel and prepared in anticipation of litigation qualified as work product); In re Connecticut, 179 Misc.2d 623 (N.Y. Sup. Ct. Nassau Cty. 1999) (work performed by investigative firm acting as agent of attorneys was protected by attorney client privilege).  Thus, information regarding the investigations of other businesses, information regarding plaintiffs' investigation strategies and techniques, and the thought processes and mental impressions of plaintiffs' counsel are all protected by the attorney work product doctrine (and the attorney-client privilege to the extent that such information was discussed with plaintiffs).

{A061112.DOC\6}

obtain the information sought, including submission of declarations by all

defendants of exactly what they allege plaintiffs investigators said or did

which "overreached" their investigation; or

(c)     limiting the topics of deposition of plaintiffs' counsel to: (1) testimony

into counsel's personal knowledge about the investigation of the

defendants herein; and (2) testimony regarding the instructions given by

plaintiffs' counsel to the plaintiffs' investigators.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court reconsider

and vacate its December 17, 2007 Order directing plaintiffs to produce Ralph J. Sutton, Esq.,

Lisa K. Digernes, Esq. and Mason A. Weisz, Esq. for deposition and enter the above-described

protective order.


Dated   New York, New York
        January 4, 2008

                                COWAN, DeBAETS, ABRAHAMS &
                                SHEPPARD, LLP

                                By:   _____
                                      Toby M.J. Butterfield
                                      Matthew A. Kaplan
                                41 Madison Avenue- 34th Floor
                                New York, New York 10010
                                Tel: (212) 974-7474
                                *Attorneys for Plaintiffs*
                                *Lyons Partnership, L.P., et al.*

23

{A061112.DOC\5}