UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYONS PARTNERSHIP, L.P. AND HIT ENTERTAINMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PARTY ART PRODUCTIONS INC., ROBERTA HERMAN, PHILIP HERMAN, PARTY POOPERS, INC., MARLA MASE, 57TH STREET PARTY CORP. D/B/A SAVE THE DATE, JENNIFER GILBERT, THE MAGIC AGENCY INC., SHELLEY CARROLL, ERIC SILVEY D/B/A ERIC SILVEY ENTERTAINMENT, <br><br> Defendants. | Docket No. 07 Civ. 7121 <br><br> **DECLARATION OF MATTHEW A. KAPLAN** |

I, MATTHEW A. KAPLAN, declare as follows:

1. I am an associate in the law firm of Cowan, DeBaets, Abrahams & Sheppard LLP ("CDAS"), counsel for Plaintiffs Lyons Partnership, L.P. and HIT Entertainment, Inc. ("Plainitffs") in the above-captioned action. I make this declaration in support of Plaintiffs' Motions for Reconsideration of Order Permitting Depositions of Counsel, and for a Protective Order. The statements made below are true of my own personal knowledge and if called upon to testify, I could and would competently testify thereto.

2. The above-captioned action, filed on August 10, 2007, asserts copyright infringement and trademark and trade dress infringement *inter alia* against Defendant Eric Silvey dba Eric Silvey Entertainment ("Silvey", represented by Brian J. Greenfield, Esq.); Defendants Party Art Productions Inc., Roberta Herman & Philip Herman (collectively, "Party Art

Defendants," represented by Mark J. Ingber, Esq.) and The Magic Agency Inc. and Shelley Carroll (collectively, "Magic Agency Defendants", represented by Mr. Ingber); Defendants Party Poopers, Inc. and Marla Mase (collectively, "Party Poopers Defendants", represented by Gary Adelman, Esq.), and Defendants 57th Street Party Corp dba Save the Date and Jennifer Gilbert (collectively, "Save the Date Defendants", represented by Michael D. Pinnisi, Esq.)(all Defendants collectively referred to as "Defendants")

3.  Specifically, Plaintiffs' Complaint alleges that each of the Defendants used or rented, offered to use, rent or provide and/or induced others to use or rent adult-sized costumes that infringe upon Plaintiffs' rights in the Barney®, Baby Bop®, BJ®, and Bob the Builder® characters for children's entertainment services. (the "Protected Characters")

**Activities Prior to the Initial Conference**

4.  On August 17, 2007, the Court entered an Order for an Initial Pretrial Conference, scheduling the conference for November 9, 2007.

5.  After he advised me that he was retained as counsel, I attempted to engage Mr. Ingber in settlement discussions regarding the Party Art Defendants. To that end, I provided to Mr. Ingber, on a confidential basis in the hopes of working toward a settlement of the matter, documents supporting Plaintiffs' claims against his clients. A true and complete copy of my September 7, 2007 e-mail to Mr. Ingber is attached hereto as Exhibit 1.

6.  Similarly, after he had been retained as counsel for the Magic Agency Defendants, I again sent Mr. Ingber on a confidential basis for settlement purposes, documents supporting Plaintiffs' claims against the Magic Agency. A true and complete copy of my October 17, 2007 e-mail to Mr. Ingber is attached hereto as Exhibit 2.

7.  Incredibly, Mr. Ingber took the documents that I provided to him on a confidential basis for settlement purposes, and attached them to a joint motion for Rule 11 sanctions and to disqualify this law firm, which he served on this firm via e-mail (and without any supporting exhibits) on October 19, 2007. A true and complete copy of Mr. Ingber's e-mail and attachments is attached hereto as Exhibit 3. (For the supporting exhibits, see Exhibit 4).

8.  This motion, made on behalf of both the Party Art Defendants and Magic Agency Defendants, was supported only with an attorney declaration and a declaration of one of the Party Art Defendants, Roberta Herman. Importantly, nowhere in Ms. Herman's declaration does she allege any wrongdoing regarding Plaintiffs' investigation; in fact, she ignores the investigation completely, and only alleges how plaintiff attempted to engage her in settlement discussions. Mr. Ingber's brief on his unfiled Rule 11 motion then argues that the regularity of Plaintiffs' settlement calls somehow constitutes wrongdoing by Plaintiffs.

9.  Despite Rule 11's prohibition on presenting a motion under the rule during the 21-day "safe harbor" period, on November 6, concededly prior to the end of that period, Mr. Ingber sent the Court a "courtesy" copy of his unfiled Rule 11/disqualification motion requesting that the Court consider it prior to the Initial Conference. The next day, Mr. Ingber sent Plaintiffs' counsel a copy of his cover letter to the court and a copy of the unfiled Rule 11/disqualification motion, with supporting exhibits. Included in the supporting exhibits was a letter sent by Plaintiffs' counsel to defendant Party Art Productions, Inc. dated April 26, 2006. This letter states that Plaintiffs have discovered that Party Art Productions, Inc. has infringed on the intellectual property rights of Plaintiffs, and offers instructions for a fair settlement of this matter. Plaintiffs' counsel objected to Mr. Ingber's inclusion of this privileged settlement communication in his submission to the Court. A true and complete copy of Mr.

3

Ingber's November 6, 2007 cover letter to the Court and the exhibits supporting the unfiled Rule 11/disqualification motion are attached hereto as Exhibit 4.

10. Also on November 7, I wrote to the Court disputing the propriety of Mr. Ingber's presentation of his unfiled Rule 11 motion, but wishing to advance the case, I neither moved to strike Mr. Ingber's letter nor refused to attend the conference. A true and complete copy of Plaintiffs' November 7, 2007 letter to the Court is attached as Exhibit 5.

**November 9, 2007 Initial Conference**

11. The Initial Conference was held before Judge Stanton in the Robing Room of his Courtroom without a court reporter. Counsel for all parties attended the Initial Conference. My colleague Toby Butterfield, a partner at CDAS, a CDAS law clerk and I appeared on behalf of Plaintiffs.

12. After Plaintiffs were given an opportunity to explain the basis of their lawsuit against Defendants, Mr. Pinnisi claimed that Plaintiffs' anti-counterfeiting program was an "extortion scheme," although he did not provide or cite to any evidence to back his argument except for unsworn statements by his clients that they did not provide costume characters. Likewise, Mr. Pinnisi claimed that the actions of Plaintiffs' and their counsel constituted "champerty" and "barratry." Accordingly, Mr. Pinnisi asserted that defendants were entitled to discovery regarding who Plaintiffs' investigators are and what instructions they were given, and stated his desire to get discovery from the persons who hired the investigators.

13. The Court responded that he had read Mr. Ingber's Rule 11/ disqualification motion papers "in their entirety" and did not find any seductive e-mails or other indicia that would indicate an improper investigation on behalf of Plaintiffs. In fact, the Court specifically stated that Defendants' "counter-attack" was undercut by Exhibit N to Mr. Ingber's

unfiled motion, which is an e-mail in which Defendant Shelley Carroll writes to Plaintiffs' investigator that "My vendor will not send out pics of the costumes due to the licensing issue…Barney and Blues Clues are great. We have used them for Morgan Stanley, Daiwa Securities, Bear Sterns, etc." The Court then noted that statements such as the one made by Ms. Carroll regarding the "licensing issue" have been used in other copyright and trademark infringement actions as a sufficient basis for showing willful infringement.

14. Mr. Ingber then stated that he intended to file a class action lawsuit against Plaintiffs, and argued that since the investigators were employed by Plaintiffs' law firm and they are the sole witnesses to the infringing activities, CDAS should be disqualified.

15. Plaintiffs' counsel responded that the advocate-witness rule cited by Mr. Ingber is inapplicable because it does not cover non-lawyers working for the firm. In an attempt to resolve these extraneous issues and get to the facts underlying this case, Mr. Butterfield and I offered to make the investigators available for deposition so that discovery could proceed in the normal course.

16. The Court then orally ruled that to get to the "truth" quicker, discovery should progress in "baby steps." The Court directed that Plaintiffs produce the investigation files of the Defendants in the instant action and any instructions given to the investigators, identify by November 13, 2007 the investigators who contacted Defendants, and produce those investigators for deposition by the end of November. The Court then ruled it would hold a conference on December 7, 2007 to determine whether there were any issues that required additional discovery. The Court did not conduct a Rule 26 Conference, issue a Scheduling Order.

17. In concluding the November 9 conference, the Court noted that discovery should start with the investigators and only thereafter, and only if it was necessary would the

Court consider moving "up the ladder" to permit discovery concerning how the investigators were trained. At the end of the conference, Mr. Ingber asked whether he was permitted to file his Rule 11/disqualification motion. The Court rejected his request, specifically stating that the Rule 11/ disqualification motion was "on ice."

18. The Court thus directed discovery to progress via depositions of the investigators and their files concerning Defendants <u>only</u>. Only <u>after</u> such discovery, and only if then shown to be necessary, would Plaintiffs be permitted to take discovery from Defendants concerning whether the mechanisms behind Plaintiffs' investigation were proper.

**Despite Plaintiffs Following the Court's Directions, Defendants Avoid Taking the Investigators' Depositions within the Time Required by Requesting Discovery Beyond What the Court Permitted**

19. On November 12, 2007, because Plaintiffs believed that some of the documents the Court directed them to produce were at a minimum confidential, if not protected by the attorney work product doctrine, Plaintiffs sent Defendants' counsel a standard Stipulated Confidentiality and Protective Order for execution. A true and complete copy of Plaintiffs November 12, 2007 letter to counsel is attached hereto as Exhibit 6.

20. Defendants' counsel not only rejected Plaintiffs' proposed Stipulated Confidentiality and Protective Order in full, they refused to negotiate the terms or even propose alternate terms. True and complete copies of e-mails received from Defendants' counsel are attached as Exhibit 7.

21. Given Defendants' unwillingness to permit any protection of Plaintiffs' confidential documents, plaintiffs were compelled to request a Court conference to discuss Plaintiffs' proposed Protective Order. A copy of my November 13, 2007 letter to that effect is attached hereto as Exhibit 8.

{A061067.DOC\2}

22. On November 13, pursuant to the Court's oral direction, Plaintiffs also identified the investigators who investigated the Defendants and requested that Defendants' counsel provide them with available dates for the investigator depositions. A copy of Plaintiffs' November 13, 2007 letter to counsel is attached hereto as Exhibit 9.

23. Later that day, Mr. Pinnisi opposed Plaintiffs' request for a Protective Order in a letter laden with inflammatory rhetoric yet completely devoid of facts supporting his contentions. For example, Mr. Pinnisi alleges that Plaintiffs engaged in unspecified "unseemly conduct." A copy of Mr. Pinnisi's November 13, 2007 letter to the Court is attached hereto as Exhibit 10.

24. Plaintiffs responded on November 14th, disputing Mr. Pinnisi's statements, explaining that Defendants' refusal to agree to a Confidentiality and Protective Order is stymieing Plaintiff's efforts to move the case forward by producing documents and scheduling depositions. A true and complete copy of Plaintiffs' November 14, 2007 letter to the Court is attached hereto as Exhibit 11.

25. On November 15, the Court entered a Confidentiality Order providing, in pertinent part: "no party shall use or disclose for any purpose except this case any matters that another party has designated as confidential." A true and complete copy of the November 15, 2007 Confidentiality Order is attached hereto as Exhibit 12.

26. Plaintiffs produced their investigation files later that day. A copy of my transmittal letter is attached hereto as Exhibit 13.

27. The next day, both Mr. Pinnisi and Mr. Ingber sent e-mails claiming deficiencies in Plaintiffs' November 15, 2007 document production. Specifically, both assert

7

that the production lacked *inter alia* instructions, notes, and question lists given to or used by the investigators. True and complete copies of those e-mails are attached hereto as Exhibit 14.

28. On November 19, 2007, Plaintiffs counsel disputed the claimed deficiencies. A true and complete copy of Plaintiffs' November 19, 2007 letter to counsel is attached hereto as Exhibit 15.

29. After days of trying to coordinate everyone's schedules, on November 19, 2007, Plaintiffs noticed dates for the investigator depositions. A true and complete copy of Plaintiffs' November 19, 2007 letter to counsel is attached hereto as Exhibit 16.

30. As soon as deposition dates were noticed, Mr. Pinnisi wrote another rhetoric-laden letter to the Court requesting an indefinite adjournment of the investigator depositions, citing his claimed deficiencies in document production. Once again without citing a single fact, Mr. Pinnisi claimed that the investigation was improper and conjectured that any lack of documentation "would be powerful evidence that [CDAS] knew that it was behaving improperly, and thus took extraordinary pains to make sure it left no paper trail of its conduct." A true and complete copy of Mr. Pinnisi's November 20, 2007 letter to the Court is attached hereto as Exhibit 17.

31. Before Plaintiffs could respond in writing, the Court advised the parties the next day that if they could not resolve their disputes, they would have to appear at an in-person conference on November 26, 2007.

32. I called Mr. Pinnisi in an attempt to work out the discovery issues. With the exception of the scope of discovery of documents regarding the investigation program, I believed that we had reached a consensus on the majority of the issues raised in Mr. Pinnisi's November 20, 2007 letter. I confirmed my understanding of the conversation in a letter sent to

counsel on November 21, 2007. A true and complete copy of the November 21, 2007 letter to Defendants is attached hereto as Exhibit 18.

33. However, after the close of business on November 23, the day after Thanksgiving, Mr. Pinnisi sent a letter to all counsel listing new additional deficiencies that he had not previously raised and stated eight new "requirements" for Plaintiffs to meet to avoid the conference on the following Monday. For example, even though Defendants had not yet deposed either of Plaintiffs' investigators, Mr. Pinnisi further demanded that Ralph J. Sutton, Esq. and Lisa K. Digernes, Esq., both attorneys at CDAS, be produced for deposition. A true and complete copy of Mr. Pinnisi's November 23, 2007 letter is attached hereto as Exhibit 19.

34. In the early afternoon of Monday, November 26, I responded to Mr. Pinnisi's letter in an attempt to resolve some of his new issues; however, given the number of the objectionable materials requested by Defendants, it was clear that a conference would be necessary.

**November 26, 2007 Conference**

35. This conference took place in the Robing Room without a court reporter.

36. Mr. Pinnisi, who drafted the deficiency letters and submitted them to the Court, was not present. All other counsel were present. Toby Butterfield and I appeared on behalf of Plaintiffs.

37. During the conference, the Court addressed Mr. Pinnisi's list of claimed deficiencies one by one.

38. When discussing the scope of the work product doctrine and attorney client privilege, Plaintiffs went through the standard of work product doctrine protection. The Court acknowledged that there "may be a good deal to the privilege," and further stated that it

did not want to impair the privilege. Consequently, the Court directed that discovery was limited to the investigators who spoke with defendants, and thought it to be "unwarranted" to permit the discovery of other investigators who did not participate in the investigation of Defendants despite Defendants' requests to the contrary.

39.     Mr. Ingber then requested the deposition of Attorney Mason Weisz, claiming that Attorney Weisz harassed his client during settlement negotiations, although his client's declaration in the unfiled Rule 11 motion made no such accusation. The Court orally denied Mr. Ingber's request and reiterated that the discovery would be limited to the investigators and whoever trained them.

40.     However, notwithstanding 1) the Court's acknowledgement that the attorney client privilege or work product doctrine may cover the types of information requested by Defendants; 2) the fact that Defendants still had not taken the court-ordered depositions of Plaintiffs' investigators; 3) the fact that Defendants presented nothing more than rhetoric; and 4) that the Court noted that the information presented to the Court by Defendants "can hardly excite the reaction that they are trying to stimulate," the Court changed its prior position that discovery should proceed by "baby steps," and ordered Plaintiffs not only to produce Attorney Sutton for deposition, but stated that he should be produced first. Further, because Attorney Digernes' name appeared once on a confidential memo produced by Plaintiffs regarding instructions given to investigators, the Court directed that she be produced for deposition as well.

41.     When Plaintiffs again requested that they be permitted the opportunity to begin discovery, the Court reiterated its plan to provide defendants with discovery of the investigations first.

42. Finally, the Court directed Defendants to prepare the proposed form of order, which Mr. Adelman offered to do.

### **Defendants Again Improperly Attempt to Broaden the Scope of Discovery**

43. Late that week, I still had not received a draft order, so on Thursday, November 29, 2007, I e-mailed Defendants' counsel requesting the status of the draft order. I also requested that defendants' counsel provide their availability to go forward with the depositions they supposedly wanted to take. A copy of my November 29, 2007 e-mail is attached hereto as Exhibit 20.

44. Mr. Adelman almost immediately responded that we would receive the draft order on Friday. However, he strangely asserted that the Court did not require that the order be prepared, despite the Court's request that defendants prepare a draft order for his signature. A copy of Mr. Adelman's November 29, 2007 email is attached hereto as Exhibit 21.

45. On December 1, contradicting Mr. Adelman's position that the Court-requested order was only voluntary, Mr. Pinnisi sent an e-mail, stating that he would not provide his availability for deposition until an Order had been entered by the Court. A true and complete copy of Mr. Pinnisi's December 1, 2007 e-mail is attached hereto as Exhibit 22.

46. Finally, on Monday, December 3, a week after the conference, Darya Dominova, a colleague of Mr. Adelman's, sent Plaintiffs a draft order that improperly expanded the scope of the Court's order to seek information regarding everyone involved in the investigation program, not just those persons involved in the investigation of the defendants herein. A true and correct copy of the December 3, 2007 e-mail and proposed order sent from Ms. Dominova is attached hereto as Exhibit 23.

11

47. Plaintiffs objected to the proposed order as it sought the identification of names of investigators and others who had not been named, discussed or ordered to be produced at the November 26 conference. Defendants now sought depositions of everyone involved in plaintiffs' entire "investigation program," although the Court repeatedly limited the scope of discovery to the investigation of Defendants. Moreover, as not a single deposition had been taken, or any evidence produced by Defendants, Plaintiffs objected to the inclusion of Ms. Digernes in the order, given her lack of contact with the Defendants and limited contact with any investigators. A true and complete copy of the correspondence between counsel is attached as Exhibit 24.

48. As Defendants still refused to concede their ever-expanding discovery demands or to provide their availability for depositions, on December 10, Plaintiffs requested the Court's intervention. Specifically, Plaintiffs asserted that Defendants' proposed order sought information beyond that which the Court previously ordered. A true and complete copy of Plaintiffs' December 10, 2007 letter to the Court is attached hereto as Exhibit 25.

49. On or about December 11, the Court directed that if the parties were unable to resolve the issue themselves, they would have to appear at an in-person conference on Friday, December 14.

50. On December 12, Mr. Ingber wrote the Court with Defendants' position, incorrectly stating that the Court ordered broad discovery regarding the entire "investigation program" and ironically asserting that Plaintiffs' arguments regarding Ms. Digernes' involvement should be rejected because they were "unsworn averments." A true and correct copy of Mr. Ingber's December 12, 2007 letter to the Court is attached hereto as Exhibit 26.

51.     Moreover, despite the Court's explicit refusal during the November 26, 2007 conference to permit Defendants' deposition of Attorney Weisz, Mr. Ingber snuck Mr. Weisz's name in his draft order as a person to be deposed, without advising the Court in his letter that a new name was included.  See Exhibit 26.

**December 14, 2007 Conference**

52.     The December 9, 2007 Conference was held in the Robing Room with a court reporter transcribing the proceedings. I appeared at the conference on behalf of Plaintiffs. A true and complete copy of the transcript is attached hereto as Exhibit 27.

53.     Regarding the scope of the discovery order, the Court found that Plaintiffs had correctly recalled the Courts' prior repeated rulings that the scope of discovery would be limited.  Indeed, the Court recalled Defendants' prior "desire" to lay the basis for a class action lawsuit, and firmly stated that the Court would not permit the instant lawsuit to be used for that purpose.  [10:4 to 13].

54.     Regarding Ms. Digernes' deposition, however, the Court now rejected Plaintiffs' argument that she should not be ordered to appear for deposition unless it is proven necessary, and unless there are no other discovery devices available to get the information needed.  However, the Court's basis for ordering her deposition was not because Defendants had laid some factual predicate that they needed her deposition testimony, or that there were no other means of getting that information.  Instead, the Court ordered her deposition based on the Court's belief that it had previously decided that depositions were the discovery method to be used.  [9:10 to 17].  In doing so, the Court did not distinguish between non-party fact witnesses and Plaintiffs' attorneys, for whom a different standard applies at law; and overlooked the fact that a month had passed without Defendants taking a single deposition of any investigators.

{A061067.DOC\2}

55. Finally, even though the Court explicitly rejected Mr. Ingber's request to order the deposition of Attorney Weisz on November 26 and even though Mr. Ingber asserted no evidence that required the Court to permit another attorney deposition, and even though the Court acknowledged that his deposition would not "bear directly on the point of the investigation," the Court ruled for the first time that Attorney Weisz should be produced for deposition because "if it isn't determined what he said and when it'll be a sore point for the rest of the case anyway." [14:22 to 15:1]

56. The Court stated that it would enter an Order based upon its decisions during the conference. That Order was filed on Monday, December 17, 2007. A true and complete copy of the December 17, 2007 Order is attached hereto as Exhibit 28.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
    January 4, 2008

_____
Matthew A. Kaplan