EXHIBIT 3

**Matthew Kaplan**

| | |
|---|---|
| **From:** | Mark Ingber [ingber.law@verizon.net] |
| **Sent:** | Friday, October 19, 2007 2:59 PM |
| **To:** | Matthew Kaplan |
| **Subject:** | Lyons, et al v. Party Art Productions, The Magic Agency, et al |
| **Attachments:** | RULE 11 MOTION PAPERS.pdf |
| **Importance:** | High |

Hello, I am writing to advise you that I intend to file, on behalf of Party Art, The Magic Agency and their principals, a motion for sanctions against your firm and your clients pursuant to Federal Rule of Civil Procedure 11 for, among other things, having filed this action without reasonable investigation, improper purpose, harassment and bad faith. In this motion, we will also be seeking sanctions for bad faith pursuant to Section 35 of the Lanham act.

In accordance with the requirements of FRCP 11(c)(1)(A), I have attached copies of the papers to be filed in support of Defendants' Motion for Sanctions Against Plaintiffs Pursuant to Federal Rule of Civil Procedure 11. They are as follows:
(1) Notice of Motion;
(2) Memorandum of Law;
(3) Affidavit of Counsel (due to the voluminous nature of the Exhibits and that you are in possession and/or have access to them, I have not presently attached the Exhibits);
(4) Affidavit of Roberta Herman; and
(5) Proposed form of Order for Sanctions.

Pursuant to FRCP 11(c)(1)(A), plaintiffs and plaintiffs' counsel have 21 days from service of this motion to withdraw their claims against Party Art, The Magic Agency, Roberta Herman, Philip Herman and Carol Shelley. Please be advised that, if plaintiffs have not withdrawn their claims against these defendants by the end of the requisite 21-day "safe harbor" period, I will file the motion. We will seek dismissal of the Complaint and sanctions, including, but not limited to, reasonable attorneys fees associated with my clients' defense of plaintiffs' baseless claims. We will seek sanctions against your firm and your clients jointly and severally, as permitted by FRCP 11.

Very truly yours,

Mark J. Ingber, Esq.
Ingber & Gelber, LLP
www.ingberiplawyer.com

181 Millburn Avenue, Suite 202
Millburn, New Jersey 07041
(973) 921-0080
ingber.law@verizon.net

THE INFORMATION CONTAINED IN THIS TRANSMISSION
IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION
INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR
ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE
IS NOT THE RECIPIENT, YOU ARE HEREBY NOTIFIED THAT
ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS
COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY
US IMMEDIATELY BY TELEPHONE SO THAT WE CAN
ARRANGE FOR THE RETURN OF THE ORIGINAL DOCUMENTS
TO US AT NO COST TO YOU.

# INGBER & GELBER, LLP

COUNSELLORS AT LAW

181 MILLBURN AVENUE, SUITE 202

P.O. BOX 7

MILLBURN, NEW JERSEY 07041

MARK J. INGBER*

OF COUNSEL
DALE L. GELBER**(973) 564-6212
STEVEN P. LOMBARDI

TEL: (973) 921-0080
FAX: (973) 921-0021
E-MAIL: INGBER.LAW@VERIZON.NET

MARTIN GELBER
(1944-2005)

*MEMBER NJ & NY BAR
** MEMBER NJ & FL BAR
October 19, 2007

Matthew A. Kaplan, Esq.
COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 34th Floor

New York, NY 10010

Re: Lyons Partnership, L.P., et al v. Party Art Productions,
Inc., Roberta Herman, Philip Herman, Magic Agency, Inc. and Carol
Shelley Carroll, et al; S.D.N.Y, Civil No. 07-7121

**Motion for Sanctions Pursuant to Fed. R. Civ. Proc. 11**

Dear Mr. Kaplan:

As you know, I am counsel for Defendants Party Art Productions
("Party Art"), Roberta Herman, Philip Herman, The Magic Agency,
Inc. ("The Magic Agency") and Carol Shelley a/k/a Shelley Carrol
in connection with the above-referenced lawsuit for which your
firm is serving as counsel for plaintiffs.

I am writing to advise you that I intend to file, on behalf of
Party Art, The Magic Agency and their principals, a motion for
sanctions against your firm and your clients pursuant to Federal
Rule of Civil Procedure 11 for, among other things, having filed
this action without reasonable investigation, improper purpose,
harassment and bad faith. In this motion, we will also be seeking
sanctions for bad faith pursuant to Section 35 of the Lanham act.

In accordance with the requirements of FRCP 11(c)(1)(A), I have
enclosed a copy of the papers to be filed in support of
Defendants' Motion for Sanctions Against Plaintiffs Pursuant to
Federal Rule of Civil Procedure 11. They are as follows:

(1) Notice of Motion;

(2) Memorandum of Law;

(3) Affidavit of Counsel and attached exhibits;

(4) Affidavit of Roberta Herman; and

(5) Proposed form of Order for Sanctions.

Pursuant to FRCP 11(c)(1)(A), plaintiffs and plaintiffs' counsel have 21 days from service of this motion to withdraw their claims against Party Art, The Magic Agency, Roberta Herman, Philip Herman and Carol Shelley. Please be advised that, if plaintiffs have not withdrawn their claims against these defendants by the end of the requisite 21-day "safe harbor" period, I will file the motion.  We will seek dismissal of the Complaint and sanctions, including, but not limited to, reasonable attorneys fees associated with my clients' defense of plaintiffs' baseless claims. We will seek sanctions against your firm and your clients jointly and severally, as permitted by FRCP 11.


I would strongly advise you to carefully consider the motion papers and the arguments presented against you and your clients. As we have discussed, and as is presented in the motion, it is clearly evident your law firm sought to solicit and entrap the defendants.


As you admitted to me during our telephone conversations regarding this matter, "investigators" employed by your firm contacted Party Art and the Magic Agency in August 2005, attempting to entice them to offer to provide "knock off costumes" of trademarked characters for fictive children's parties. Both defendants advised your firm that they did not provide such services after receiving plaintiffs' threatening and baseless "settlement demands"; your firm nevertheless persisted in harassing my clients, and in filing the Complaint at issue. Moreover, your law firm and the plaintiffs in this matter have a long history of engaging in such bad faith, shotgun litigation tactics.


An important point that you and your clients should bear in mind, as discussed in Point Two of the Legal Argument in the Memorandum of Law, your firm is subject to disqualification from this litigation pursuant to New York Lawyer's Code of Professional Responsibility Disciplinary Rule 5-102. This ethical rule, embodying the well-established witness-advocate rule, prohibits a lawyer from representing a client where he or his firm will likely have to testify before the court as to significant issues of fact. Given that your firm is directly involved in the fabrication of the allegations against my clients, I will have no alternative but to seek deposition, discovery and testimony at

trial from you and/or other members and employees of your firm in
presenting my client's defense. This ethical violation, which
should have been obvious to you would present a conflict, in
combination with the evidence of plaintiffs' and plaintiffs'
counsel's bad faith and "Sting" tactics, will likely compel the
Court to sanction you and your client and dismiss the Complaint.

In view of the foregoing, we demand that you adjourn the
scheduled November 9, 2007 Initial Conference.3

We look forward to hearing from you in this regard.

Very truly yours,

INGBER & GELBER, LLP

By:    Mark J. Ingber

MJI:lb-Enclosure

3

**INGBER & GELBER, LLP**
**Mark J. Ingber (MI 9098)**
**181 MILLBURN AVENUE**
**MILLBURN, NEW JERSEY 07041**
**(973) 921-0080**
**Attorneys for Defendants**
**Party Art Productions, Inc.,**
**Roberta Herman and Philip Herman**
**Telephone: (973) 921-0080**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

LYONS PARTNERSHIP, L.P., and HIT
ENTERTAINMENT, INC.,

                          Plaintiffs,                    **Civil Action**

          -against-                                      **07-CV-7121**
                                                         **(JUDGE STANTON)**
PARTY ART PRODUCTIONS, INC., ROBERTA                     **NOTICE OF MOTION FOR**
HERMAN, PHILIP HERMAN, PARTY POOPERS,                    **SANCTION AGAINST**
INC., MARLA MASE, 57TH STREET PARTY                 **PLAINTIFFS AND**
CORP. D/B/A SAVE THE DATE, JENNIFER                      **PLAINTIFFS' COUNSEL**
GILBERT, THE MAGIC AGENCY, INC.,                         **FOR SANCTIONS**
SHELLEY CARROLL, ERIC SILVEY D/B/A ERIC                  **PURSUANT TO FEDERAL**
SILVEY ENTERTAINMENT                                     **RULE OF CIVIL**
                                                         **PROCEDURE 11**
                          Defendants.

------------------------------------------------------------------- X


TO: Matthew A. Kaplan, Esq.
COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 34th Floor
New York, NY 10010

        **PLEASE TAKE NOTICE** that on December 10, 2007, or as

soon thereafter as counsel may be heard, DEFENDANTS PARTY

ART PRODUCTIONS, INC., ROBERTA HERMAN, PHILIP HERMAN, THE

MAGIC AGENCY, INC. and SHELLEY CARROLL (collectively "the

Moving Defendants") by and through their counsel, Ingber & Gelber, LLP, shall move before the Honorable Louis LOUIS L. STANTON, U.S.D.J., at the United States Court House, 500 Pearl Street, New York, NY at 10:00 am or as soon thereafter as counsel may be heard, for the imposition of sanctions against the Plaintiffs and their counsel and the dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 11.

**PLEASE TAKE FURTHER NOTICE** that, as required by FRCP 11, the Moving Defendants provided Plaintiffs' counsel with a copy of this Notice of Motion, supporting Memorandum of Law, Affidavit of Counsel, Affidavit of Defendant Roberta Herman and the proposed form of Order twenty-one (21) days prior to the filing of this Motion, under cover of letter requesting that Plaintiffs withdraw their Complaint against the Moving Defendants, and that said Complaint was not withdrawn.

**PLEASE TAKE FURTHER NOTICE** that at that time, the Moving Defendants will seek judgment declaring that (1) the claims set forth in the Complaint in this action against Moving Defendants (i) are not based upon a reasonable inquiry, (ii) and/or were interposed to harass or for another improper purpose, (iii) and/or baseless or are otherwise in violation of the requirements of FRCP 11; (2)

the Moving Defendants are entitled to reasonable attorneys fees and other costs related to their defense of this action in accordance with the provisions of FRCP 11; (3) Plaintiffs and Plaintiffs' counsel are jointly and severally liable for said attorneys fees and other costs related to the Moving Defendants' defense of this action; and (4) dismissing the claims against the Moving Defendants pursuant to FRCP 11.

**PLEASE TAKE FURTHER NOTICE** that the Moving Defendants will also seek judgment declaring that (1) Plaintiffs and Plaintiffs' counsel have, through their conduct related to this litigation, committed in bad faith in violation of Section 35 of the Lanham Act; (2) Plaintiffs and Plaintiffs' counsel are jointly and severally liable to the Moving Defendants for reasonable attorneys fees and other costs for their commission of bad faith in violation of Section 35 of the Lanham Act; (3) Punitive damages be awarded to Moving Defendants against Plaintiffs and Plaintiffs' counsel, jointly and severally, to deter future inappropriate conduct by other plaintiffs tempted to adopt a similar style of litigation; and (4) Plaintiffs and their Counsel shall forward a copy of this Order to every defendant charged with infringement of any of the trademarks or copyrights asserted in this suit, and then

file an Affidavit of Service showing the date of service, location of the suit by Court's location, and docket number, within 15 days of this Order.  This shall apply to all suits filed whether settled or currently in progress.

**PLEASE TAKE FURTHER NOTICE** that the Moving Defendants will also seek judgment declaring that, in the event the Court should allow this litigation to proceed, Plaintiffs' counsel must be disqualified from serving as counsel in accordance with Disciplinary Rule 5-102 of the New York Lawyer's Code of Professional Responsibility and other applicable ethical rules and common law.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Judgment is submitted herewith.

**PLEASE   TAKE   FURTHER   NOTICE** that   the   undersigned requests oral argument in support of this motion.

                              INGBER & GELBER, LLP
                              Attorneys for
                              Moving Defendants


                              BY: S/MARK J. INGBER
                              Mark J. Ingber (MI 9098)

Dated:    October 18, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

LYONS PARTNERSHIP, L.P., and HIT
ENTERTAINMENT, INC.,

                              Plaintiffs,

                                                    **Civil Action**

          -against-

                                                    **07-CV-7121**
PARTY ART PRODUCTIONS, INC., ROBERTA                **JUDGE STANTON**
HERMAN, PHILIP HERMAN, PARTY POOPERS,
INC., MARLA MASE, 57TH STREET PARTY
CORP. D/B/A SAVE THE DATE, JENNIFER
GILBERT, THE MAGIC AGENCY, INC.,
SHELLEY CARROLL, ERIC SILVEY D/B/A ERIC
SILVEY ENTERTAINMENT

                              Defendants.

------------------------------------------------------------------- x

**MEMORANDUM OF LAW
OF DEFENDANTS' PARTY ART PRODUCTIONS, INC.,
ROBERTA HERMAN, PHILIP HERMAN,
THE MAGIC AGENCY, INC., AND SHELLEY CARROLL
IN SUPPORT OF MOTION FOR SANCTIONS
AGAINST PLAINTIFFS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 11**

## PRELIMINARY STATEMENT

### *This Action Is Part of a Broad Campaign of Extortive Settlement Demands and Lawsuits Based On Unsubstantiated Claims of Trademark Infringement*

The defendants PARTY ART PRODUCTIONS, INC., ROBERTA HERMAN, PHILIP HERMAN, THE MAGIC AGENCY, INC. and SHELLEY CARROLL (collectively "the Moving Defendants") have brought this motion under FRCP 11 because of the improper, harassing and groundless nature of the claims asserted against them by Plaintiffs Lyons Partnership, L.P., and Hit Entertainment, Inc. (collectively "Plaintiffs") for trademark mark and copyright infringement, among other things. Plaintiffs, who assert exclusive intellectual property rights in several children's entertainment characters, allege that the various defendants have engaged in the "unauthorized use" of Plaintiffs' "protected characters and marks." (See Complaint attached to the accompanying Affidavit of Counsel, Mark J. Ingber, hereinafter the Ingber Affidavit, as **Exhibit "A"**, at pages 1-3, Paras. 1-8; Section E, page 19).

Plaintiffs admit, however, that this Complaint is part of a broad and aggressive campaign of purported "enforcement efforts" to protect their alleged rights. This has included demands to the defendants in this matter, among many other individuals and companies, to pay substantial sums in compensation for their alleged infringing conduct or face the filing of legal action and the specific filing, by Plaintiff Lyons Partnership, L.P.

("Lyons") of nearly one hundred complaints of this nature. Ultimately, the settlement demands and this lawsuit are nothing more than bad faith, shotgun litigation.

Plaintiffs detail their "enforcement actions" in the Complaint, stating:

> …Plaintiffs receive frequent reports of unauthorized goods and services, from novelty key chains and third rate dolls, to Barney, Baby Bop, BJ and Bob the Builder impersonators who provide children's entertainment services and endorse products and businesses.
>
> Plaintiffs have taken vigorous steps to enforce their intellectual property rights through the procurement of voluntary cessation of infringing activities…Plaintiffs have recently focused considerable effort on entertainment and party business services offering knock-off Barney, Baby Bop, BJ and Bob the Builder costumes.
>
> As part of Plaintiffs' enforcement efforts, Plaintiffs issued demand letters requiring entertainment and party service companies to cease their infringing activities, to surrender their knock-off costumes and to identify, in writing, the source of their costumes.
>
> …Lyons, for its part, filed more than 90 enforcement actions in the past six years in more than 20 states against numerous defendants alleged to have infringed Lyons' rights in the Barney characters.
>
> As part of its enforcement efforts, Plaintiffs became aware of numerous individuals and entities engaged in the business of purchasing, distributing, displaying, selling, renting, offering to rent, using and/or offering to sue…adult-sized costumes depicting Plaintiffs' Protected Characters in conjunction with providing children's entertainment services.
>
> Beginning in April 2006, Plaintiffs issued settlement demand packages to confirmed infringing parties, including the Defendants herein, to provide them with an opportunity to settle with Plaintiffs on reasonable terms without litigation. These packages contained a draft of this

-2-

Complaint, and a letter demanding that Defendants cease and desist their infringing conduct and compensate Plaintiffs for their infringements to date. To date, Defendants herein have failed to do so.

In order to settle with Plaintiffs, an infringing party was required to: (1) surrender all infringing costumes to Plaintiffs for destruction, (2) complete a questionnaire detailing…how often each infringing costume was used and the amounts charged to provide services using each infringing costume, (3) pay a reasonable settlement amount commensurate with the nature and extent of its infringing activities, and (4) agree to a permanent injunction. The parties would then provide each other with mutual releases.

(Id. at Paras. 48-53)(Emphasis added).

These "enforcement actions", the Moving Defendants submit, are really coercive actions. They are the legal equivalent of pointing a gun at someone and demanding money to avoid "unpleasant consequences." Plaintiffs' counsel (as well as plaintiffs) has no interest in the merits of the case, nor whether any infringement even occurred, but rather want to shake down small companies such as the Moving Defendants for money under threat of costly litigation.

## Plaintiffs' Counsel Demanded Substantial Sums of Money From Defendants In Order to Avoid Litigation For Alleged "Offers to Provide" So-Called "Knock-Offs" of Trademarked Characters For Children's Parties

Defendants Party Art Productions, Inc. ("Party Art"), its principals, co-defendants Roberta and Philip Herman, and Defendants The Magic Agency, Inc. ("Magic Agency") and its principal, Shelley Carroll (collectively the "Moving

Defendants"), received Plaintiffs' "settlement demand packages" in April 2006 (the term Plaintiffs use in the Complaint). Copies of those "demand packages" are attached to the Ingber Affidavit as **Exhibits B and C.**

The Moving Defendants will further discuss the contents of these settlement packages, along with the improper and harassing purpose of said packages and the Complaint in the Statement of Facts and Legal Argument, *infra*. We note, however, the cookie cutter form of the settlement demands, the total lack of specificity or indicia of legal sufficiency as to the alleged wrong and the harassing and threatening language of the demand.

For example, illustrative of the harassing nature of the settlement demands, Plaintiffs' counsel advised The Magic Agency: "If the Complaints [sic] are filed against you, Plaintiffs will seek substantial money damages from you." Further, after advising the Magic Agency that the Complaint will be filed in ten days if no response is received, Plaintiffs' counsel indicates: "To settle this dispute without going to court, you must pay the amount [of] $100,000." The Magic Agency is instructed to send the payment to the "Costume Litigation" department of Plaintiffs' counsel, Cowan, DeBaets, Abrahams & Sheppard, LLP.

The Moving Defendants---small companies and their principals engaged in the provision of corporate event and other

-4-

services--refuse to be cowed by such scare tactics. They have not infringed upon Plaintiffs' intellectual property rights, as they have definitively stated in their Answers. (See **Exhibits D and E** to the Ingber Affidavit). Indeed, it remains unclear, either in the "settlement demand" or in the Complaint, what misconduct constituting infringement the Moving Defendants have specifically committed.

The only particular purported misconduct that Plaintiffs allege against Party Art, based upon Plaintiffs' asserted "investigation of defendants' infringing activities", is that "on August 8, 2005 and August 15, 2005, Party Art offered to provide children's entertainment services using a knock-off Bob the Builder costume." (See Complaint, Para. 55)(Emphasis added). Similarly, according to "Plaintiffs' investigation", the alleged wrongdoing of The Magic Agency is that "on August 2, 2005 and August 12, 2005, Magic Agency offered to provide children's entertainment services using a knock-off Barney costume." (Id. at Para. 58)(Emphasis added). It remains entirely uncertain, in the settlement demands or the Complaint, how the "offer to provide" the alleged "knock-off costume" transpired, what the "knock-off costumes" look like, if any actual "knock-off" was ever shown or used, or how the mere (and unsubstantiated) "offer to provide" constitutes infringing conduct harmful to Plaintiffs' rights.

-5-

Many questions arise here.  One obvious question is, even assuming *arguendo* Party Art and Magic Agency did both twice use "offer to provide" the use of "knock-offs" in August 2005, why would these mere offers, as a matter of equity and reasonableness, justify a "settlement demand" of $100,000 from each company?  If Plaintiffs considered this matter so significant and the alleged "offers to provide" for use at children's parties "knock-offs" so detrimental to their rights in these characters, why did they wait eight months until April 2006 to serve their "settlement demand packages" and then over a year later, until August 2007, to file a Complaint?

The Moving Defendants respectfully submit that one can infer Plaintiffs were engaged in a broad process of seeking---or fabricating---some basis for this "Costume Litigation."  They orchestrated and then implemented a plan to pressure small companies into paying to avoid the substantial expenses associated with copyright and trademark infringement litigation. The "settlement demands" themselves, coming as they did from the "Costume Litigation Department" of Plaintiffs' counsel, strongly suggests a litigation mill pressing small businesses for cash. Perhaps worst of all, as detailed *infra*, the facts at hand demonstrate that Plaintiffs' counsel used its own employees to seek out the alleged "offers."

- 6 -

Once again, this evinces the bad faith, shotgun litigation tactics at play here. Moreover, plaintiffs' counsel, by having used its own employees to fabricate claims, has subjected itself to deposition, discovery and serving as witnesses at trial. This clearly violates the advocate-witness rule, rendering the firm disqualified from representing plaintiffs in this litigation. See, e.g., New York Lawyer's Code of Professional Responsibility Disciplinary Rule 5-102(A)("A lawyer shall not act…as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client…"); see also Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)("[I]f the attorney's testimony could be significantly useful to his client…[the attorney should be disqualified regardless of whether he actually will be called"). See Legal Argument, Point Two, *infra,* for full discussion of the likelihood of Plaintiffs' counsel being disqualified pursuant to the witness-advocate rule based upon the facts of this case.

### *Plaintiffs Never Responded To Legitimate Inquiries from Defendants Seeking the Basis of the Settlement Demands*

The Moving Defendants have refused to bow to Plaintiffs' egregious demands and, moreover, long ago sought proof from Plaintiffs of their alleged infringing activities. By letter dated April 28, 2006, written a mere two days after receipt of

-7-

the settlement demand from Plaintiffs' counsel, Carol Shelley a/k/a Shelley Carrol, head of The Magic Agency, advised counsel that her company does not even provide children's entertainment services and "does not use/own or hire the use of likenesses of branded/licensed costume characters whether licensed by [Lyons] or anyone else."   (See **Exhibit F** to Ingber Affidavit).   Ms. Shelley further explained the type of services the Magic Agency actually does provide: "Magicians (hence the name Magic Agency) for adult corporate events," and "talent buyers for Key Note Speakers, Celebrities and other name performers, strictly for the adult corporate market."   (Id.)   She requested that Plaintiffs' counsel respond to her information regarding their "gross mistake" in having accused the Magic Agency of offering to provide "knock offs" of licensed children's characters. (Id.)   To the best of the Moving Defendants' knowledge, Plaintiffs' counsel never endeavored to respond or conduct any reasonable investigation of Ms. Shelley's information, instead filing a Complaint with allegations they knew to be dubious at best.

Roberta Herman, co-principal of Party Art, had an even more direct experience with Plaintiffs' counsel's indifference to facts and reason, and their harassing, unethical tactics.

In April 2006, after reviewing the settlement demand from plaintiffs' counsel, Ms. Herman was convinced that the

- 8 -

plaintiffs were conducting some kind of "shake down." She thought they were operating a scam, sending out letters to companies they thought might provide entertainers for children's parties and attempting to scare them into paying for having at some time used a costume of "Bob the Builder" or another well-known character. (See Affidavit of Roberta Herman, hereinafter the "Herman Affidavit", at Paras. 9-12). Party Art, of which Ms. Herman is the Manager and Creative Coordinator, is a two person, small family business, providing caricaturists, face-paintings and balloon sculptures at private (typically Bar and Bat Mitzvahs) or corporate events. (Id. at Paras. 1-3). Party Art has done very few children's parties, and has not, to the best of her knowledge, advertised, purchased, offered, sold or sent a costume looking like or called "Bob the Builder" or any other such children's entertainment character. As such, Ms. Herman assumed the settlement demand was either sent in error or represented a scam and decided to ignore the matter. (Id. at Par. 5).

Approximately two months later, a man who identified himself as Mason Weisz an attorney at Plaintiffs' counsel's Law Firm began calling on behalf of Plaintiffs' counsel. He phoned repeatedly, trying to get Ms. Herman to admit that Party Art had costumes of trademarked characters and was offering them for children's parties. Ms. Herman explained time and again that

- 9 -

this was not the case; she described what Party Art did and that children's parties were not a significant part of their business.   Mr. Weisz kept referring to two emails from August 2005, in which Party Art had allegedly offered to provide a "Bob the Builder" costume, she indicated that she had not sent any emails and did not know what he was referring to.   Party Art did, she explained, use clowns, magicians, fortunetellers and other types of entertainers, but not character costumes.   (Id. at Paras. 14-17).

Mr. Weisz at one point stated that Ms. Herman seemed "very convincing," but he nonetheless continued to call at least once a week for approximately another two months.   He only stopped when Ms. Herman stated, in exasperation, that she would report him for harassment.   (Id. at Para. 18).

### Plaintiffs' Counsel Sought to Entice Defendants to Commit Infringement by Attempted Solicitation of Services More Than Two Years Ago

This is not, however, the end of the improper and wrongful actions authorized and committed by Plaintiffs and Plaintiffs' counsel. As will be detailed in the Statement of Facts, infra, "investigators" working for Plaintiffs' counsel, presumably part of its "Costume Litigation Department," contacted the Moving Defendants in August 2005 and requested that they provide "Bob the Builder". or "Barney" costumes for use in connection with children's entertainment services.   The Moving Defendants did

- 10 -

not in fact provide these services, despite the attempt at entrapment and Plaintiffs' consequent mischaracterization of a few email communications.

Counsel for the Moving Defendants has advised Plaintiffs' counsel that they are aware of this unethical[1] and illicit conduct; yet, Plaintiffs nevertheless refuse to halt their campaign of distortion and extortion.

Consequently, the Moving Defendants have no alternative but to proceed with this motion for sanctions pursuant to FRCP 11 (and the fee-shifting provision in Section 35 of the Lanham Act). Plaintiffs have filed a complaint without reasonable

---

[1] By way of example, the New York Lawyer's Code of Professional Responsibility, Disciplinary Rule 7-102, "Representing the Client Within the Bounds of the Law," states in part:

A. In the representation of a client, a lawyer shall not:

> 1. File a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would merely serve to harass or maliciously injure another.
> 2. Knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by a good faith argument for an extension, modification, or reversal of existing law.
> 6. Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.
> 7. Counsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent.
> 8. Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

[New York DR 7-102(A)(1), (2), (6), (7), (8)].

- 11 -

investigation to, among other things, for the improper purpose of attempting to extort money from the Moving Defendants. The fact Plaintiffs have apparently engaged in similar conduct with potentially hundreds of other entities highlights the gravity and import of this particular motion. Under the circumstances, this FRCP 11 motion serves not only to prevent injustice against the defendants herein, but also to protect the public interest by deterring Plaintiffs from pursuing scare tactics against other small companies and perpetuating countless other strike suits.

## STATEMENT OF FACTS

The facts before the Court demonstrating the lack of a reasonable investigation prior to the filing of this Complaint, the baseless nature of the allegations and the evident commencement of this suit for harassment, improper purpose and other violations of FRCP 11 are as follows:

### *Plaintiffs Extortive Demands for Substantial Sums from the Moving Defendants and Plaintiffs' Admissions of a Broader Campaign of Harassing Settlement Demands, Unethical Conduct and Litigation*

(i)    In April 2006, Plaintiffs, the holders of trademark and copyrights in certain intellectual property for characters related to children's entertainment, including Barney, BJ Bop and Bob the Builder, served "settlement demands" upon Party Arts and The Magic Agency. They accused them of copyright and trademark infringement, and requested $100,000 from each company to avoid the filing of infringement

- 12 -

actions against them (see Exhibits B and C to the Ingber Aff.);

(ii)    The settlement demand stated: "If you want to settle this matter without going to court must agree to," among other things "**PAY $100,000** by cashier's check or other good funds. Checks should be made payable to "Cowan, DeBaets, Abrahams & Sheppard LLP in Trust for Costume Litigation" [Plaintiffs' counsel herein] and mailed to this office" (boldface in original).    The settlement demand provided no basis or explanation as to the specific acts of infringement or why Plaintiffs considered the amount of $100,000 reasonable for settlement.    (See Exhibit B, at Page 2 of letter from counsel to the Magic Agency);

(iii)   The cover letter to this settlement package also states in boldface on Page 2: "**If all terms are not met (or we have not heard from you) within 10 days from the date of this letter, this office will be forced to take legal action against you.**" (Id.);

(iv)    The settlement packages were accompanied by a long series of forms and questionnaires, including a Questionnaire regarding any "look-alike" costumes the Moving Defendants possessed for certain trademarked children's entertainment characters, a Questionnaire about the purchase of costumes of the trademarked characters and extensive "Instructions for Settlement," including the payment of $100,000 and the signing of an attached Settlement Agreement (See Exhibits B and C);

(v)     On April 28, 2006, two days after receipt of the settlement package, Carol Shelley, principal of The Magic Agency, wrote Plaintiffs' counsel to explain that her company is "not a children's party or Bar/Batmitzva agency and does not use/own or hire the use of likenesses of branded/licensed costume characters whether they are licensed by [Lyons] or anyone else." Ms. Shelley advised counsel that her company is a "talent buyer of Magicians for adult corporate events"… and "for Key Note Speakers, Celebrities and other name performers, strictly for the adult corporate market." (See Exhibit F);

(vi)    Ms. Shelley further stated in her April 28, 2006 letter to counsel that the Magic Agency does not and has not in the past owned or used "any likenesses of branded/licensed costume characters" and "We have no use for these items and if we did

- 13 -

           we would go to Scholastic/Lyons directly for the
           licensed character as we are fully aware what the
           legal procedures are." (Id.);

(vii)   To the best of the Moving Defendants' knowledge,
           Plaintiffs' counsel never responded to or
           investigated Ms. Shelley's explanation as set forth
           in her April 28, 2006 correspondence;

(viii)  Roberta Herman, of Party Art, considered the
           settlement demand to be an error or a scam and
           elected not to respond (Herman Aff., at Para. 12);

(ix)    Party Art does not generally provide services for
           children's parties, instead focusing upon corporate
           and private events (Id. at Para.  5);

(x)     An individual from Plaintiffs' counsel identifying
           himself as Mason Weisz began telephoning Ms. Herman
           of Party Art repeatedly approximately two months
           after her receipt of the settlement demand (Id. at
           Paras. 14-17);

(xi)    Ms. Herman advised Mr. Weisz that Party Art did not
           sell, use or otherwise provide costumes of
           children's characters and did not plan children's
           parties (Id. at Para. 17);

(xii)   Mr. Weisz continued calling Ms. Herman for
           approximately two months at least once a week,
           demanding that Party Art compensate Plaintiffs (Id.
           at Para. 18);

(xiii)  Mr. Weisz only stopped calling when Ms. Herman
           advised him that she would report him for
           harassment (Id. at Para. 18);

(xiv)   Plaintiffs acknowledge in their pleading before
           this Court: "As part of Plaintiffs' enforcement
           efforts, Plaintiffs issued demand letters requiring
           entertainment and party service companies to cease
           their infringing activities, to surrender their
           knock-off costumes and to identify, in writing, the
           source of their costumes." (Exhibit A, Para. 48);

(xv)    Plaintiff Lyons has "for its part, filed more than
           90 enforcement actions in the past six years in
           more than 20 states against numerous defendants
           alleged to have infringed Lyons' rights in the
           Barney characters." (Id., Para. 51);

(xvi)   Plaintiffs admit to the widespread use of
           "settlement packages" of the type served upon the
           Moving Defendants: "Beginning in April 2006,
           Plaintiffs issued settlement demand packages to
           confirmed infringing parties, including the
           Defendants herein, to provide them with an

> opportunity to settle with Plaintiffs on reasonable terms without litigation. These packages contained a draft of this Complaint, and a letter demanding that Defendants cease and desist their infringing conduct and compensate Plaintiffs for their infringements to date. To date, Defendants herein have failed to do so." (Id., Para. 52);

### *Illustrative Evidence of the Ongoing Campaign of Harassment and Improper Use of the Judicial Process by Plaintiffs against Small Companies to Extort Settlements*

(xvii)  In August 1998, the Judicial Panel on Multidistrict Litigation denied a motion by Lyons Partnership, L.P., to consolidate pretrial proceedings of 77 separate copyright and trademark actions involving 144 defendants commenced across the country (See In re Barney Characters' Costume Trademark and Copyright Litigation, 1998 U.S. Dist. LEXIS 12397, **Exhibit G** to the Ingber Aff., see especially Schedule A to the decision setting forth all of the actions involved);

(xviii) The Mercury News (California) reported on July 27, 2006, in an article entitled "No Clowning Around In Threatened Lawsuit," that the smile of Happy the Clown---and those of at least a dozen other Bay Area [San Francisco] clowns---started to crack last week when they received letters from Cowan, DeBaets, Abrahams & Sheppard LLP [Plaintiffs' counsel herein], a Madison Avenue firm that represents the owners of the rights to Bob the Builder, Thomas the Tank Engine and Clifford." The article continued: "To settle without going to court, the letter [from counsel] says the clowns should stop using the costumes, surrender them, pay $100,000 and sign an agreement never to use the characters again. The firm says its clients could be awarded damages of up to $150,000 per character if it wins a court case." (See **Exhibit H** to the Ingber Aff.);

(xix)   The Mercury News continued: "J. Holmes Armstead, a lecturer at Stanford Law School, who was asked to review the letters for several of the clowns. 'This is going to have a chilling effect on children'.s birthday parties in the San Jose area,' he said. And further: "'These little kiddie shows typically make a hundred bucks a show,'" said

- 15 -

Armstead, who practiced law in Chicago for many years. "These are not folks who are capable of going into San Francisco and hiring a 100-person law firm to represent them.'" (Id,);

(xx)    The New York Daily News recently reported, on September 5, 2007, that "the companies that control the rights to [Bob the Builder, Thomas the Tank Engine and Barney] have filed federal lawsuits against nearly three dozen businesses in Long Island, Brooklyn, Queens and Staten Island which have been offering the services of these costumed imposters, according to a complaint filed in Brooklyn Federal Court." (**Exhibit I** to the Ingber Aff.);

(xxi)   The Metro News article continues:

> "Hugh Wunderman, the owner of Gala Creative Group in Merrick, LI, who is named as a defendant in the suit, claims he was entrapped in a 'sting' operation launched last year by the handlers of the cartoon characters."

> "I got a call from a guy saying he was doing a kid's party and asked, I think, for Dora the Explorer, Clifford the Big Red Dog and others, Wunderman told the Daily News."

> "I explained to the person on the phone that they were licensed characters and we don't deal in them and I    might be able to get them similar characters that the kids   wouldn't   know   the difference," Wunderman said. "So you get a big red dog, but it's not like Clifford."

> "Later, Wunderman was contacted by a company representative who demanded a $160,000 settlement to avoid a lawsuit, but he refused the offer.

> "I've done no infraction of their trademarked characters," Wunderman said. (Id.);

*The Attempted Entrapment of the Moving Defendants*
*By Employees of Plaintiffs' Counsel to Make It Appear As*
*Though Infringement Occurred*

(xxii) Plaintiffs' counsel provided counsel for the Moving
Defendants with an email on September 7, 2007
stating:   "I enclose….the email that your client
Roberta Herman sent to our investigator with
children's entertainment services using a
counterfeit 'Bob the Builder costume and included a
picture of the infringing costume." (See **Exhibit J**
to the Ingber.  Aff.;

(xxiii) By email dated September 7, 2007, counsel for the
Moving Defendants responded to Plaintiffs' counsel
as follows:   "My client did not solicit this
'offer,' she was obviously contacted and/or
entrapped by one of your investigators.   She
believes that there are additional emails from
'SuperNina624' and notations made by her.   We
ask that you promptly produce this…pursuant to
Fed Rule Civ. 26." (See **Exhibit K** to the Ingber
Aff.);

(xxiv) The email referenced in Exhibit K is from Party Art
to "SuperNina624", dated August 10, 2005.   It
states:   "Hi Nina, here are some photos-the
character costs \$155 each for 45 minutes. If you
would like to book, I will need to send you
paperwork to sign and we need a 50% deposit. This
was followed on August 11, 2005 by another email to
"SuperNina624" showing a photo of an image entitled
"018constructionman.jpg."(See **Exhibits L and M** to
the Ingber Aff.;

(xxv) On September 24, 2007, the Moving Defendants'
counsel emailed Plaintiffs' counsel as follows:
"Matt, pursuant to our conversation on September
20, 2007, this confirms we are again requesting
that you produce emails from 'SuperNina624' and
notations made by per pursuant to FRCP 26.   This
also confirm that you have advised that at the time
of the communications with my client in August
2005, 'SuperNina624' was an employee of your law
firm, Cowan, Debaets, Abrahams & Sheppard LLP.
(See **Exhibit N** to the Ingber Aff.

(xxvi) On August 2, 2005, Shelley Carroll of the Magic
Agency emailed SerenaHorowitz@gmail.com regarding
lists of costumes for a children's party.   The
Magic Agency provided this information at Serena
Horowitz's request for entertainment services for a
4 year old birthday party.   (See **Exhibit O** to the
Ingber Aff.)

- 17 -

(xxvii) On September 24, 2007, the Moving Defendants' counsel emailed Plaintiffs' counsel as follows: "Matt, pursuant to our conversation on September 20, 2007, this confirms that we are again requesting that you produce emails from 'Serena Horowitz' and notations made by per pursuant to FRCP 26. This also confirm that you have advised that at the time of the communications with my client in August 2005, 'Serena Horowitz' was an employee of your law firm, Cowan, Debaets, Abrahams & Sheppard LLP. (See **Exhibit N** to the Ingber Aff.

(xxviii) The dates of the emails exchanged between SuperNina624 and the principal of Party Art and Serena Horowitz and the principals of The Magic Agency in August 2005 correspond with the timing of the alleged acts of infringements of Plaintiffs' trademarks in August 2005. (See Complaint, **Exhibit A** to the Ingber Aff., at Paras. 55 and 58);

(xxix) On September 25, 2007, counsel for the Moving Defendants sent two emails to Plaintiffs' counsel, each of which requested, pursuant to "the Order for Conference and Rule," that Plaintiffs' counsel promptly provide full disclosure as to the details of their employees "SuperNina624" and "Serena Horowitz" respectively, including "the instructors and instructions given to her in connection with the August 2005 communications with our client; any notes, communications concerning these August 2005 communications including those before and after such communications." (See **Exhibits P and Q** respectively).

(xxx) The only allegation against Party Art is that: "On August 8, 2005 and August 15, 2005, Party Art offered to provide children's entertainment services using a knock-off Bob the Builder costume." (Complaint, Exhibit A, at Para. 55);

(xxxi) The only allegation against The Magic Agency is that: "On August 2, 2005 and August 12, 2005, Magic Agency offered to provide children's entertainment services using a knock-off Barney costume." (Complaint, Exhibit A, at Para. 58).

***The "TELEPHONE STING FORM" Used By Employees of Plaintiffs'
Counsel Against Moving Defendants Conclusively Establishes
Their Bad Faith***

(xxxii) On October 17 and 18, 2007, counsel for the Moving Defendants received emails from Plaintiffs' counsel with attached "Telephone Sting Forms" completed by its employees Nina Sherman and Sarena Horowitz. The emails were provided in response to demands from the undersigned that Plaintiffs' counsel promptly provide full disclosure as to the details of their employees "SuperNina624" and "Serena Horowitz" respectively, including "the instructors and instructions given to them in connection with the August 2005 communications with our client (See **Exhibits R and S** respectively).

## LEGAL ARGUMENT

### Point One

### PLAINTIFFS' AND PLAINTIFFS COUNSEL HAVE FILED UNFOUNDED AND IN FACT FABRICATED CLAIMS FOR AN IMPROPER PURPOSE IN BAD FAITH AND IN VIOLATION OF FRCP 11 AND OTHER LAWS.

Pursuant to FRCP 11, all claims, defenses, factual or legal contentions or other representations to the Court (1) cannot be "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"; (2) must "be warranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of new law; (3) must have "evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"; and (4) "denials of factual contentions" must be "warranted on the evidence or if specifically so identified, are reasonably based on a lack of information or belief."   FRC 11(b)(1), (2), (3) and(4).   See also New York Lawyer's Code of Professional Responsibility Disciplinary Rule 7-102.

This Court has observed:   "A violation of Rule 11 is…triggered when it appears that a pleading has been interposed for any improper purpose, or where, after a reasonable inquiry, a competent attorney could not form a reasonable belief that the

pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Resqnet.Com, Inc. v. Lansa, Inc., 382 F.Supp.2d 424, 452-53 (S.D.N.Y. 2005) (citing Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)). "In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signer has conducted a reasonable inquiry into the basis of a filing." 382 F.Supp.2d at 453. Moreover, "where a claim is baseless, or where a party continues to assert an unfounded position, a violation of Rule 11 may be found." Id. Although courts should approach and impose Rule 11 "with caution," the invocation of sanctions is intended to "deter repetition of the sanctionable conduct." Thomas America Corp. v. Fitzgerald, 175 F.R.D. 462, 466 (S.D.N.Y. 1997).

In addition, pursuant to Section 35 of the Lanham Act, a court may award "reasonable attorney fees" in "exceptional cases" for infringement actions. See 15 U.S.C. Sect. 1117(a). The Second Circuit maintains that such an award should occur "only on evidence of fraud or bad faith." Juicy Couture, Inc v. L'Oreal USA, Inc., 2006 U.S. Dist. LEXIS 64393 at *13 (S.D.N.Y. September 11, 2006) (quoting Gordon & Breach Science Publishers

S.A. v. American Inst. Of Physics, 166 F.3d 438, 439 (2d Cir. 1999)). Bad faith exists where a claim "is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or other improper reasons." 2006 U.S. Dist. LEXIS 64393 at *13. This can occur "where a lawsuit is initiated for reasons other than a sincere belief in the merits of the underlying claims and to serve ulterior business motives." 2006 U.S. Dist. LEXIS 64393 at *14 (emphasis added)(citing Universal City Studios, Inc. v. Nintendo Co., 615 F.Supp. 838, 864 (S.D.N.Y. 1985, aff'd, 797 F.2d 70 (2d Cir. 1986)).

As the Preliminary Statement and Statement of Facts, *supra*, evidence, Plaintiffs have engaged in a massive and ongoing campaign of disseminating cookie cutter demands for substantial settlements to hundreds of entities under threat of litigation and then actually filing voluminous number of complaints if the settlement demands are not paid. Plaintiffs' counsel uses bad faith, shotgun litigation tactics in an effort to coerce small family businesses and companies into settling prior to the commencement of lawsuits, thus profiting without even having to reach the merits of plaintiffs' infringement allegations.

Here, Plaintiffs' counsel sought through its employees to entice the Moving Defendants to allegedly provide "knock off" costumes of their trademarked characters for fictive children's parties as evidenced by the appropriately named "Sting Telephone

- 22 -

Forms" (See Exhibits R and S respectively), contemporaneously used by employees of Plaintiffs' counsel. These "Sting Telephone Forms" conclusively establish that the elaborate confidence game used by Plaintiffs' counsel, to entrap the Moving Defendants to provide character costumes for parties came from its own investigator. The facts establish these communications took place in August 2005, at the time described in the Complaint's vague allegations of "knock-offs" being offered for use by the Moving Defendants. Indeed, every other defendant in this action is also said to have committed their respective acts of infringement (or "offers to provide" infringing costumes) in August 2005:

(i)  "…on August 2, 2005, Party Poopers offered to provide children's entertainment services using knock-off Barney, Baby Bop and BJ costumes." (Complaint, Para. 56);

(ii)  "…on August 2 and 4, 2005, Save The Date offered to provide children's entertainment services using knock-off Barney and Bob the Builder costumes." (Id. at Para. 57);

(iii)  "…on August 3, 2005, Silvey offered to provide children's entertainment services using a knock-off Barney costume." (Id. at Para. 59).  .

- 23 -

Plaintiffs and their counsel sought to further terrorize Defendants by suing all of them individually. Plaintiffs Complaint stems exclusively from their counsel's attempted acts of solicitation and entrapment ("the fruit of the poisonous tree"), after the Moving Defendants refused to pay $100,000 each to avoid legal action. Further, Plaintiffs' counsel never responded to Shelley Carroll of the Magic Agency's letter articulating why the settlement demand and Complaint were wrong. Plaintiffs' counsel never investigated Ms. Carroll's notification of its error, as would be essential to a reasonable investigation under FRCP 11. Similarly, when a representative from Plaintiffs' counsel contacted Roberta Herman of Party Art, he paid no attention to her explanation that Party Art did not operate children's parties or offer, use or otherwise provide costumes of children's characters. (See Herman Aff., at Paras. 14-17). Moreover, Plaintiffs' counsel's office continued to make harassing phone calls to Ms. Herman over a period of months. (Id. at Para. 18).

One federal court has recently excoriated plaintiffs who engaged in behavior such as that presently before this Court:

> This court finds that indicia of extortion are present in this case. Dozens of parties (regardless of their actual business) have received the same complaint, same chart and settlement letter. From SomethingSexyPlanet.com to CoolAnimalStuff.com, no website is safe from an Eon-Net suit for patent infringement…Eon-Net offers a nuisance settlement at the outset to avoid a hard look at the merits

- 24 -

of its infringement claims.  Given the extraordinary cost
of patent litigation, even the finest patent attorney would
need to think carefully before advising a client to spend
hundreds of thousands of dollars in litigation when a
$25,000, $50,000 or $75,000 settlement was on the table.
Indeed, in the other two Eon-Net cases before this Court,
and dozens before other Courts, the plaintiffs have opted
for the "cheap" standard offer of settlement.  An
appropriate sanction is required to deter future bad
conduct.

Eon-Net, L.P. v Flagstar Bancorp, Inc., 239 F.R.D. 609, 619
(W.D. Wash. 2006), aff'd in part, rev'd in part on other
grounds, 2007 U.S. App. LEXIS 22832 (Fed. Cir. September 27,
2007).

The Federal Circuit Court of Appeals did recently vacate
the sanctions award against the plaintiff in Eon-Net; however,
the appellate court did not disagree with the trial court's
reasoning for the sanctions.  The Federal Circuit vacated both
the initial grant of summary judgment against plaintiff and the
sanctions award solely because the lower court "improperly
granted summary judgment without affording [plaintiff] notice
and an opportunity to present argument on infringement and the
appropriate construction of the [patent at issue]."  2007 U.S.
App. LEXIS 22832 at *23.

Most significantly, the appellate court expressed
fundamental agreement with the lower court's rationale about the
improper nature of the plaintiff's litigation tactics:

[Defendant] makes much of the district court's finding that
Eon-Net's suit had indicia of extortion.  Sanctions are
appropriate where a filing is made for an improper purpose
even if that filing is not frivolous.  It may be true that

- 25 -

> ultimately [plaintiff's] suit was for an improper purpose
> and that [its] pattern of filing nearly identical
> complaints against a wide variety of companies and then
> offering to settle those complaints for a relatively small
> amount of money is one indicia of that improper purpose.

Id. at *20 (emphasis added)(citations omitted).

Here, findings that the Complaint lacked a "reasonable investigation" and that Plaintiffs brought this litigation for an "improper purpose" are amply supported. The entire "investigation" consisted of attempted solicitation and entrapment of the Moving Defendants by employees of Plaintiffs' counsel. All that Plaintiffs have placed before the Court is purported "offers to provide" allegedly infringing costumes based upon targeted false inquiries intended to entrap the defendants. No tangible act of infringement is even alleged. Moreover, Plaintiffs and their counsel are disingenuous in labeling, as they do in their Complaint, attempted solicitation and entrapment as an "investigation" and "enforcement efforts." The entire case against the Moving Defendants is fabricated, the approach nothing other than bad faith, shotgun litigation. Plaintiffs sought to entrap the Moving Defendants into "offering to provide knockoff costumes" so that they could demand $100,000 under threat of costly litigation. The filing of the Complaint is a consequence of the Moving Defendants' refusal to be blackmailed.

- 26 -

Plaintiffs' pattern of extortive litigation is demonstrated by the sources cited in the Statement of Facts. Plaintiffs' counsel has served enormous demands against small businesses across the country for alleged infringement and filed complaints when those demands are not met.   The Moving Defendants respectfully submit that this misconduct, combined with counsel's gross misconduct of attempted solicitation and entrapment in order to fabricate their claims and the consequent lack of any foundation for those claims, violates FRCP 11 and Section 35 of the Lanham Act.

The conduct of Plaintiffs' counsel also violates the New York Lawyer's Code of Professional Responsibility.  Disciplinary Rule 7-102, in establishing the ethical boundaries of client representation, forbids, *inter alia*, a lawyer from asserting a position or taking any action on behalf of a client that the attorney knows "would serve merely to harass or maliciously injure another.  See DR 7-102(A)(1).  Seeking to entrap would-be defendants, fabricate claims and then serve threatening settlement demands would seem to epitomize action intended to maliciously injure another.

The Disciplinary Rule also prohibits "assist[ing] the client in conduct that the lawyer knows to be illegal or fraudulent."   DR 7-102(A)(7).   The broad pattern of seeking nuisance settlements to avoid litigation, and the specific

misconduct here of attempted solicitation and entrapment to create a claim, is, the Moving Defendants respectfully submit, inherently fraudulent. The conduct of Plaintiffs and plaintiffs counsel, furthermore, is, as the Eon-Net court noted, "using the federal courts to leverage [their] frivolous lawsuits against less powerful litigants." 239 F.R.D. at 619.

## POINT TWO

**PLAINTIFFS' COUNSEL MUST BE DISQUALIFIED FROM REPRESENTING PLAINTIFFS PURSUANT TO THE WITNESS-ADVOCATE RULE. INEVITABLY, PLAINTIFFS' COUNSEL WILL BE CALLED TO TESTIFY AT TRIAL REGARDING ITS EMPLOYEES' ACTIVITIES IN CONTACTING THE MOVING DEFENDANTS AS PART OF THE EFFORT TO CREATE INFRINGEMENT CLAIMS.**

The New York Lawyer's Code of Professional Responsibility Disciplinary Rule 5-102(A) provides:

A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client.

Disciplinary Rule 5-102(C) similarly provides:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal…

The Second Circuit has noted the critical importance of this ethical rule, stating: "[W]hen one individual assumes the

- 28 -

role of both advocate and witness, it [may] so blur [] the line between argument and evidence that the jury's ability to find facts is undermined." Ramey v. District 141, Int'l Ass'n of Machinists and Aerospace Workers, 378 F.3d 269, 283 (2d Cir. 2004). The court will invoke the rule and require disqualification under DR 5-102(A) where it is evident "'the attorney ought to be called' as a witness at trial." Crews v. County of Nassau, 2007 U.S. Dist. LEXIS 6572 at * 9 (E.D.N.Y. January 30, 2007)(quoting Wickes v. Ward, 706 F. Supp. 290, 292 (S.D.N.Y. 1989)). Further, "the policies embodied in the witness-advocate rule dictate that a client may not decide to waive his attorney's testimony in order to keep him as counsel." 007 U.S. Dist. LEXIS 6572 at * 10 (quoting Munk v. Goldome Nat. Corp., 697 F. Supp. 784, 787 (S.D.N.Y. 1988)).

As detailed in the Statement of Facts and the accompanying Affidavit of Roberta Herman of Party Art, investigators employed by Plaintiffs' counsel initiated the August 2005 communications with the Moving Defendants giving rise to the allegations that the defendants "offered to provide" infringing "knock-off" costumes of plaintiffs' trademarked characters for children's parties. Plaintiffs' counsel has in fact admitted this to the counsel for the Moving Defendants, and the investigator's employment and all notes and communications related to her August 2005 contacts with the defendants is a subject of

discovery.    Moreover, a member of the firm contacted Roberta
Herman of Party Art repeatedly regarding the allegations against
her and her company.    (See Exhibits J-Q to the Ingber Affidavit;
see also Statement of Facts, *supra*, (xxii)-(xxxi)).

Inevitably, if this action were to go to trial, the Moving
Defendants would call attorneys and employees from plaintiffs'
counsel regarding their conduct as part of their defense against
the    infringement    claims.      The    attempted    solicitation    and
entrapment techniques used by plaintiffs' counsel bears directly
upon    pivotal    issues    of    fact    regarding    the    infringement
allegations.    The conduct of plaintiffs' counsel's employees is
direct evidence of the Moving Defendant's non-culpability for
the claims against them.    Accordingly, plaintiffs' counsel would
be    disqualified    under    Disciplinary    Rule    5-102.        This
circumstance serves to underscore why plaintiffs' counsel should
be subject to sanctions under FRCP 11, as counsel no doubt knew
when its employees sought to entice defendants into committing
infringement that the firm was inserting itself directly into
the evidentiary process and would have to testify regarding the
claim it helped to fabricate.

## CONCLUSION

For the foregoing reasons, Defendants Party Art Productions, Inc., Roberta and Philip Herman, The Magic Agency, Inc., and Shelley Carroll, respectfully request that, pursuant to FRCP 11 and Section 35 of the Lanham Act, as well as this Court's inherent equitable powers, the Court (i) dismiss the Complaint against these Defendants; (ii) impose as sanctions against Plaintiffs and their counsel jointly and severally, an award of reasonable attorneys fees to the Moving Defendants related to their defense against the Complaint; (iii) invite the other Defendants in this matter to file motions for sanctions pursuant to FRCP 11; and (iv) provide such other relief as the Court may deem appropriate under these unusual circumstances, including, by way of example, a referral of this matter to the appropriate professional body or governmental agency for an investigation of the conduct of Plaintiffs and their counsel.

Respectfully Submitted,

INGBER & GELBER, LLP

By:  s/  Mark J. Ingber
     MARK J. INGBER (MI-9098)
     181 Millburn Avenue,
     Millburn, NJ 07041

Dated: October 19, 2007

- 31 -

**INGBER & GELBER, LLP**
**Mark J. Ingber (MI 9098)**
**181 MILLBURN AVENUE**
**MILLBURN, NEW JERSEY 07041**
**(973) 921-0080**
**Attorneys for Defendants**
**Party Art Productions, Inc.,**
**Roberta Herman and Philip Herman**
**Telephone: (973) 921-0080**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

LYONS PARTNERSHIP, L.P., and HIT
ENTERTAINMENT, INC.,

                              Plaintiffs,

                                                    **Civil Action**

            -against-

                                                    **07-CV-7121**
PARTY ART PRODUCTIONS, INC., ROBERTA                **(JUDGE STANTON)**
HERMAN, PHILIP HERMAN, PARTY POOPERS,
INC., MARLA MASE, 57TH STREET PARTY
CORP. D/B/A SAVE THE DATE, JENNIFER
GILBERT, THE MAGIC AGENCY, INC.,
SHELLEY CARROLL, ERIC SILVEY D/B/A ERIC
SILVEY ENTERTAINMENT

                              Defendants.

------------------------------------------------------------------------ x

## DECLARATION OF DEFENDANT ROBERTA HERMAN IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND PLAINTIFFS' COUNSEL

I, Roberta Herman, do hereby state and declare the following in
support of the attached Motion for Sanctions against Plaintiffs
and Plaintiffs' Counsel.

    1. I am the Manager and Creative Coordinator of Defendant

1

Party Productions, Inc., a two person, small family business operating out of Hillburn, New York.

2. Since 1982, Party Art has been providing caricaturists, face-paintings and balloon sculptures at private (typically Bar and Bat Mitzvahs) or corporate events.

3. I oversee the advertising and the offering of entertainment options in designing and planning parties with Party Art customers.

4. My husband, Philip Herman, is the Creative Artist of Party Art, responsible for creating all of the caricatures, Painting and sculpture.

5. Party Art has done very few children's parties, and has not, to the best of my knowledge, ever advertised, purchased, offered, sold or provided a costume looking like or called "Bob the Builder" or any other such children's entertainment character.

6. In or around August, 2005, Party Art hired some high school girls to answer calls and respond to email solicitations.

7. Upon information and belief, in or around August, 2005, one of our summer hires received emails and/or phone calls from a woman who identified herself as "SuperNina624" seeking "Bob the Builder" and/or "Clifford" character costumes.

2

8. I did not notice or retain these emails, since we do not
   send out entertainers in character costumes.

9. Subsequently, in April, 2006, we received settlement demand
   Packages from Plaintiffs' counsel erroneously claiming that
we were infringing Plaintiffs' copyrights and trademarks, and
providing us with an "opportunity" to settle with Plaintiffs on
"reasonable terms," without litigation. See attached Exhibit B.

10. These packages from Plaintiffs' counsel contained a draft of
the Complaint, and a letter demanding that we "cease and desist"
infringing conduct and compensate Plaintiffs for infringements
to date.

11.    In order to "settle" with Plaintiffs, we, as alleged
       infringing parties, were required to: (1) surrender all
       infringing costumes to Plaintiffs for destruction, (2)
       complete   a   questionnaire   detailing…how   often   each
       infringing costume was used and the amounts charged to
       provide services using each infringing costume, (3) pay a
       reasonable settlement amount commensurate with the nature
       and extent of its infringing activities, and (4) agree to a
       permanent injunction.  The parties would then provide each
       other with mutual releases.

3

12.    After reviewing the settlement demand from plaintiffs'
counsel,  I  was  convinced  that  the  plaintiffs  were
conducting some  kind  of  "shake  down."    I  believe  that
Plaintiffs and their counsel were operating a scam, sending
out  letters  to  companies  they  thought  might  provide
entertainers for children's parties and attempting to scare
them  into  paying  for  having  at  some  time  used  and/or
offering a costume of "Bob the Builder" or another well-
known character.

13.    I  believed  that  the  settlement  demand  letter  I
received from Plaintiffs' counsel was either sent in error
or represented a scam.    Accordingly, I decided to ignore
the matter.

14.    Approximately two months later, a man who identified
himself  as  Mason  Weisz,  an  attorney  associated  with
Plaintiffs' counsel's law firm, began calling on behalf of
plaintiffs' counsel.    He phoned repeatedly, trying to get
me to admit that Party Art had costumes of trademarked
characters and that we were offering them for children's
parties.

15.    I explained to Mason Weisz time and again that this
was not the case; I described what Party Art did and that

4

children's parties were not a significant part of our business.

16.     Mr. Weisz kept referring to two emails from August 2005, in which Party Art had allegedly offered to provide a "Bob the Builder" costume.

17.     I told him that I had not sent any such emails and did not know what he was referring to.   I told him over and over again what Party Art did, and explained that we use clowns,   magicians,   fortunetellers   and   other   types   of entertainers, but not character costumes.

18.     Mr. Weisz at one point told me that I seemed "very convincing," but he nonetheless continued to call at least once a week for approximately another two months.  He only stopped when I told him, in exasperation, that if he did not stop calling, I would report him to the police for harassment.

19.     Notwithstanding the urgency of Plaintiffs' counsel's settlement demands, we were not served with a lawsuit until August, 2007.

5

20.    I have now learned that "SuperNina624" was an employee
       of Plaintiffs' counsel in August, 2005, the time period
       when she contacted Party Art.

21.    I respectfully urge the Court to grant the
       accompanying Motion for sanctions against Plaintiffs and
       Plaintiffs' counsel.

       Pursuant to 28 U.S.C. 1746, I declare under penalty of
       perjury, that the foregoing is true and correct.  Executed
       on October   , 2007.

                                    _Roberta Herman_
                                    ROBERTA HERMAN
                                                    10/19/07

**INGBER & GELBER, LLP**
**Mark J. Ingber (MI 9098)**
**181 MILLBURN AVENUE**
**MILLBURN, NEW JERSEY 07041**
**(973) 921-0080**
**Attorneys for Defendants**
**Party Art Productions, Inc.,**
**Roberta Herman and Philip Herman**
**Telephone: (973) 921-0080**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

LYONS PARTNERSHIP, L.P., and HIT
ENTERTAINMENT, INC.,

                              Plaintiffs,          **Civil Action**

            -against-
                                                   **07-CV-7121**
PARTY ART PRODUCTIONS, INC., ROBERTA               **(JUDGE STANTON)**
HERMAN, PHILIP HERMAN, PARTY POOPERS,              **CERTIFICATION OF**
INC., MARLA MASE, 57TH STREET PARTY           **COUNSEL IN SUPPORT OF**
CORP. D/B/A SAVE THE DATE, JENNIFER                **NOTICE OF MOTION FOR**
GILBERT, THE MAGIC AGENCY, INC., SHELLEY           **SANCTIONS PURSUANT TO**
CARROLL, ERIC SILVEY D/B/A ERIC SILVEY             **FED.R.CIV.P.11**
ENTERTAINMENT

                              Defendants.

------------------------------------------------------------------- x

    MARK J. INGBER, of full age, hereby certifies as follows:

    1.  I am an attorney at law of the State of New Jersey and a

partner with the firm of Ingber & Gelber, LLP, attorneys for

DEFENDANTS PARTY ART PRODUCTIONS, INC., ROBERTA HERMAN, PHILIP

HERMAN, THE MAGIC AGENCY, INC. and SHELLEY CARROLL (collectively

"the Moving Defendants"), and am responsible for the handling of

the above captioned matter, with which I am familiar.

    2.     I am submitting this Certification in support of the

Plaintiffs' accompanying Motion for Sanctions Pursuant to FRCP 11.

3.     Attached hereto as Exhibit "A", is a true and complete copy of Plaintiffs' Complaint herein.

4.     Attached hereto as Exhibit "B" and Exhibit "C" are true and complete copies of Plaintiffs' April 2006 "settlement demand packages" to Moving Defendants.

5.     Attached hereto as Exhibit "D" and Exhibit "E" are true and complete copies of Moving Defendants Answers.

6.     Attached hereto as Exhibit "F" is a true and complete copy of the April 28, 2006 letter to Plaintiffs' Counsel from Defendant Shelley Carroll.

7.     Attached hereto as Exhibit "G" is a true and complete copy of In re Barney Characters Costume Trademark and Copyright Litigation, 1998 U.S. District Lexis 12397.

8.     Attached hereto as Exhibit "H" is a true and complete copy of a July 27, 2006 Mercury News (California) article entitled "No Clowning Around in Threatened Lawsuit."

9.     Attached hereto as Exhibit "I" is a true and complete copy of a September 5, 2007 New York Daily News article.

10.    Attached hereto as Exhibit "J" is a true and complete copy of a September 7, 2007 email from Plaintiffs' counsel to the undersigned counsel.

11.    Attached hereto as Exhibit "K" is a true and complete

. 2

copy of a September 7, 2007 email from undersigned Counsel to Plaintiffs' Counsel.

12.   Attached hereto as Exhibit "L" and Exhibit "M" are true and complete copies of August 2005 emails between Defendant Party Art and Plaintiffs' Counsel's employee.

13.   Attached hereto as Exhibit "N" is a true and complete copy of a September 24, 2007 email from undersigned Counsel to Plaintiffs' Counsel.

14.   Attached hereto as Exhibit "O" is a true and complete copy of an August 2, 2005 email from Defendant Shelley Carroll to Plaintiffs' Counsel's employee.

15.   Attached hereto as Exhibit "P" and Exhibit "Q" are true and complete copies of September 25, 2007 emails from undersigned Counsel to Plaintiffs' Counsel.

16.   Attached hereto as Exhibit "R" and "Exhibit "S" are true and complete copies of October 17, 2007 email communications between Plaintiffs' Counsel and undersigned Counsel.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Ingber & Gelber, LLP


BY: S/MARK J. INGBER
Mark J. Ingber (MI 9098)

Dated:   October 18, 2007

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

LYONS PARTNERSHIP, L.P., and HIT
ENTERTAINMENT, INC.,

                         Plaintiffs,

              -against-

PARTY ART PRODUCTIONS, INC., ROBERTA
HERMAN, PHILIP HERMAN, PARTY POOPERS,
INC., MARLA MASE, 57TH STREET PARTY
CORP. D/B/A SAVE THE DATE, JENNIFER
GILBERT, THE MAGIC AGENCY, INC.,
SHELLEY CARROLL, ERIC SILVEY D/B/A ERIC
SILVEY ENTERTAINMENT

                         Defendants.

------------------------------------------------------------------- x

**Civil Action**

**07-CV-7121
(JUDGE STANTON)
JUDGMENT FOR
SANCTIONS AGAINST
PLAINTIFFS' AND
PLAINTIFFS' COUNSEL
FOR VIOLATION OF
FEDERAL RULE OF CIVIL
PROCEDURE 11**

**THIS COURT** having considered the Motion for Sanctions

Pursuant to Federal Rule of Civil Procedure 11 filed by

DEFENDANTS PARTY ART PRODUCTIONS, INC., ROBERTA HERMAN,

PHILIP HERMAN, THE MAGIC AGENCY, INC. and SHELLEY CARROLL

(collectively "the Moving Defendants") against Plaintiffs

Lyons Partnership, L.P. and HIT Entertainment, Inc.

(collectively "Plaintiffs"), and their counsel, Cowan,

DeBaets, Abrahams & Sheppard ("Plaintiffs' Counsel"),

together with any opposition thereto;

**IT IS HEREBY ORDERED**, on this _____ day of

_____, 2007, for good cause shown, that the

Complaint is dismissed with prejudice as to the Moving Defendants pursuant to FRCP 11;

**IT IS HEREBY FURTHER ORDERED** that, in accordance with FRCP 11, and as sanction for Plaintiffs' and Plaintiffs' Counsel violation of said Rule, the Plaintiffs and Plaintiffs' Counsel are jointly and severally liable to the Moving Defendants for reasonable attorneys fees and other costs related to their defense of this action;

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' and Plaintiffs' Counsel must pay said amount for attorneys fees and other costs to counsel for the Moving Defendants, Ingber & Gelber, within thirty (30) days of the date of this Order;

**IT IS HEREBY FURTHER ORDERED** that Punitive damages in the amount of_____be awarded to Moving Defendants against Plaintiffs and Plaintiffs' counsel, jointly and severally, to deter future inappropriate conduct by other plaintiffs tempted to adopt a similar style of litigation; and

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs and their Counsel shall forward a copy of this Order to every defendant charged with infringement of any of the trademarks or copyrights asserted in this suit, and then file an Affidavit of Service showing the date of service,

location of the suit by Court's location, and docket number, within 15 days of this Order.   This shall apply to all suits filed whether settled or currently in progress.

**SO ORDERED:**

_____

**THE HON. LOUIS L. STANTON,U.S.D.J.**

Date: