# EXHIBIT 19

# PINNISI & ANDERSON, LLP

BANK OF AMERICA BUILDING
111 NORTH TIOGA STREET, SUITE 200
ITHACA, NEW YORK 14850
(607) 257-8000
(fax) 257-0990

November 23, 2007

BY E-MAIL

Mark J. Ingber, Esq.
Gary Adelman, Esq.
Brian Greenfield, Esq

      Re:    Lyons Partnership, L.P., *et al.* v. 57th Street Party Corp. d/b/a Save the Date, *et al.*
             U.S. District Court, S.D.N.Y. 07-CIV-7121 (LLS)(THK)

Counsel:

I respond here to Mr. Kaplan's November 21, 2007 letter, which was delivered after hours on November 21 but not received by me until this afternoon because of the intervening holiday.

**Document and Deposition Issues**

With regard to the numbered points in Mr. Kaplan's letter:

1. <u>Depositions</u> – I confirm that Mr. Kaplan represented those stated points regarding rescheduling of the depositions, but my application to reschedule was on different grounds, because Plaintiffs had not complied with their discovery obligations, and not because of witness convenience.

2. <u>Document production</u> – this point includes an equivocation that did not occur in our call and which I do not accept. Mr. Kaplan represented during our call that the documents produced to date were the entirety of the evidence that his law firm possessed regarding either of my clients specifically. There was no limitation to "Ms. Sherman's investigation." There could not properly be such a limitation, as there was no investigation by Ms. Sherman. To my knowledge, Ms. Sherman was an employee of Plaintiffs' firm at all relevant times, and the investigation was thus of that firm or of the Plaintiffs. Consequently, I require clarification as to whether Plaintiffs and/or Plaintiffs firm have and/or had any other documentation regarding my clients specifically that has not yet been produced, regardless of whether such documents can be described as part of "Ms. Sherman's investigation," whatever that undefined term means. If any such documents exist, they should be produced. If such documents do not exist, this meritless case should be dropped. Also, I require an explanation as to why several of the pages regarding my clients are substantially blank other than to indicate that they are additional pages of an e-mail (*see, e.g.*, P0036-P0038). It appears that large but unexplained redactions have occurred.

3. <u>Instructions</u> – this point raises several issues that need further development.

Defense Counsel — 2 — November 23, 2007

a. *Number of memos* – Mr. Kaplan describes the production as a single document. Actually, it plainly is at least two: one directed to Lisa Digernes and Sarena Horowitz, and one to Ralph Sutton. This raises the question of how many other such memos were drafted and delivered to investigators besides those who called the defendants in this case. Any and all such memos should be produced.

b. *Additional documents*: Document P0048-P0050 references "call lists." Document P0051-54 mentions the same "call lists," and also references "the appropriate database," indicating that there is more than one such database. We believe that production of all call lists and all databases prepared in connection with this investigation are within the scope of Judge Stanton's order, and should be produced forthwith.

c. *Additional witnesses*: Plaintiffs' counsel previously identified as investigators only Horowitz and Sherman. The above-referenced documents indicate an "Emma Gottlieb" as the author of those memos. She is not identified in the web site of Plaintiffs' law firm, either as an attorney or otherwise. The documents are directed to Digernes and Sutton, both of whom are identified in the web site of Plaintiffs' firm as attorneys, the former as an associate and the latter as a partner. It is not clear whether the memos were sent to these attorneys to provide instructions for their calls, or for approval of tactics, or for some other purpose. We believe that (i) Digernes, Gottlieb, and Sutton should be produced for deposition, and (ii) Plaintiffs should disclose all persons who acted as investigators in this "sting" "program," and make all of them available for deposition. It also would be appropriate at this time to clarify the roles of Digernes and Sutton.

d. *Propriety of methods*: The produced memos evidence a "sting operation" in which many businesses are cold-called from phone lists that are provided to them, as in telemarketing, in order to determine whether the business offers costumed characters at all. Targeted businesses include not just party planners offering children's parties, but also "restaurants, gyms, amusement parks, etc." Plaintiffs' firm was aware that "the call lists often include businesses that do not throw parties at all." It is only after a business agrees to offer costumes that any attempt is made to determine whether such costumes were advertised for sale. The operation is intended to include a high volume of targets, as investigators are expressly provided tips about how to lie in such a way that they will be less likely to confuse themselves while making "a large number of calls in one day." Further, the net is not only cast widely, but is further designed to induce businesses to infringe innocently even if they do not offer costumes or try initially to respect trademark rights. Specifically, investigators are told that, if the cold-called business does not offer costumes voluntarily, they should inquire whether it is "possible" that the business could procure them. If a business offers costumes for which Plaintiffs had no trademark rights, the investigators were to steer the business to an offer of such costumes. If a business declines to refer to protected trademarks because of concerns regarding copyright and trademark law, the investigators are instructed to feign ignorance of the law and take other measures

Defense Counsel                           – 3 –                        November 23, 2007

intended to provide a false sense of security to the business representative. Investigators are also to determine whether the subject businesses is a "large, profitable operation" or a small business. Once anyone on the phone for the business – receptionist, other employee, etc. – indicates it is "possible" that the business could procure a costume for them, the result was a litigation threat from Plaintiffs' law firm and a demand for hundreds of thousands of dollars to settle. This entire trap for the unwary was designed, executed, and now prosecuted by employees of Plaintiffs' law firm. In short, the memos document exactly the kind of objectionable scheme that defense counsel described for the Court at the November 9, 2007 conference, and which Plaintiffs' counsel denied. It appears that Plaintiffs' counsel realized that these memos would be revealed in the depositions which the Court ordered, and thus produced them in advance of the depositions – but after previously having suggested, incredibly, that no such documents exist. These documents confirm our suspicions regarding the impropriety of the conduct, and I suspect they are the tip of the iceberg.

## Privilege Issues

Mr. Kaplan's letter proceeds to both claim attorney-client and work product privileges while denying any need to provide a privileged document log. Both points are legally unsupportable.

I stand by the position stated at the November 9 conference, that no privilege protects any of the documents sought. As Judge Sweet observed in the recent case of <u>One Beacon Insurance Co. v. Forman Intern., Ltd.</u>, 2006 WL 3771010 (S.D.N.Y.):

> Investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel. *See Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 575 N.Y.S.2d 809, 581 N.E.2d 1055, 1061 (N.Y.1991) ("a lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a non-lawyer"); *see also Upjohn Co. v. United States*, 449 U.S. 383, 396, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (U.S.1981) ("a party cannot conceal a fact merely by revealing it to his lawyer"); *Congregation Bnei Luzer, Inc. v. Md. Cas. Co.*, No. 04 Civ. 2353(BSJ), 2004 WL 2609570, at *2 (S.D.N.Y. Nov.17, 2004) (finding that investigative reports prepared by or for an insurer are not afforded work-product protection); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, Nos. 93 Civ. 6876(KMW), 94 Civ. 1317(KMW), 1995 WL 598971, at *10-11 (S.D.N.Y. Oct. 11, 1995) ("Discoverability of a communication depends on its nature, rather than its source.").

Even if a privilege might have protected the requested information, which we dispute, Plaintiffs lose any such protection they might otherwise have enjoyed by failing to provide a privileged document log in compliance with the Federal Rules and Local Rules promulgated thereon. As Judge Sweet further explained:

Defense Counsel — 4 — November 23, 2007

> Courts in this Circuit have also refused to uphold a claim of privilege in response to a subpoena when no privilege log has been produced in compliance with Federal Rule of Civil Procedure 45(d)(2) and Local Rule 26.2. *See, e.g., Treppel*, 2006 WL 661405, at *2 (ordering production of a privilege log and production of any documents responsive to a subpoena not identified in the log); *In re Application for Subpoena to Kroll*, 224 F.R.D. 326, 328-29 (E.D.N.Y.2004) (ordering subpoenaed attorney to produce a privilege log as required by Rule 45). Indeed, an attorney's "blanket statement" that all documents responsive to a subpoena are privileged is entirely "insufficient to prove the essential elements of the attorney-client privilege." *Kroll*, 224 F.R.D. at 329.

I also recall the Court's admonition that assertion of work product or other privilege for investigative methods in this case would result in preclusion of evidence that would be fatal to Plaintiffs' claims. I therefore ask that Mr. Kaplan clarify the scope of his blunderbuss assertion of privilege so that both its merits and its consequences can be properly evaluated.

### Requirements of Save the Date Defendants in Lieu of Conference

To clarify by summary, it is the position of the Save the Date Defendants that, if a Monday conference is to be obviated, Plaintiffs must:

1. Confirm that Plaintiffs have produced all documents in their possession or control regarding the Save the Date Defendants;

2. Explain why several pages of documents produced regarding the Save the Date Defendants are substantially blank;

3. Produce the call lists for the "investigation program;"

4. Produce the databases for the "investigation program;"

5. Produce all instruction memos similar to and instigating the documents produced as P0048-P0054;

6. Agree to produce for deposition all investigators in the program, not just Horowitz and Sherman (which currently are known to include Emma Gottlieb, and perhaps also including Attorneys Digernes and Sutton and possibly other persons);

7. Clarify the subject matter and scope of the assertions of attorney client and work product privilege; and

8. Deliver a privileged document log.

I will be available to discuss these issues in advance of the November 26 conference by e-mail

Defense Counsel — 5 — November 23, 2007

during the weekend, and by e-mail and/or telephone on Monday morning. If this is not all resolved by noon Monday, the Save the Date Defendants believe that the conference will be necessary.

Very truly yours,

*-- Michael D. Pinnisi --*

Michael D. Pinnisi

cc by e-mail: Toby Butterfield, Esq.
Matthew Kaplan, Esq.