# EXHIBIT A

1

7CEAALYOC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LYONS PARTNERSHIP, LP,

        Plaintiff,

    v.                                    07 CV 7121 (LLS)

PARTY ART PRODUCTIONS, INC.,

        Defendant.

------------------------------x
                                    New York, N.Y.
                                    December 14, 2007
                                    12:00 p.m.

Before:

                HON. LOUIS L. STANTON,

                                    District Judge

                      APPEARANCES

COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP
    Attorneys for PLAINTIFF Lyons
BY:  MATTHEW A. KAPLAN

INGBER & GELBER, LLP
    Attorneys for Defendant Party Art
BY:  MARK J. INGBER

BARTON BARTON & PLOTKIN
    Attorneys for Defendant Party Poopers
BY:  GARY PHILIP ADELMAN

(Robing room)

THE COURT:  In a communication dated Saturday, December 1 it was Mr. Pannisi who said that "given Ms. Sherman's known conduct her vacation plans are irrelevant to me.  If we can proceed with her deposition before January 13th she'll have to change her plans.  If you can't arrange that you'll have to explain your inability to produce your witness to the judge".

And I am the judge and I am wondering whether Mr. Pannisi is availability.

MR. INGBER:  I am sorry, your Honor.  I don't know.  I can't tell you anything further on it.

MR. ADELMAN:  I don't know any of the facts as far as why he is not here.  I do know that I feel the same way he does which is we seem to be dragged back here every time.  Nonetheless, I am here so I can't say anything about that.  But I don't know where he is, so I can't give an excuse for him but I think that the three of us are more than competent to handle -- the arguments are the same among the four defendants.  Other than that I think I am going to be quiet right now.

THE COURT:  You were saying you were dragged back.

MR. ADELMAN:  The reason I said we were dragged back was because I took very what I thought were very copious notes and I personally discussed a number of the issues.  We had a discussion between myself and your Honor and I thought I

drafted a very succinct, clear order and we seemed to continue to argue over what I would consider minutia primarily because the one issue I thought was clear which was that the plaintiffs were to give us a list of the investigators and it was not just the investigators that talked to our clientele but that had a direct lineage to those investigators either training or drafting the scripts.

Ms. Deagerness who the second point was I asked for her deposition, she is on a confidential memorandum that addresses I believe the scripts and some of the issues that relate to our clients directly. The plaintiff's response to both of those things were that we don't -- basically, the first one is that we don't have to give you a list which I think Ms. Pannisi brought up a good point which is that they are fact witnesses.

The second thing is they felt that we were going to waste our time with Ms. Deagerness and that we could get the same information out of the other lawyer whose name alludes me.

My response to that is, I need the list of witnesses to prepare my questions.

THE COURT: Sutton?

MR. ADELMAN: My question especially for Mr. Sutton and I am going to ask Mr. Sutton about all the investigators that involved my client and about who drafted the scripts and things like that. And I think having the names of those people

in advance are important so that we could ask him directly who they are.

And it's important for us to depose Ms. Deagerness because quite frankly we don't know exactly what she did, but we know she was on a confidential important memorandum and I agree with Mr. Pannisi to the affect that I don't want to just take Mr. Sutton's or the plaintiff's word that she had nothing to do with it. I just want to hear it out of her own mouth. My client is willing to pay for that deposition. And I said in my e-mail that if her deposition was only ten minutes and if it was four questions and she answered no to all of them then we gone. That's it.

I think this conference is wasting more time than that deposition would. That was my whole point to that and that's why I made the, I apologize for the way I said it, the comment that we were dragged here.

THE COURT: Let me tell you what, I don't resent the words "dragged to" because I am administering the case the way I think is right anyway. But if they reflect a feeling of resentment at being here because you think the case is being over conferenced then I would take that into account in administering the case. I am trying to get it to go faster in getting to the facts and I am very sensitive to either party shadow boxing or using technicalities to extend what ought to be a fast straightforward process. And I thought when I set up

7CEAALYOC                Conference

    this conference that the points remaining at issue at the time I did that were so small that they'd inevitably be resolved by counsel beforehand. And the fact that they aren't in itself makes the conference useful in my mind in keeping the thing going, but I don't, in any case, want to over conference.

    I recognize the burden to the lawyers and their clients and I wouldn't have even commented on Mr. Pannisi's absence were it not for the tone in his communications which indicates to me the kind of attitude that counsel should not be expressing towards or against each other.

    MR. ADELMAN: I agree with that last point and I don't think that you are over conferencing at all. In fact, for me I am -- and I am usually in this court anyway on a fairly daily basis even though my client has to pay for this. I think I agree with you as far as I think Mr. Pannisi over stepped a little bit as far as what his tone was but I think he is as frustrated as we are. And to a certain degree, not his tone, but his words reflect all of our feelings which is we just want to get forward.

    By the way, I mean I'll just mention this is that I think the discovery that was due to us was obvious. You were a source material which to date I haven't received. We are arguing about the depositions in the list. Why couldn't I have received that yet? It's things like that that Mr. Pannisi was just expressing and having spoken to Mr. Pannisi extensively on

1  the telephone about the case. Rather than about the attitude
2  of the plaintiffs or anything else I've kind of tried to start
3  taking the lead here, which is why I drafted the order myself.
4  I am trying to be unemotional about it, just straightforward
5  and that's way thought I did with my order.
6          THE COURT:  Yes. The function of the lawyers -- this
7  ought to be the last word on that topic -- but the function of
8  the lawyers is to absorb the pressure between clients and the
9  needs of the case and everything else.
10         MR. ADELMAN:  Agreed.
11         THE COURT:  That's what makes the practice of law such
12 fun.
13         MR. ADELMAN:  Colorful.
14         MR. INGBER:  The defendant's counsel strongly believes
15 that the reason that plaintiffs are trying to narrow a list is
16 because we suspect that the particular attorneys involved in
17 this case, not just Mr. Sutton but, perhaps, Mr. Kaplan or
18 Mr. Butterfield were involved in the investigation program.
19 Doesn't seem like a very large stretch and this is based in
20 some part in an effort to counter our prior discussions about
21 disqualification of the attorneys.
22         THE COURT:  Well, your beliefs are your own. When you
23 support them with facts and evidence I'll be interested in
24 them.
25         Mr. Kaplan, you've heard what brings us together.

7CEAALYOC                Conference

1      MR. KAPLAN:  Yes.  And I think that Mr. Ingber's last
2 point is really crystallizing what the problem is here.  Your
3 Honor, at post both the initial conference and at the last
4 conference I believe which was November 26 wanted to have this
5 limited discovery to see how did we get to these defendants and
6 then test how what happened during the investigation, limiting
7 it to the investigation of these defendants.  The order that
8 was created that Mr. Adelman had provided to us wanted a list
9 of names of everybody in the investigation program.
10      That's going beyond what your Honor had ordered.  Your
11 Honor wanted to limit it, wanted to make it narrower to get to
12 a point where your Honor, at least my impression is that, your
13 Honor wanted to get everyone to a point where we could see that
14 the investigation program was proper and permit then plaintiff
15 to go ahead with its case in chief which is what this case is
16 about.  This case is about defendant's infringement of
17 plaintiff's intellectual property rights.
18      Defendants have not given me dates to try to schedule
19 depositions.  We could have gone, we could have moved forward
20 at least with getting dates.  But I don't think they want to.
21 What they want to do is keep expanding and pulling other people
22 in.  The order that was provided to your Honor in Mr. Ingber's
23 letter contains another name that wasn't even provided in Mr.
24 Adelman's original order to me which we were attempting to work
25 through.  They want to now depose Mason Weiss, another

7CEAALYOC                Conference

attorney.  They want to depose or go after all of the investigators and that's not, that's expanding everything.

They are trying to avoid the case, our case in chief. They are trying to avoid every reason why we're in court today and if what defendant's have said and is true that oh, our clients are small and everything, they're taking a litigation strategy of trying to depose the world and that's not an economic use of time that's not an efficient use of time.  And with regard to Ms. Deagerness plaintiff's sole point in suggesting that she not be part of the order to be produced for deposition is that her involvement was limited in the investigation.  She wasn't even in contact with any of the defendants.  Take the deposition of Mr. Sutton, the attorney who was --

THE COURT:  What were her contracts with the investigators?

MR. KAPLAN:  Again, I believe they were limited.  She was not involved in the investigator training.

THE COURT:  Well, they're interested in that topic.

MR. KAPLAN:  Again, my suggestion was is take the deposition of the investigators, take the deposition of Mr. Sutton.  If it's only three or four questions, perhaps, it's another discovery device except for having a full day of depositions or even a half day of depositions, dragging her out of her office and what have you, when there could be other ways

of getting to that information which they could get the same thing but for a less disruptive manner of doing it.

THE COURT: How long ago did you say the depositions should be taken?

MR. KAPLAN: That was part of one of the first, that was part of the initial conference where you had suggested that we provide dates originally to defendants, I believe, November 19th. We got complaints that they weren't on the same day, then we had some they wanted more evidence.

THE COURT: My question was, how long ago was it?

MR. KAPLAN: November 9th, I believe, was the initial conference.

THE COURT: You think I am going to hear reargument now as to whether there should be depositions?

MR. KAPLAN: No. I --

THE COURT: Well, then don't waste time on it. That's the discovery device that should be used.

MR. KAPLAN: Okay, your Honor.

THE COURT: On the points at issue the narrow points I think they do grow out of two big sources of problems in litigation. One is the interests of the different parties and the other is a genuine difference of recollection about what happened at a conference.

The defendants' proposed order which starts with a request for a list of all individuals involved in the

1  investigation program including, but not limited to, those

2  individuals directly involving investigation of the defendants

3  and so forth misconstrues what I said at the conference.

4  　　　　I think at an earlier conference the defendants refer

5  to a desire to lay the basis for a class action brought on

6  behalf of all peoples similarly situated.  And may still

7  entertain a desire to use this case to develop evidence to

8  support that.  And I have tried to keep it clear, not very

9  successfully, that at this stage in this case it was not going

10 to be used for that purpose.

11 　　　　If there is some ambiguity in what I am saying I would

12 like to hear it now and clarify anything because I am not

13 really looking forward to having say it again

14 　　　　MR. ADELMAN:  I think that as I wrote the order I

15 should address that.  I believe that I was confused because it

16 was my understanding that we were, that the depositions

17 themselves were to be limited in that respect.

18 　　　　THE COURT:  I am not at this point dealing with that.

19 　　　　MR. ADELMAN:  I'm sorry.

20 　　　　THE COURT:  I am dealing with any misconception about

21 the purpose of what we're doing now.  It has a single

22 purpose --

23 　　　　MR. ADELMAN:  I agree, your Honor.

24 　　　　THE COURT:  -- to determine the facts about these

25 defendants, not others, and if there is anything ambiguous in

7CEAALYOC                Conference

what I am saying I would like the questions now.

    MR. ADELMAN:  I think it's crystal clear.  That's why I asked for that list so that I could ask the deponents about those people to eliminate them, I guess, as investigators or as people who worked on the investigation of my client because right now all that's happening is we're being told it was investigated, who investigated my client.  We're being told who contacted my client.  I did not want to depose everybody on that list.  I only wanted to depose the limited amount of people that I requested.

    What I thought was fair and within what your Honor's sole focus was to get a list of the investigators in the program to eliminate those investigators as people who are not in contact with my client and that could be done solely by talking to Mr. Sutton and saying, here are the people on the list, which of these personnel.  Or maybe Mr. Kaplan is right on this point is which is maybe we could do that sole question by interrogatory.  I am not --

    THE COURT:  The answer is short, is no.

    My own contemporaneous note after our last conference and the note is dated November 26, it may have been within a day or two of the conference, but records that I directed that defendants were entitled to examine the investigators who contacted them and those who trained the investigators who contacted them including Ralph Sutton and Emma Gottlieb and

7CEAALYOC                  Conference

1   that the defendants were entitled to a list of the people who
2   trained the investigators who contacted them.  And I have no
3   intention of having either you or me expand those categories.
4   I am clear that it's an honest error.  I am not saying anything
5   else.  But actually the plate is out of the barrel at that
6   point
7           MR. ADELMAN:  Fair enough.
8           THE COURT:  That means that the order that I'll sign
9   is essentially the plaintiff's order and change it to -- well,
10  we have to deal with Ms -- what is her name? Deagerness.  We
11  have to deal with her, but otherwise the plaintiff's order as
12  it stands except for paragraph 3 which I think can be expanded
13  to include something else that we did go into at the last
14  conference and I am thinking of changing -- do you have a point
15  about the privilege?  Plaintiffs shall identify any document
16  withheld on the basis of privilege on a privilege log together
17  with the facts establishing privilege.  Except for such
18  documents, plaintiffs shall certify to defendants in writing
19  that all the e-mails and other documents in plaintiff's
20  possession relevant to the motion for sanctions or
21  disqualification have been supplied to them with any exceptions
22  clearly set forth.
23          That was, I think we did go over and I think you are
24  entitled to.
25          Now, what about Mr. Gurns?  Her name is on the

7CEAALYOC            Conference

confidential memorandum.  They want to know how it got there
and what the subject of the memorandum, the facts that it's
confidential also always make a some -- it always turns out to
be extremely dull.  That's like reading somebody else's mail.
It's so boring, but we have to do it.  And I think that there
may be a short deposition and think you should take it and
there shouldn't have been a -- it does take more time to come
here and discuss it than it does to get it done.

    MR. INGBER:  Your Honor, at one of the prior
conferences we did mention their attorney Mason Weiss as
someone who had contacted my clients and it was inadvertently
left off the initial order, proposed order that Mr. Adelman had
presented to Mr. Kaplan.  So in submitting to the Court I did
add his name because of those issues it was inadvertently left
off.

    THE COURT:  It's on the one attached to your letter of
December 12?

    MR. INGBER:  Yes, your Honor.

    THE COURT:  What were the conversations between him
and your client about?

    MR. INGBER:  He was calling my client, from what my
client is telling me, every week trying to tell them that they
that they committed infringement, that they committed these bad
acts that the plaintiffs are claiming and that they have to pay
the settlement money and calling every week.  I did put it in

7CEAALYOC                Conference

the -- I did reference him in the sanction motion. It's in the declaration for my client, your Honor, Ms. Roberta Sherman about her actions, about his actions to her.

If you want I can I have that at hand.

THE COURT: No, that refreshes me.

MR. INGBER: Okay. That was the reason why we need his deposition. He was directly involved in this investigation program in speaking to my clients and he is a fact witness.

THE COURT: Do you happen to know whether he ever asked whether she was represented by counsel?

MR. INGBER: I don't know.

THE COURT: Mr. Kaplan.

MR. KAPLAN: Yes, he would have asked.

THE COURT: Not would have.

MR. KAPLAN: He was, he had called her, this was after the cease and desist settlement packages were sent out. She did not respond -- she did not respond to it. He was calling her to find out whether she was going to retain counsel and to see whether some sort of settlement could be arranged. He did not call every week. He was calling to determine whether some sort of settlement could be worked out.

THE COURT: I think we'd better have his deposition. Not so much that it bears directly on the point of the investigation but because if it isn't determined what he said and when it'll be a sore point for the whole rest of the case

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7CEAALYOC                    Conference                         15

anyway. And if he over stepped which from the tone of those settlement demands that wouldn't be beyond imagination, then the scope of the over step and it's better to have it clear early so it can be assessed accurately and gotten out the way. So let's do that now. I'll add his name to the list.

MR. INGBER: Thank you, your Honor.

THE COURT: I'll have the order out probably by the end of the afternoon.

MR. ADELMAN: Can I say one thing?

THE COURT: Yes.

MR. ADELMAN: I withdraw the word "dragged".

THE COURT: Oh, no, don't. I don't resent it.

MR. ADELMAN: I do. I must.

THE COURT: It is spoken with a pure heart. Don't worry about that.

MR. ADELMAN: I thought this was very helpful so. I can admit when I am wrong.

MR. INGBER: Coming from New Jersey I do appreciate your sense of timing and, thankfully, you didn't call this for yesterday.

THE COURT: The weather? Well, we work within the weather's limits as much as we can. Thanks so much. I hope it does better and quicker.

Oh, by the way, since it has taken so much time I am lifting any stay of the plaintiff investigating or conducting

7CEAALYOC                    Conference

discovery of the defendant's case on the merits other than the actual conduct if that was issued.  In other words, if you want to proceed by interrogatories which I think might be quite useful in this case you are free to do it.  Okay.

    MR. KAPLAN:  The exchange of initial disclosures as well?

    THE COURT:  Yes.

    MR. KAPLAN:  Thank you.

    THE COURT:  Thank you.  That as well.  Okay.

    MR. KAPLAN:  When should those disclosures be made by?

    THE COURT:  By the time set in the Federal Rules of Civil Procedure.  You are free to do that.

    MR. KAPLAN:  Okay.  Thank you, your Honor.

    MR. INGBER:  You are likewise free?

    THE COURT:  Yes, you are likewise free.

    MR. INGBER:  Thank you.

    THE COURT:  On or about December 17?

    I don't want this first round of depositions to be encumbered, but lawyers could be exchanging the papers and otherwise discovery can go forward.

                      o 0 o

I (We) hereby certify that the foregoing is a true and accurate transcript to the best of my (our) skill and ability from my (our) stenographic notes of this proceeding.

*[signature]*
Official Court Reporter