UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

LYONS PARTNERSHIP, L.P., and HIT          Civil Action
ENTERTAINMENT, INC.,                      No.07CIV7121
                                          (JUDGE STANTON)

                          Plaintiffs,


             -against-


PARTY ART PRODUCTIONS, INC., ROBERTA
HERMAN, PHILIP HERMAN, PARTY POOPERS,
INC., MARLA MASE, 57TH STREET PARTY
CORP. D/B/A SAVE THE DATE, JENNIFER
GILBERT, THE MAGIC AGENCY, INC., SHELLEY
CARROLL, ERIC SILVEY D/B/A ERIC SILVEY
ENTERTAINMENT

                          Defendants.


----------------------------------------x


**MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS PARTY ART
PRODUCTIONS, INC.,ROBERTA HERMAN, PHILIP HERMAN, THE MAGIC
AGENCY, INC., AND SHELLEY CARROLL IN OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER PERMITTING
DEPOSITIONS OF COUNSEL AND FOR A PROTECTIVE** ORDER

        The responding Defendants herein, PARTY ART PRODUCTIONS,

INC., ROBERTA HERMAN, PHILIP HERMAN, THE MAGIC AGENCY, INC.

and SHELLEY CARROLL (collectively "Defendants") submit this

memorandum in opposition to Plaintiffs' Lyons Partnership,

L.P., and Hit Entertainment, Inc. (collectively "Plaintiffs")

Motion for reconsideration of the Court's December 17, 2007

Permitting Depositions of Counsel and for a Protective Order.

                                1

Plaintiffs Motion should be denied because Plaintiffs waived any objection to the Court's ruling at the December 14, 2007 Hearing and because the Court's order was based on its properly applied judicial discretion.

## PRELIMINARY STATEMENT

Plaintiffs in their motion contend that the Court overlooked controlling law when it ordered the depositions of opposing counsel and request that the Court revoke its December 17, 2007 order (the "Order"). Plaintiffs' motion should be denied, because Plaintiffs never objected to the Order at the December 14, 2007 Hearing. Plaintiffs' Motion should also be denied because the Order was based on the Court's judicial discretion, which it properly applied. The Court took into consideration all of the relevant facts and circumstances to determine whether the deposition of counsel posed an inappropriate burden or hardship. The lawyers to be deposed, Lisa Digernes, Ralph Sutton and Mason Weisz, are fact witnesses in this action as revealed in Plaintiffs' counsel's August 1, 2005 Memorandums and in documents submitted to this Court. The Defendants depend on the statements of Plaintiffs' counsel's employees and/or former employees, in order to prove their defense of unclean hands.

2

## 1. **STATEMENT OF FACTS**

At the November 26, 2007 Conference, the Court Ordered that the Defendants were entitled to examine the opposing counsels' investigators and those individuals who trained their investigators and any other individuals who contacted Defendants, including Ralph Sutton, Esq., Lisa Digernes, Esq. and Emma Gottlieb all employees of Plaintiffs' counsel.

At the December 14, 2007 Hearing, Plaintiffs' counsel made no objections to the scope of the depositions of their attorneys and agreed to produce Mr. Sutton Esq., Ms. Digernes, Esq. and also Mason Weisz, Esq.

Pursuant to the December 14, 2007 Hearing Transcript (copy of which is attached to Brian Greenfield, Esq.'s previously attached Declaration in Opposition to Plaintiffs' Memorandum), pages 8-9, the following colloquy was transcribed:

"**Mr. Kaplan:** Again, my suggestion was is take the deposition of the investigators, take the deposition of Mr. Sutton. If it's only three or four questions, perhaps, it's another discovery device except for having a full day of depositions or even a half day of depositions, dragging her out of her office and what have you, when there could be other ways of getting to that information which they could get the same thing but for a less disruptive manner.

3

**The Court:** How long ago did you say the depositions should be taken?

**Mr. Kaplan:** That was part of one of the first, that was part of the initial conference where you had suggested that we provide dates originally to defendants, I believe, November 19th. We got complaints that they weren't on the same day, then we had some they wanted more evidence.

**The Court:** My question was, how long ago was it?

Mr. Kaplan: November 9th, I believe, was the initial conference.

**The Court:** You think I am going to hear reargument now as to whether there should be depositions?

**Mr. Kaplan:** No. I--

**The Court:** Well, then don't waste time on it. That's the discovery device that should be use.

**Mr. Kaplan:** Okay, Your Honor."

Furthermore, the transcript continues on pages 12-15 with the

following colloquy:

**The Court:** That means that the order that I'll sign is essentially the plaintiff's order and change it to --well, we have to deal with Ms-- what is her name? Deagerness. We have to deal with her, but otherwise the plaintiff's order as it stands except for paragraph 3 which I think can be expanded to include something else that we did go into at the last conference and I am think of changing--do you have a point about the privilege? Plaintiffs shall identify any document

4

withheld on the basis of privilege on a privilege log together
with the facts establishing privilege.   Except for such
documents, plaintiffs shall certify to defendants in writing
that all the e-mails and other documents in plaintiff's
possession  relevant  to  the  motion  for  sanctions  or
disqualification  have  been  supplied  to  them  with  any
exceptions clearly set forth.  That was, I think we did go
over and I think you are entitled to.  Now, what about Mr.
Gurus [Lisa Digernes]? Her name is on the confidential
memorandum. They want to know how it got there and what the
subject of the memorandum, the facts that it's confidential
also always make a some -- it always turns out to be extremely
dull. That's like reading somebody else's mail. It's so
boring, but we have to do it. And I think that there may be a
short deposition and think you should take it and there
shouldn't have been a -- it does take more time to come here
and discuss it than it does to get it done.

**MR. INGBER:** Your Honor, at one of the prior conferences we did
mention their attorney Mason Weiss as someone who had
contacted my clients and it was inadvertently left off the
initial order, proposed order that Mr. Adelman had presented
to Mr. Kaplan. So in submitting to the Court I did add his
name because of those issues it was inadvertently left off.

**THE COURT:** It's on the one attached to your letter of December
12?

**MR. INGBER:** Yes, your Honor.

**THE COURT:** What were the conversations between him and your
client about?

**MR. INGBER:** He was calling my client, from what my client is
telling me, every week trying to tell them that they they that
they committed infringement, that they committed these bad
acts that the plaintiffs are claiming and that they have to
pay settlement money and calling every week. I did put it in
declaration for my client, your Honor, Ms. Roberta Herman
about her actions, about his actions to her.  If you want I
can I have that at hand.

**THE COURT:** No, that refreshes me.

5

**MR. INGBER:** Okay. That was the reason why we need his deposition. He was directly involved in this investigation program in speaking to my clients and he is a fact witness.

**THE COURT:** Do you happen to know whether he ever asked whether she was represented by counsel?

**MR. INGBER:** I don't know.

**THE COURT:** Mr. Kaplan.

**MR. KAPLAN:** Yes, he would have asked.

**THE COURT:** Not would have.

**MR. KAPLAN:** He was, he had called her, this was after the cease and desist Settlement packages were sent out. She did not respond -- she did not respond to it. He was calling her to find. out-whether she was going to retain counsel and to see whether some sort of settlement could be arranged. He did not call every week. He was calling to determine whether some sort of settlement could be worked out.

**THE COURT:** I think we'd better have his deposition. Not so much that it bears directly on the point of the investigation but because if it isn't determined what he said and when it'll be a sore point for the whole rest of the case anyway. And if he over stepped which from the tone of those settlement demands that wouldn't be beyond imagination, then the scope of the over step and it's better to have it clear early so it can be assessed accurately and gotten out the way. So let's do that now. I'll add his name to the list.

**MR. INGBER:** Thank you, your Honor.

**THE COURT:** I'll have the order out probably by the end of the afternoon.

As evidenced by the foregoing, the Plaintiffs were given full and fair Hearings by the Court at each of the November 9, November 26 and December 14, 2007 Hearings. There can be no doubt then, that the Court took into consideration all of the relevant facts and circumstances to determine whether the proposed depositions would entail and inappropriate burden or hardship.

## ARGUMENT
### A. STANDARD OF REVIEW

1. Motion for Reconsideration

The standard for granting a motion to reargue "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 256 *(2d Cir. 1995)*. Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* Thus, the rule "is to be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 3912 *(S.D.N.Y. 2000)*. Nor may

the moving party use such a motion to "advance new facts,

issues or arguments not previously presented to the court."
*Bank Lewni Trust Co. of New York v. Istim, Inc., 902 F. Supp,
46, 48 (S.D.1V. Y. 1995)*. These limitations are designed to
ensure finality, and prevent the rule from becoming a vehicle
by which a losing party may examine a decision "and then
plugthe gaps of the lost motion with additional matters."
*Carolco Pictures, Inc.* v. *Scrota,* 700 F. Supp. 169, 170
*(S.D.N.Y. 1988)*.


## 2. Protective Order

Pursuant to Fed. R. Civ. P. 26(c) the Court may:

"for good cause, issue an order to protect a party or person
from annoyance, embarrassment, oppression, or undue burden or
expense, including one or more of the following:

(1) that the disclosure or discovery not be had;
(2) that the disclosure or discovery may be had only on
    specific   terms   and   conditions,   including   a
    designation of the time or place;
(3) that the discovery may be had only by a method of
    discovery other than that selected by the party
    seeking discovery;
(4) that certain matters not be inquired into, or that
    the scope of the disclosure or discovery be limited
    to certain matters;
(5) that discovery be conducted with no one present
    except persons designated by the court;
(6) that a deposition, after being sealed, be opened
    only by order of the Court

8

(7) that a trade secret or other confidential research,
    development, or commercial information not be
    revealed or be revealed only in a designated way;
    and

(8) that the parties simultaneously file specified
documents or information enclosed in sealed envelopes to
    be opened as directed by the court."


The burden of showing good cause for the issuance of a
protective order is on the party requesting it, the Plaintiffs
herein.

## B. RECONSIDERATION OF THE DECEMBER 17, 2007 ORDER IS NOT REQUIRED, BECAUSE THE COURT DID NOT ERR WHEN APPLYING ITS JUDICIAL DISCRETION

The Courts in this Circuit acknowledge that the
deposition-discovery regime of the Federal Rules of Civil
Procedure is extremely permissive and accordingly have treated
questions involving this regime broadly and liberally.
_Schlagenhauf v. Holder,_ 379 US. 104, 114-15, 13 L Ed, 2d 152, 85
S. Ct. 234 (1964). Fed R. Civ. P. 26 gives the courts a broad
discretion to manage the manner in which discovery proceeds. _See_
_In re Subpoena Issued to Dennis Friedman,_ 350F.3d 65, 72 (2d Cir.
2003). The standard set forth by this Rule requires an approach
that is flexible to the depositions of counsel whereby the
judicial officer that supervises the discovery process takes into
consideration all of the relevant facts and circumstances to
determine whether the deposition of counsel poses an
inappropriate burden or hardship. See _Id_. This lenient approach
to the depositions of lawyers negates the assumption that an
attorney is automatically immune from being deposed and

9

does not require that alternative discovery devices are employed
before such a depositions is administered. See, e.g. *Calvin Klein
Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 211 (S.D.N. Y.
2000).   Courts in* this district take the position that the
Federal  Rules  mandate  a  flexible  approach  concerning  the
deposition discovery regime and believe in broad discretion of
the courts to manage the discovery process. Judges may prevent
depositions when the facts and circumstances are such that they
create an inappropriate burden or hardship. Factors that may be
considered  when  assessing  the  question  of  permitting  the
deposition of an attorney, among others, are: the need to depose
the lawyer, the lawyer's role in connection with the matter on
which discovery is sought in relation to the pending litigation,
the risk of encountering privilege and work-product issues and
the extent of discovery already conducted.

        These factors weigh heavily in favor of maintaining the
Court's Order to allow Defendants the right to depose the lawyers
in question. First, as stated at an earlier point in this
opposition,  the  depositions  are  needed  in  order  to  prove
Defendants defense of unclean hands.

        In *Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F2d
837, 847 (9th Cir. 1987)* the ruling court stated that unclean
hands is a defense to a Lanham Act infringement suit. Furthermore
indicates that "entrapment" may be an unclean hands defense. In

order to prove their affirmative defense that the Plaintiffs came before this court with unclean hands, because they enticed Defendants to make certain statements that Plaintiffs allege constitute infringement of their intellectual property rights, Defendants depend on a clear and complete factual account with respect to the circumstances of Plaintiffs modus operandi of "policing" their rights. Lisa Digernes, Ralph Sutton and Mason Weisz were all involved in the scheme that Plaintiffs' employ (the "Scheme") to, "protect" Plaintiffs' intellectual property. In order to get a clear understanding of how this Scheme was planned, supervised and administered and thereby find facts that may support Defendants stance that Plaintiffs Scheme renders their actions unethical and in bad faith with respect to the subject of the complaint, (i.e. the alleged infringement by Defendants,) Defendants depend on the depositions of Lisa Digernes, Ralph Sutton. and Mason Weisz. Plaintiffs' contention that the defense of unclean hands may not be a valid defense as well, as the case law they cite in that regard is misplaced and unconvincing. The factual background of the case at bar is decisively different from the facts of _Cartier v. Svinbolix, Inc._ _386 F. Supp. 2d 354 (SDNY 2005)_. Here, Plaintiffs did not engage private investigators in order to discover information as to possible infringements of their property rights. Rather, the law firm representing Plaintiffs in this action administered the Scheme and used its own employees to make deceiving phone calls to Defendants in order to entice them to act in a manner that allegedly lead to a violation of Plaintiffs' rights.

11

Plaintiffs conduct their alleged "policing" in an an improper manner that is based on threatening small business with lawsuits and economical ruin and thereby coercing them into unfair settlements, including exploitative settlement payments. Such conduct is unethical and would give Defendant an unclean hands defense.

In order to convince the Court that the institution of this lawsuit was made in good faith, Plaintiffs cite to *Brown* v. *Party Poopers, Inc., 2001 WL 1380536 (SDNY July 9, 2001)*. However, the factual background of this case is again readily distinguishable to the case at hand as Brown involved the imposition of damages upon the Defendants after a default judgment and an inquest.

Second, Plaintiffs allege that the status of the discovery proceedings weighs against the taking of depositions of the lawyers specified in the Order. They suggest that interrogatories would be a more appropriate method of attaining the information desired by Plaintiffs. However, Plaintiffs fail to consider that district courts typically treat oral depositions as a means of obtaining discoverable information that is preferable to written interrogatories. *See Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549-50 (S.D.N.Y. 1989)*. This preference is also exemplified in Local Civil Rules 33.3 for the Southern District of New York. Furthermore, discoverable information includes any information that is relevant to a claim or defense. *See In re Subpoena Issued to Dennis Friedman, 350F.3d 65, 72 (2d Cir.*

*2003).*

In the case at bar, depositions are clearly the most appropriate discovery tool for Defendants purposes of obtaining information as to an unclean hands defense against Plaintiffs.

It is beyond dispute that members of plaintiffs' counsel's firm served as their own investigators in contacting the named defendants in an effort to obtain information *vis a vis* alleged trademark and copyright infringements. Again, it bears noting that it was, in fact, plaintiffs' attorney's own staff which conducted such "investigation", spoke with the named defendants and thus such firm – its attorneys and staff – would, by necessity, be required to provide testimony and documentary disclosure during the course of discovery and at trial.[1]

In Gleason v. Zocco, 9.1 F. Supp. 32 (SDNY, 1996), this Court granted defendant's motion to disqualify plaintiff's counsel in holding that plaintiff's attorney's "extensive personal involvement in every aspect of the underlying controversy that led to the suit required his disqualification as plaintiff's counsel, both because of the likelihood that he would be a necessary witness and because of the real and present danger

_____

[1]Plaintiffs' own counsel, Ralph Suttton, Mason Weiz and Lisa Digernes will be required to face such questioning as they were personally involved in the investigation of the defendants, as well as in the training of the law firm's own internal investigators as revealed in plaintiffs' counsel's August 1, 2005 Memorandum.

13

that his personal interest would impinge on his professional representation in ways deleterious to his client".  Id at 35.

In Gleason, the Court found:

> The inference was unmistakable that it was
> [plaintiff's attorney] not [his client] who
> was the original progenitor of the
> allegations in the complaint. Id.

As with the instant matter, plaintiffs' counsel's own employees created the factual basis of each and every allegation asserted against the defendants, such that their "extensive personal involvement in every aspect of the underlying controversy that led to this lawsuit required disqualification".  Id.

Likewise, in the matter of Yankelevitz v. Cornell University, 1996 WL 447749 (SDNY, 1996), a plaintiffs' attorney's motion to disqualify defense counsel was granted where defense counsel was present at interviews of plaintiffs and conducted their investigation themselves.

Even setting aside the propriety of plaintiffs' counsels' actions in contacting the Defendants directly in order to create a factual basis for the within matter, it is abundantly clear that insofar as counsel was so intimately involved in the facts leading up to issuance of their clients' Complaint and inasmuch as it can reasonably be anticipated that plaintiffs'

counsel will be required to testify at trial concerning their own actions and the activities of the firm's employee-investigators and will object to wide swaths of defendants' anticipated discovery as "privileged", it is absolutely necessary at this early juncture to consider disqualification of plaintiffs' attorneys so as to avoid such untenable circumstances.

Plaintiffs' did not point to controlling decisions or data that the court overlooked when it ordered the depositions of the lawyers. The Court by no means overreached its discretion in ordering the depositions. There are no indications that certain issues have not been thoroughly considered by the court.

Therefore, applying the strict standard for the reconsideration of an order, Plaintiffs motion should be denied. The fact that a denial is warranted in the case at bar becomes even more apparent when it is taken into account that at no point during the December 14, 2007 conference did Plaintiffs' counsel object to the order. Counsel had the opportunity to bring forward its objections and arguments during the prior three conferences and in light of the doctrine of judicial economy, should not be allowed to relitigate these questions at this stage of the proceeding.

## C. A PROTECTIVE ORDER SHOULD NOT BE GRANTED, BECAUSE PLAINTIFFS FAILED TO SHOW GOOD CAUSE

### I Preclusion from taking Counsels' Depositions

Plaintiff's request for a protective order precluding Defendants from taking the lawyers' depositions is redundant of their request for reconsideration. Defendants have demonstrated their entitlement to the depositions of the attorneys in question in their above argument with respect to the denial of the motion for reconsideration. Defendants refer to these arguments and conclude that Plaintiffs' request should be denied, as it would contradict the spirit of a denial of reconsideration of the Court's Order.

### 2. Limitation of the Depositions

The issuance of a protective order that limits Defendants in conducting depositions is premature. A "pre-deposition" limitation with respect to the questions that may be asked at the depositions could hinder Defendants from acquiring vital information that they need in order to meet the burden of proof concerning the defense of unclean hands.

In accordance with Fed. R. Civ. P. 30(c), Plaintiffs have the right to object to any given question that they find objectionable during the deposition. Should Plaintiffs find the

16

questions posed to the deponents at the time of the deposition
to be objectionable, Plaintiffs have an ample opportunity to
object at that point in time. Whether a question is
objectionable or whether an answer may not be admissible at
trial is a question that should be decided after the deposition
took place. Thus, the limitation sought by Plaintiffs is
unwarranted.

Pursuant to the foregoing arguments, Plaintiffs failed to
show good cause for the issuance of a protective order.
Therefore, their Motion for a Protective  Order should be
denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration of Order Permitting Depositions of Counsel and for a Protective Order should be denied in its entirety. Respectfully Submitted,

**Respectfully Submitted,**

**INGBER & GELBER, LLP**

**By:  s/  Mark J. Ingber**

   **MARK J. INGBER (MI-9098)**

 **181 Millburn Avenue,**

**Millburn, NJ 07041**

**Attorneys for Defendants Party Art Productions, Inc.,**

**Roberta Herman, Philip Herman, The Magic Agency, Inc.**

**and Shelley Carroll**

         January 22, 2008

     OPPOSITION MEMORANDUM TO LYONS MOTION FOR
     RECONSIDERATION.wpd