UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYONS PARTNERSHIP, L.P. AND HIT ENTERTAINMENT, INC.<br><br>                                    Plaintiffs,<br><br>- v -<br><br>PARTY ART PRODUCTIONS, INC., ROBERTA HERMAN, PHILIP HERMAN, PARTY POOPERS, INC., MARLA MASE, 57TH STREET PARTY CORP. D/B/A SAVE THE DATE, JENNIFER GILBERT, THE MAGIC AGENCY INC., SHELLEY CARROLL, ERIC SILVEY D/B/A ERIC SILVEY ENTERTAINMENT,<br><br>                                    Defendants. | Civil Action No.<br>07-CV-7121 (LLS) |

### MEMORANDUM OF LAW OF DEFENDANTS GILBERT AND 57TH STREET PARTY CORP. IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION AND FOR A PROTECTIVE ORDER

This Memorandum of Law is submitted respectfully by Defendants Jennifer Gilbert ("Gilbert") and 57th Street Party Corp. d/b/a Save the Date ("Save the Date") in opposition to Plaintiffs' motions for reconsideration and for a protective order.

#### PRELIMINARY STATEMENT

Plaintiffs' motion contends that this Court overlooked material precedent in ruling that Defendants may depose certain fact witnesses who had a role in investigating their alleged wrongdoing, and that Defendants should be barred from obtaining otherwise-discoverable information because it was gathered for Plaintiffs by their lawyers. Those contentions are based upon misstatement and misapplication of the controlling law and pertinent facts.

This Court acted squarely within its authority under Rules 1 and 26 of the Federal Rules of Civil Procedure when it directed Plaintiffs to disclose certain facts before Defendants. That action was taken only after the Court had reviewed the pleadings, reviewed several letter-briefs, and conducted extended colloquy with counsel in chambers. The Court actions at issue were thus at the center of this Court's discretion, and well founded in law and fact.

The Second Circuit sets a very high bar for motions to reconsider, precisely to prevent just the kind of re-hashing of issues that this motion constitutes. Plaintiffs' contention that the Court overlooked laws of "privilege" and attorney witness rules both misses the mark and is insufficient, as the Court considered such matters and the Order does not infringe upon any cognizable privilege. On the contrary, Defendants seek factual discovery from witnesses with personal knowledge of the investigation at issue. Defendants are not seeking to depose persons speculated to have such knowledge, they seek persons identified by Plaintiffs' own documents as the handful of persons involved in their investigation. Defendants are not seeking at this time to depose Plaintiffs' litigators (*e.g.*, Mr. Butterfield or Mr. Kaplan), they are seeking to depose Plaintiffs' investigators and the people who directed them and received their reports, regardless of whether those persons are attorneys. Defendants are not now seeking attorney mental impressions or confidential client communications to obtain legal advice, they seek only facts regarding the investigation and its surrounding circumstances. Defendants thus seek information at the center of the case against them, from persons with personal knowledge of those facts, and this Court rightly said they could have it. The law does not give special protection against discovery to fact witnesses who happen to be lawyers, and facts not otherwise privileged do not become undiscoverable simply because the witness to them is a lawyer. There is thus no reason for this Court to reconsider its action, and even upon reconsideration, no reason to change it.

A contrary ruling would cause great and undue harm to Gilbert and Save the Date, who seek the above-described evidence in order to make out their defenses on the merits. Documents produced to date by Plaintiffs show that employees of Plaintiffs' law firm directed their subordinate employee-investigators to lie to Save the Date, and that law firm employees scripted certain of those lies for the investigators, and that law firm employees encouraged the investigators to induce Save the Date to offer trademarked products that Save the Date did not previously offer precisely so that Plaintiffs could threaten or commence legal action against Save the Date. According to our legal research to date, such facts negate elements of Plaintiffs' affirmative case and support defenses of unclean hands and similar grounds, as well as documenting apparently unethical and otherwise improper conduct. Defendants seek to depose the investigators who lied to them, and to depose the people who instructed those investigators about how to lie and to whom they should lie, and to depose the people who received reports about the responses received to the lies. Regarding Gilbert, Plaintiffs have no evidence of wrongful conduct at all. She did not ever communicate with any of Plaintiffs' investigators, and did not ever provide or even offer any products or services that infringe upon Plaintiffs' rights. Gilbert seeks depositions of the fact witnesses to confirm these facts, and to discover what basis, if any, the Plaintiffs had to name her personally in this lawsuit. The evidence so obtained will go to the heart of the defense for both Gilbert and Save the Date. Certainly, that same evidence may later also be relevant to the imposition of sanctions, but that dual relevance should not preclude Defendants from obtaining and using that evidence in their defenses on the merits.

Much of Plaintiffs' argument is a quixotic attack on the windmills of Rule 11 and disqualification motions that have not yet been filed. Those issues can and hopefully will be raised at an appropriate time. For now, however, those issues are not before the Court. There is

3

instead only relatively simple questions regarding scope and order of discovery. The Court rightly ruled that Plaintiffs' investigators and their supervisors should testify. There is nothing about that prudent direction that comes close to the standard for reconsideration.

By their motion for a protective order, Plaintiffs do not seek protection for information recognized to be privileged, they seek protection against disclosure of their own wrongful conduct. This is understandable, but not legally sound. The facts are discoverable and should be brought to light, regardless of whether the result might shame the Plaintiffs or their counsel.

### STATEMENT OF FACTS

The pertinent background facts are set forth in the filed record, supplemented by the exhibits to Plaintiffs' motion papers, and by co-defendants' submissions in opposition to the motion. We presume that the Court is fully familiar with the limited record on these issues, which all transpired recently before the Court. We avoid repetition of those facts here to avoid overburdening the Court with the repetition.

In addition, Gilbert and Save the Date offer additional proof in the Declaration of Counsel that is submitted herewith. In summary, the facts set forth in that Declaration show the lack of proper basis for Plaintiffs' selection of Save the Date as an investigation target; the utter lack of evidence regarding any misconduct by Gilbert; the written instructions provided by Plaintiffs' counsel that coached their investigators not only to dissemble, but to engage in further semi-scripted dishonesty; the grand scope of the investigation scheme and the high dollars Plaintiffs and their counsel apparently seek to obtain thereby; and regrettably, the apparent withholding or spoliation of e-mail evidence by Plaintiffs regarding their investigator's attempts to induce infringement by Save the Date.

Those facts add up clearly to show that Save the Date was induced to offer a costume it would obtain from a third party vendor solely by the dishonest inducement of an employee of Plaintiffs' counsel, conduct that Save the Date would not otherwise have undertaken. For the reasons summarized below, when those facts are applied to controlling law, Plaintiffs cannot make out a valid case against these Defendants, and powerful defenses are shown, and serious questions are raised regarding the propriety of the conduct of Plaintiffs' counsel.

The evidence that Plaintiffs seeks to protect from discovery by these motions will further support those important facts, and that evidence should come out. As discussed herein, there is no good basis in law or fact to reconsider prior directions the Plaintiffs produce such evidence, much less that this Court should issue a protective order.

**LEGAL POINTS AND AUTHORITIES**

**I.  THE MOTION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE PLAINTIFFS CANNOT MEET THE HIGH LEGAL AND EVIDENTIARY STANDARDS FOR SUCH MOTIONS, BECAUSE THE EVIDENCE AT ISSUE IS CENTRAL TO CERTAIN DEFENSES ON THE MERITS, AND BECAUSE THE EVIDENCE SOUGHT IS NOT PRIVILEGED**

Motions for reconsideration are disfavored, and the standard for granting such a motion is very strict. *See* Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided"). "A court should grant the motion only if the moving party presents [factual] matters or controlling decisions the court overlooked that might materially have influenced its earlier decision," and not simply to "plug gaps in an original argument." Horsehead Resource Development Co., Inc. v. B.U.S. Environmental Services, Inc., 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (citation omitted). Consequently, "Reconsideration will generally only be granted when a party can point to an intervening change of controlling law, the availability of new evidence, or

5

the need to correct a clear error or prevent manifest injustice." S.E.C. v. Packetport.Com, Inc., 2007 WL 1521583 *3 (D.Conn. 2007), *quoting* Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245 (2d Cir. 1992).

Plaintiffs here have not shown or even contended any pertinent change in the law. They offer no new evidence, but instead simply reargue the prior evidence. Their argument of clear error and manifest injustice relies upon gross misapplication of the law of privilege. Plaintiffs thus seek merely to relitigate a discovery issue that was previously handled well in the Court's broad discretion over discovery matters. The motion should thus be denied in its entirety, for reasons summarized as follows.

**A.  The Court Did Not Overlook Controlling and Unchanged Law of Privilege, it Instead Correctly Found That Privilege Was Not at Issue in Ordering that Certain of Plaintiffs' Counsel be Deposed**

Plaintiffs contend that the Court should reconsider its Order because it putatively calls for testimony by counsel and for the production of privileged information. The Court considered and rejected these arguments, and for good reason, as the attorneys to be deposed shall do so in their capacity as fact witnesses, without undue risk of violation of privilege.

**1. Propriety of Attorney Witness Discovery Generally**

The Second Circuit employs "a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *In re* Friedman, 350 F.3d 65, 72. "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work product issues, and the extent of discovery already conducted." *Id.*

6

Application of those factors in this case results in a plain conclusion that the Order was proper. When the investigation is itself at issue, deposition testimony from the attorney fact-witness becomes "highly relevant and necessary." Harding v. Dana Transport, Inc., 914. F.Supp. 1084, 1103 (D. N.J. 1996) (*quoting* Johnston Development Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990); *see also* Jones v. Scientific Colors, Inc., 2001 WL 845650 (N.D. Ill.) (Where the nature and scope of an investigation were at issue, the attorney who instigated an investigation and who "was actively involved in directing the investigation ... in his capacity as investigator, rather than legal adviser, appears to be uniquely qualified to explain the scope of the investigation and its findings").

These general principles regarding discovery from attorney investigators are especially apt in the present case because of the nature of the claims and defenses, and because the Plaintiffs and their counsel intentionally gave central roles in the investigation to the witnesses now sought to be deposed. As noted below, the Order directs discovery that goes both to whether Plaintiffs can make out a case at all, and to whether Defendants can show absolute defenses on the merits, all without calling for privileged testimony.

**2. Need for the Evidence to Defeat Plaintiffs' Affirmative Case**

Full disclosure from the investigators is sought in order to show the absence of essential proof in Plaintiffs' case. Plaintiffs here allege trademark infringement and related claims in violation of 15 U.S.C. §1114. To prevail under §1114, a plaintiff must show that the defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion. *Id.*

7

All of those facts are within the knowledge of the investigators and their supervisors. Defendants believe this testimony will show (1) Defendants' belief that they were acting properly, (2) no actual use in commerce of the trademarks, (3) no sale or distribution of goods or services, and (4) no trademark confusion whatsoever due to pertinent communication by Defendants about the trademarked items being had only with investigators. Such evidence from the investigators would negate essential elements of Plaintiffs' case in chief:

> According to the Second Circuit, in cases of trade-mark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's products in the belief that he is buying the plaintiff's. In the present case, therefore, the Plaintiff's infringement claims are not related to the purchases by [Plaintiff's employee and the paralegal employed by Plaintiff's counsel] because their purchases have nothing to do with Plaintiff's action for infringement since they cannot claim to have been confused as to with whom they were dealing.

Unique Industries, Inc. v. Sui & Sons International Trading Corp., 2007 WL 3378256 *5 (S.D.N.Y.) (internal citation and quotation omitted); *see also* Mattel, Inc. v. Anderson, 2005 WL 1690528 *2 (S.D.N.Y.) ("[the investigator's] purchase has nothing to do with Plaintiff's action for infringement since he cannot claim to have been confused as to with whom he was dealing."); *see also* McBee v. Delica Co., Ltd., 417 F.3d 107, 125 (1st Cir. 2005).

### 3. Need for the Evidence to Support Affirmative Defense of Unclean Hands

The evidence also is pertinent to one of Defendants' properly-asserted affirmative defenses. Unclean hands is a recognized defense to Lanham Act violations. *See* Healthpoint, Ltd. v. Ethex Corp., 273 F. Supp.2d 817, 847 (W.D. Tex. 2001). "The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at

8

issue to the detriment of the other party. The doctrine of unclean hands requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a complaint." Iowa Health System v. Trinity Health Corp., 177 F. Supp.2d 897, 925 (N.D. Iowa 2001) (citation and internal quotation omitted).

The Plaintiffs admit that their investigation of Gilbert and Save the Date involved deceit. Defendants intend to show further that Plaintiffs' deceit was unconscionable and in bad faith. They require testimony from all of the deceitful perpetrators to best make out those claims, testimony which is within the scope of the Order Plaintiffs ask to have reconsidered.

*Unconscionable Deceit*

The boundaries of permissible investigative activity by lawyers or those acting at their direction is narrowly circumscribed to situations where investigators seek to learn about *ongoing misconduct* by engaging in ordinary business transactions with employees, without attempting to trick or elicit damaging statements from them.  See Apple Corps Ltd. v. International Collectors Soc., 15 F. Supp. 2d 456, 475 (D.N.J. 1998); A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 2002 WL 2012618 *3-*4 (S.D.N.Y) ( investigators purchased items from defendant after uncovering substantial evidence that defendant was violating a preliminary injunction against selling infringing products); Cartier v. Symbolix, 454 F. Supp. 2d 175 (S.D.N.Y. 2006) (investigators requested that defendant alter a Cartier watch; defendant had published an newspaper advertisement of an altered Cartier watch); Gidatex v. Campaniello Imports, Ltd., 82 F. Supp. 2d 119, 123-126 (Gidatex determined whether Campaniello was complying with Gidatex's cease and desist letter by using investigators, who posed as ordinary customers and did not trick salespeople into making statements they otherwise would not have made); *see* Ethical Issues Arising From the Investigation of Activities of Intellectual Property Infringers

9

Represented By Counsel, 1 Northwestern Journal of Technology & Intellectual Property 3 (Spring 2003) ("In disputes involving the violation of intellectual property rights, it is common practice to investigate the alleged infringer's activities either after demanding that the infringer cease and desist or after commencement of a lawsuit.").

To do otherwise is to act with deceit outside proper legal bounds. *See* Hill v. Shell Oil Company, 209 F. Supp. 2d 876 (N.D. Ill. 2002) ("Lawyers (and investigators) cannot trick protected employees into doing things or saying things they otherwise would not do or say."); Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., 144 F. Supp. 2d 1147 (D. S.D. 2001) (investigators improperly attempted to elicit damaging admissions); *In re* Ositis, 40 P.3d 500 (Sup.Ct. 2002)(attorney sanctioned for misrepresentation in directing private investigator to pose as journalist and interview party to potential legal dispute); Ethical Issues, 1 Northwestern Journal of Technology & Intellectual Property at 43 ("if an investigator is sent to an infringer's place of business, he should understand that his sole purpose is to behave as an ordinary consumer and not actively attempt to seek admissions… . Investigators must know that their goal is to reveal evidence of the ordinary consumer's experience and not to gather evidence above and beyond that goal.").

The unconscionability of having attorney-directed investigators instigate rather than detect trademark infringement raises questions of counsels' ethics in designing and executing the plan. The NYCLA Committee on Professional Ethics addressed this issue in its Formal Opinion number 737, issued May 23, 2007. In that Opinion, Committee first notes that "it is generally unethical for a non-governmental lawyer to knowingly utilize and/or supervise an investigator who will employ dissemblance in an investigation." The Committee then notes that such conduct may be permissible "in a small number of exceptional circumstances where the

dissemblance by investigators is limited to identity and purpose and involves otherwise unlawful activity undertaken solely for the purpose of gathering evidence." Those "exceptional circumstances" were further defined in pertinent part as follows:

> [A] lawyer supervising investigators who dissemble would be acting unethically unless (i) . . . the investigation is of . . . intellectual property rights <u>and the lawyer believes in good faith that such violation is taking place or will take place imminently</u> . . . ; and (ii) the evidence sought is not reasonably and readily available through other lawful means; and (iii) the lawyer's conduct and the investigator's conduct that the lawyer is supervising do not otherwise violate the New York Lawyer's Code of Professional Responsibility or applicable law; and (iv) the dissemblance does not unlawfully or unethically violate the rights of third parties. These conditions are narrow. . . . <u>In most cases, the ethical bounds of permissible conduct will be limited to situations involving the virtual necessity of non-attorney investigator(s) posing as an ordinary consumer(s)</u> engaged in an otherwise lawful transaction in order to obtain basic information not otherwise available. (emphasis added)

As noted in their Answer, and as amplified in the Declaration submitted herewith, neither Gilbert nor Save the Date offered costumed characters prior to being contacted by Plaintiffs' investigators, whether trademarked by Plaintiffs or not. It simply was not part of their business. The Plaintiffs had no reason to believe that Gilbert or Save the Date were engaged in or about to engage in violations of Plaintiffs' trademarks prior to contact by Plaintiffs' investigators. This is supported by Plaintiffs' documents produced to date, which included nothing to indicate prior infringement by Gilbert or Save the Date, but which show that the investigators were directed to contact hundreds of vendors based solely upon the nature of their businesses, and to inquire whether the business offered costumes, and if so, to inquire whether they offered infringing costumes. Critically, if the target did not offer costumes upon initial contact, the investigators were instructed to attempt to induce the target to offer infringing costumes. This is the opposite of the "narrow" exception carved out for dissemblance that is otherwise plainly unethical.

11

Gilbert and Save the Date seek to depose all of the investigators and their supervisors in order to further evidence their lack of basis to suspect prior violations by those Defendants, and thus to prove that the conduct of Plaintiffs' counsel with respect to them was unethical, and thus to prove that Plaintiffs' claims are barred by the doctrine of unclean hands.

*Bad Faith*

Actions "indicative of bad faith ... include some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." <u>Hudson Motors Partnership v. Crest Leasing Enterprises, Inc.</u>, 845 F.Supp.2d 969, 978 (E.D.N.Y. 1994) (citation omitted). Bad faith may be exhibited by a "pursuit of frivolous contentions" or the "use of oppressive tactics," <u>Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.</u>, 782 F.2d 329, 345 (2d Cir. 1986). In this case, it has been exposed already through limited discovery Plaintiffs had no evidence of misconduct by Save the Date or Gilbert prior to the investigator's contact, and that much of the content of the Complaint was patently without factual basis. Because the claims against Gilbert and Save the Date were manufactured in bad faith, they are nullities.

Defendants contend that Plaintiffs acted with precisely this kind of improper intent and tactics, and they seek to depose all of the pertinent witnesses to support that contention.

**4.      Lack of Attorney Function for Facts Witnesses Ordered to be Deposed**

Plaintiffs caused their attorneys to act as investigators. It was proper for this Court to hold that Plaintiffs should expect their attorneys to be treated as witnesses in subsequent litigation, and consequently, to order such treatment. "When a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be

12

requested." Resqnet.Com, Inc. v. Lansa, Inc., 2004 WL 1627170 *3 (S.D.N.Y.), *quoting* United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 249 (D. Kan. 1995); *see also* Murata Mfg. Co., Ltd. v. Bel Fuse Inc., 2007 WL 1174826 * 2 (S.D.N.Y.) *quoting* United Phosphorus, 164 F.R.D. at 248 ("Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source of discovery by virtue of their license to practice law or their employment by a party to represent them in litigation.").

Such depositions are particularly appropriate when the lawyer fact-witness played a role in an investigation, the nature and scope of which is at issue. *See* OCI Chemical Corp. v. Aon Corp., 2007 WL 3087958 *2 (Conn. Super.) (*citing* Friedman) (granting depositions of counsel who "were integral to the investigation"); Boston Edison Co. v. United States, 75 Fed. Cl. 557 (2007) (permitted fact deposition of lawyer who had served as non-lawyer consultant and was currently serving as member of the legal team); Jones v. Scientific Colors, Inc., 2001 WL 845650 (N.D. Ill.) (deposition of fact-witness attorney permitted)(attorney who instigated and was actively involved in directing investigation was "uniquely qualified "to explain the scope and findings of of investigation).

    **B.**    **The Risk of Encroachment Upon Privilege is Minimal and Curable Without Entry of a Protective Order**

This Court rightly found that the witnesses ordered to be deposed had much evidence to offer that was not subject to protection by any privilege.

To establish attorney-client privilege, "a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining and providing legal advice." OneBeacon Ins. Co. v. Forman Intern., Ltd., 2006 WL 3771010 *4 (S.D.N.Y.) (*quoting* United States v.

Constr. Prod. Research, Inc., 73 F.3d 464 (2d Cir. 1997). "To invoke the work product privilege, a party must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *Id*. (internal citation omitted).[1] The party advancing the privilege has the burden of proof. *In re* Leslie Fay Companies, Inc., Securities Litigation, 161 F.R.D. 274, 281 (S.D.N.Y. 1995) (work product); Nnebe v. Daus, 2007 WL 1310140 *2 (S.D.N.Y.) (attorney-client privilege).

The information sought from the investigators and their supervisors falls outside the scope of those protections. "Investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel." OneBeacon, 2006 WL 3771010 *5 (S.D.N.Y.), *citing*, *inter alia*, Spectrum Syst. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371 (1991) *and* Upjohn Co. v. United States, 449 U.S. 383 (1981). "[I]t is a mistake to translate those entirely legitimate needs for the protection of lawyer-client privileged communications and of lawyers' privileged thought processes into a kind of global protection of lawyers as a privileged class. Privileged documents do not equate to privileged classes of people." qad.inc. v. ALN Associates, Inc., 132 F.R.D. 492, 494 (N.D. Ill. 1990).

Defendants seek the facts of the investigation from these witnesses, not their legal judgments about the case or their intimate conversations with their clients. Plaintiffs cannot hold up privilege as a shield against proper discovery from witnesses that they chose to place in positions where they would be fact witnesses.

---

[1] Plaintiffs cannot properly contend that all documents regarding the investigation were prepared in anticipation of litigation without raising problematic ethical questions regarding their contact with unrepresented parties.

14

To the extent that any issues of privilege may arise during the depositions themselves, Plaintiffs' counsel can object to individual questions, consistent with the normal conduct of any deposition. There is no cause to block all discovery from important fact witnesses when such an obvious limited remedy is available.

### C. Depositions are Needed Because of a Lack of Other Evidence

In response to Save The Date's and Gilbert's requests for document discovery, Plaintiffs produced only fourteen pieces of paper about Save the Date, and none about Gilbert. None of the papers showed any alleged infringement prior to the investigation, and none showed any actual sales or actual trademark confusion. Counsel later confirmed that this constitutes all documentary evidence regarding alleged infringement by those parties. Although we believe these circumstances are, without more, sufficient to obtain dismissal of the claims against those Defendants and sanctions against Plaintiffs and their counsel, we believe further that the requested depositions will be helpful to further establish those conclusions.

### II. PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED

"Fed.R.Civ.P. 26(c) places the burden of showing good cause on the party seeking the protective order. The moving party must show an adequate reason, by a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." <u>Application of Akron Beacon Journal</u>, 1995 WL 234710 *10 (internal quotation marks and citation omitted). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific, and serious injury." <u>In re Terrorist Attacks on September 11, 2001</u>, 454 F. Supp. 2d 220 (S.D.N.Y. 2006)(citation omitted).

15

Here, Plaintiffs have not shown that disclosure will result in a clearly defined, specific, and serious injury. Rather, they get out a broad brush to paint all possible questions that could be put to their lawyers as "privileged." The assertion is plainly wrong as noted above, as there is much these witnesses can properly say that is not protected by any privilege. Any deviation from such areas can be met with objections to particular questions on grounds of privilege, the remedy applied in virtually all other cases.

Plaintiffs' overbroad and conclusory statements of some indefinable harm rely upon their incorrect argument that the investigation process and results are privileged simply because they were conducted by lawyers. The argument is plainly wrong, rendering Plaintiffs without good cause for the requested protective order.

## CONCLUSION

Defendants Save the Date and Gilbert respectfully requests that this Court deny Plaintiffs' motions, and award them their costs and fees incurred in responding to those motions.

Respectfully submitted,

Dated: January 22, 2008

GILBERT AND SAVE THE DATE
By their attorneys,

PINNISI & ANDERSON, LLP

By:   *s/Michael D. Pinnisi*
      Michael D. Pinnisi
      SDNY Bar No. 5075
      111 North Tioga Street, Suite 200
      Ithaca, New York 14850
      Telephone: (607) 257-8000
      Facsimile: (607) 257-0990