UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYONS PARTNERSHIP, L.P. and HIT ENTERTAINMENT, INC.,

                Plaintiffs,

v.

PARTY ART PRODUCTIONS INC., ROBERTA HERMAN, PHILIP HERMAN, PARTY POOPERS, INC., MARLA MASE, 57TH STREET PARTY CORP. D/B/A SAVE THE DATE, JENNIFER GILBERT, THE MAGIC AGENCY INC., SHELLEY CARROLL and ERIC SILVEY D/B/A ERIC SILVEY ENTERTAINMENT,

                Defendants.

Docket No. 07-7121 (LLS)(THK)

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR RECONSIDERATION OF ORDER PERMITTING DEPOSITIONS OF COUNSEL, AND FOR A PROTECTIVE ORDER

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 34th floor
New York, NY 10012
(212) 974-7474

*Attorneys for Plaintiffs Lyons Partnership, L.P.*
*and HIT Entertainment, Inc.*

{A061270.DOC\2}

# INTRODUCTION

In their oppositions to plaintiffs' motions for reconsideration and for a protective order, defendants assert that reconsideration should be denied because the Court somehow already took into consideration all of the factors enumerated by the Second Circuit in *In re Freidman*. Defendants cannot meet the "flexible" approach suggested by *Friedman* and its progeny – cases never cited until this motion and nowhere in any of defendants' four separate submissions did defendants identify a single piece of <u>evidence</u> to justify depositions of opposing counsel despite the Second Circuit's disapproval. Because defendants have studiously avoided taking the depositions of plaintiffs' investigators, they have no testimony about the conduct or results of the investigation, other than their clients' own vague denials, which are mostly couched as general statements by defense counsel, not even client declarations. They rely on rhetoric and conjecture about the investigations to try to convince the Court that plaintiffs' counsel acted improperly. This lack of any such evidence demonstrates that the Court did not, and can not, apply the *Freidman* factors to change course from its "ladder" approach at the Initial Conference and order depositions of plaintiffs' counsel.

Instead, defendants' submissions make obvious their purpose in pursuing such discovery: to avoid discovery into defendants' infringing activities, to invade information and documents protected by the attorney work product doctrine and attorney client privilege, and to use it to try to disqualify plaintiffs' chosen counsel. No impropriety in the investigation has been pled or proven. The evidence disclosed demonstrates defendants' blatant infringement of plaintiffs' intellectual property rights – and that plaintiffs' diligent investigation revealed it. Consequently, the Court should reconsider its December 17, 2007 Order and refuse to permit the deposition of plaintiffs' counsel, or enter a protective order to limit defendants' discovery.

## LEGAL ARGUMENT

I. **DEFENDANTS HAVE NOT ESTABLISHED WHY DEPOSITIONS OF PLAINTIFFS' COUNSEL ARE NECESSARY.**

   A. **Defendants Misinterpret *Friedman*.**

Defendants seize on dicta in *In re Friedman*, 350 F.3d 65, 72 (2d Cir. 2003), stating that Rule 26 requires a "flexible approach" in determining the propriety of depositions of opposing counsel. However, as has been made clear in subsequent cases interpreting *Friedman*, the "flexible approach" requires much more than a party's mere desire to depose opposing counsel. Those cases acknowledge that depositions of counsel are disfavored, and that defendants must establish a specific need for such depositions, because the information cannot be obtained through other witnesses. *See Sea Tow Int'l, Inc. v. Pontin*, __ F.R.D. __, 2007 WL 3409416, at *4 (E.D.N.Y. Nov. 9, 2007) (granting motion to quash because "defendants have not demonstrated a specific need to depose [counsel]" and because "much, if not all, of the information defendants claim to be seeking can be acquired from [defendant] himself and/or representatives of [plaintiff]"); *Patsy's Italian Restaurant, Inc. v. Banas*, 2007 WL 174131, at *3 (E.D.N.Y. Jan. 19, 2007) (granting motion to quash subpoena of opposing counsel for failure to establish a specific need for the deposition); *ResQNet.com, Inc. v. Lansa, Inc.*, 2004 WL 1627170, at *5 (S.D.N.Y. Jul. 21, 2004) ("as [defendant] has not specified particular subjects not already covered by the prior discovery and has not indicated why the information has not been or cannot be obtained through means other than [plaintiff's counsel's] testimony, it has not established the need for [plaintiff's counsel's] deposition ....")

Waving away the result of all these cases, defendants made no showing of specific need to depose plaintiffs' counsel, or that the information they seek cannot be obtained by other means. For example, Mr. Pinnisi generally asserts that attorney depositions are needed

2

"to defeat plaintiffs' affirmative case." Pinnisi Opp. Br., p.7-8. He implies that plaintiffs' attorneys conducted the investigation of his clients. Id. ("Full disclosure **from the investigators** is sought in order to show the absence of essential proof in Plaintiffs' case.")[1] Moreover, the information Mr. Pinnisi claims he will obtain from plaintiffs' "investigators and their supervisors" is information that: 1) is solely in his clients' possession (*e.g.*, "Defendants' belief that they were acting properly")[2]; 2) can be readily determined from the documents produced and from deposing plaintiffs' investigators ("use in commerce of the trademarks")[3]; and/or 3) are within defendants' possession ("no sale or distribution of goods or services"). Lastly, Mr. Pinnisi's assertion that the above attorney testimony could negate essential elements of plaintiffs' case in chief is undercut by the cases cited by Mr. Pinnisi, all of which are wholly distinguishable, as they address whether a plaintiff can rely solely upon an investigator's purchase of an infringing item to establish personal jurisdiction over an out-of-state defendant.

---

[1] Other defendants' counsel falsely assert that plaintiffs' attorneys actually conducted the investigation into defendants' infringements. However, the opposite has been established via the sworn declarations of the investigators, none of whom were attorneys at the time. Defendants' unfounded belief that plaintiffs' attorneys conducted the investigations would have been disproved by deposition testimony months ago, had defendants bothered to take the investigators' depositions in November, as repeatedly offered by plaintiffs and previously ordered by the Court. Defendants' failure to take these depositions (or the depositions of plaintiffs themselves) does not justify depositions of plaintiffs' counsel now. Mr. Pinnisi's assertions in his brief that plaintiffs' counsel must be deposed because of a lack of other evidence to support his defenses is simply inaccurate.

[2] Even if defendants believed they were "acting properly," a defendant's subjective belief regarding the propriety of her actions is no defense to infringement claims. Intent is irrelevant to establish either copyright and trademark infringement. *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963) (noting that infringers, unlike copyright owners, have an opportunity to guard against infringement by diligent inquiry and therefore knowledge and intent is not required for liability); *Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 1996 WL 389266, No. 95 Civ. 4845 (RPP) (S.D.N.Y. Jul. 10, 1996) (noting that because copyright infringement is a strict liability tort, intent is not required); *Proctor & Gamble Co. v. Quality King Distributors, Inc.*, 123 F. Supp. 2d 108, 112-13 (E.D.N.Y. 2000) ("[trademark] registrant need not prove intent in order to succeed on the issue of liability."); *Spotless Enterp., Inc. v. Carlisle Plastics, Inc.*, 56 F. Supp. 2d 274, 277-78 (E.D.N.Y. 1999) (explaining "intent to deceive or bad faith is not an necessary element of a Lanham Act claim" and "The Lanham Act has created a regime of strict liability with regard to false advertising claims.")

[3] Mr. Pinnisi improperly submitted new evidence not before the Court in opposition to plaintiffs' motion for reconsideration. If the Court considers that evidence, it shows that his clients sent plaintiffs' investigator a list of 17 characters (including the trademarked "Bob the Builder") that his clients "can provide", and later sent a picture of the infringing Bob the Builder costume. *See* Pinnisi Decl., Ex. E, pp P0130-P0132. These offers to provide services are clearly uses in commerce justifying liability under the Lanham Act.

3

{A061270.DOC\2}

### B. Depositions of Plaintiffs' Counsel Will Not Support Defendants' Affirmative Defenses.

Likewise, Mr. Adelman, Mr. Ingber and Mr. Pinnisi assert that plaintiffs' counsel's depositions are needed to establish defendants' affirmative defense of "unclean hands." Initially, this alleged "need" does not satisfy *Friedman* because no defendant identifies any facts to be obtained through depositions of plaintiffs' counsel which could establish such a defense.

For example, Mr. Adelman supports his request by conjecturing that it is "Defendants' belief that Plaintiff[s] intentionally administer[] [their] 'policing' of intellectual property rights in a fashion that is based on threatening small business with lawsuits and economic ruin and thereby coercing them into unfair settlements including exploitative settlement payments." Adelman Opp. Br., pp. 6. This speculative "belief" is insufficient to establish an "unclean hands" defense. As explained by the court in *Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999),

> a court may "deny injunctive relief based upon the defense of unclean hands where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith *related to the matter at issue* to the detriment of the other party." *Estate of John Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996). The unclean hands defense does not permit defendants to raise all of plaintiff's alleged inequitable conduct. The alleged unclean hands must relate to Gidatex's *acquisition* or *use* of the Saporiti trademark, and does not apply to issues which are collateral to the infringement action.

*Id.* at 131 (citations omitted) (emphasis in original). Here, defendants have no issue with how plaintiffs' acquired the trademarks and copyrights at issue, nor with plaintiffs' widespread exploitation of their well-known copyrighted and trademarked characters. They identify no resulting harm to defendants from such acquisition or use. The Court should reject defendants' attempts to ground attorney depositions on a baseless unclean hands defense.

4

{A061270.DOC\2}

Seeking to distract the court from the weakness of their defenses, defendants rely on cases where the attorney had acted as an investigator. These cases are wholly distinguishable.[4]

### C. Deposing Plaintiffs' Counsel is Unnecessary to Establish "Unconscionable Deceit."

Mr. Pinnisi next asserts that he needs to take plaintiffs' counsel's depositions to establish a defense of "unconscionable deceit," predicated on the supposed alleged lack of evidence of "ongoing" infringement by defendants before they were investigated. Mr. Pinnisi cites no statutory or case law supporting the existence of alleged defense.[5]

The Lanham Act and Copyright Act do not require a rightsholder to sit idly by waiting to learn about an infringement before enforcing its copyrights and trademarks against an infringer. To the contrary, the Lanham Act requires owners to ensure their marks do not lose their distinctiveness. This is especially true with counterfeit goods, where infringers take great pains to hide their infringing activities, which are especially difficult to observe except via undercover investigations.

---

[4] Mr. Pinnisi's cases - In *OCI Chemical Corp. v. AON Corp.*, 2007 WL 3087958 (Conn. Super. Ct. Oct. 3, 2007), the court permitted plaintiff's attorney to be deposed because he actually took part in the investigation at issue, including personal contact with defendants regarding the insurance policy at issue and involvement in handling relevant insurance claims. None of those facts are present here. In *Boston Edison Co. v. United States*, 75 Fed. Cl. 557 (2007), the court permitted the deposition of plaintiff's counsel where he was a former employee of plaintiff and, during that employment, had assisted in drafting the agreement at issue. No such direct attorney involvement is present here. In *Jones v. Scientific Colors, Inc.*, 2001 WL 845650 (N.D.Ill. July 26, 2001), the Court ordered defendant's attorney in a racial harassment case to be deposed on a limited basis because the defendant employer raised an affirmative defense of reasonableness, which necessarily "placed the nature and scope of the [employer's] investigation in issue." *Id.* at *1. Much though defendants have wished to escalate discovery to encompass other defendants, the Court has steadfastly refused to permit such distraction. Defendants have not challenged that ruling. Likewise, the Court should reject Mr. Adelman's reliance on Fudruckers, Inc. v. Doc's B.R. Others, Inc., 826 F. 2d 837 (9th Cir. 1987), a false advertising case where plaintiff did not establish any likelihood of confusion, and entrapment was even discussed.

[5] Our research revealed no cases establishing such a defense, and Mr. Pinnisi cites none. If Mr. Pinnisi is attempting to assert an "inequitable conduct" defense, he cannot do so because such a defense must be plead with particularity and is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See ResQNet*, 2004 WL 1627170, at *4-5 (rejecting attorney deposition where defendant failed to specifically plead inequitable conduct). Save the Date's Answer does not even plead this defense.

5

{A061270.DOC\2}

Nor do these statutes require plaintiffs to abstain from investigating when they learn of the existence and geographic location of ongoing infringements. For example, it is common practice for cable television or pay-per-view providers to employ investigators to randomly visit bars and restaurants in order to determine whether such businesses are illegally receiving pay-per-view signals and/or broadcasting pay-per-view events without a proper license. See Kingvision Pay-Per-View, Ltd. v. Echeverria, 2007 WL 595025 (E.D.N.Y. Feb. 22, 2007) (explaining that auditors were given a list of customers who subscribed to the pay-per-view event legally, and randomly investigated other businesses to see if they were legally airing the event as well). As pay-per-view events are one-time-only affairs, it would be impossible to discover whether businesses are broadcasting the pay-per-view event illegally unless the rightsholder takes affirmative action to discover infringements. Moreover, a rightsholder would be hamstrung if it had to catch a specific infringer twice before being able to assert its claims in court. Neither the Lanham Act, Copyright Act nor public policy places such restrictions on rightsholders.

Given the Southern District's clear approval of the use of undercover investigators to investigate intellectual property infringements, and its determination that such investigations do not violate New York Ethical Rules, Mr. Pinnisi's citation to case law from other districts is plainly inapplicable to this case.[6] In short, as defendants cannot articulate any specific need for the depositions of plaintiffs' counsel, the Court acted improperly in granting such depositions to defendants.

---

[6] Both *Hill v. Shell Oil Co.*, 209 F. Supp. 2d 876 (N.D. Ill. 2002) and *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147 (D. S. D. 2001), are irrelevant for another reason too - both involve instances of investigators attempting to elicit statements from represented parties after litigation had commenced. There are no such allegations here.

6

{A061270.DOC\2}

## II. THE HARDSHIP TO PLAINTIFFS IN DEPOSING THEIR COUNSEL FAR OUTWEIGHS ANY PREJUDICE TO DEFENDANTS

The Second Circuit confirmed in *Friedman* that the main consideration in determining whether to allow depositions of opposing counsel is "whether the proposed deposition would entail an inappropriate burden or hardship." 350 F.3d at 72. It is clear that its depositions of attorneys would prejudice and harm plaintiffs. There is no potential prejudice to defendants if they cannot take such depositions.

Defendants' oppositions are based upon their speculation that some aspect of plaintiffs' investigation is unethical. Yet, even if the Court were to find an violation of New York's disciplinary rules, that is not a defense. At best, defendants could seek disqualification of this firm as plaintiffs' counsel.[7] Because others' unethical behavior is no defense to liability, defendants are not entitled to discovery based on their speculations. The only reason they seek

---

[7] "[B]ecause dismissal denies the party access to justice, if the party has a valid claim, dismissal would, in the case of attorney misconduct…amount to a windfall to an adversary to be resorted to only when necessary to preserve the integrity of the judicial system, or in similar extreme circumstances." *Litton Systems, Inc. v. American Tel. and Tel. Co.*, 700 F.2d 785, 828 (2d Cir. 1983), *cert. denied*, 464 U.S. 1073 (1984). "The sins of counsel should not be visited upon his client so as to vitiate the latter's cause of action." *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976). *See e.g., id.* at 676-77 (violation of DR 7-104 did not warrant dismissal of action); *Cosgrove v. Sears Roebuck & Co.*, 1987 WL 33595 (S.D.N.Y. Dec. 21, 1987) (violation of DR 7-109 did not warrant dismissal of action). Moreover, even if defendants can establish that plaintiffs obtained their evidence in violation of New York's ethical rules:

> The Second Circuit Court of Appeals has ruled that a Court is not obligated to exclude evidence even if it finds that counsel obtained the evidence by violating ethical rules. See United States v. Hammad, 858 F.2d 834, 837 (2d Cir. 1988) (discouraging suppression of evidence to punish unethical conduct of prosecutor). Likewise, New York State courts will admit evidence procured by unethical conduct or unlawful means in violation of the NYSBA Code of Professional Responsibility.

*Gidatex*, 82 F. Supp. 2d at 126 (ruling "remedy of preclusion [of evidence of infringement obtained via undercover investigators] would not serve the public interest or promote the goals of the disciplinary rules")

Likewise, dismissal under Rule 11 is unlikely because it "is the harshest sanction available to a district court and should thus be imposed only in extreme circumstances …. [and only] when [the court] is sure of the impotence of lesser sanctions." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y. 2003) (citations, quotations omitted). Here, the Court has not even permitted Mr. Ingber's Rule 11 motion to be filed. Because Rule 11 motions are typically decided at the end of the proceedings, it was premature and improper to order depositions of plaintiffs' counsel based upon a contemplated Rule 11 motion.

such depositions of plaintiffs' counsel is to try to invade information protected by the attorney work product doctrine and/or attorney client privilege, to gain an unfair tactical advantage in the litigation, and to try to disqualify plaintiffs' counsel, presumably in the hopes that plaintiffs will dismiss their claim if plaintiffs' counsel no longer represents them.[8] This escalation of discovery to encompass imagined ethical violations is thus designed to harass and burden plaintiffs, costing them time and money. It cannot reveal evidence supporting any pleaded defense.

In contrast, defendants have not offered any evidence of prejudice that would result from the reconsideration of the Court's December 17, 2007 Order. This case was filed in August, but sadly, discovery is still in its earliest stages. Defendants' counsel have chosen not to depose the investigators, instead shrilly demanding only depositions of plaintiffs' counsel. Defendants have not exhausted all other avenues to obtain whatever information they believe they will obtain from plaintiffs' counsel. In sum, because defendants seeking the depositions of plaintiffs' counsel for an improper purpose (to disqualify counsel, as opposed to any legal defenses), they cannot be prejudiced by the Court's reconsideration of the December 17, 2007 Order.

Finally, defendants assert without citing cases that plaintiffs' somehow waived their objections to the Court's December 17, 2007 Order by failing to make further objections at the November 26 and December 14, 2007 conferences, although the Court made plain those days that it would issue a written order forthwith.[9] However, the record of the December 14, 2007 Conference, attached as Exhibit A to Attorney Brian Greenfield's Declaration, shows that

---

[8] Defendants' strategy herein is the very reason why motions to disqualify counsel under DR 5-102 are subject to strict scrutiny because of the "strong potential for abuse." *Shabbir v. Pakistan International Airlines*, 443 F.Supp.2d 299, 308 (E.D.N.Y. 2005) (quoting *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 667 (S.D.N.Y. 1995)).

[9] At the November 26, 2007 conference, the Court tasked defendants with preparing the written order memorializing the Court's decisions. Defendants' attempted to use this opportunity to expand the scope of discovery. Absent an agreed order, the Court scheduled the December 9, 2007 conference to resolve those issues. Therefore, plaintiffs could not have objected until December 17th, when there actually was a written order entered on the docket.

plaintiffs made their objections known. It was clear that the Court had made its decision that it was permitting the depositions of plaintiffs' counsel and was not going to be swayed absent briefing for reconsideration of legal issues. The Court's sole reason for ordering depositions was because the Court previously determined at the Initial Conference that depositions were the Court's preferred form of discovery, not because defendants had shown the necessity of such depositions or established any of the other *Friedman* factors. Further oral objections would have been counterproductive; consequently, plaintiffs waited to brief the issue on reconsideration of the written order.

In short, defendants' request to depose plaintiffs' counsel is premature, unsubstantiated, and contrary to the law briefed herein. The Court should reconsider its December 17, 2007 Order and preclude defendants from taking the depositions of plaintiffs' counsel.

### III.   A PROTECTIVE ORDER IS NECESSARY IN THIS CASE

Defendants argue that it is premature for the Court to enter a protective order limiting the scope of discovery of plaintiffs' investigators and plaintiffs' counsel (to the extent that the Court continues to permit such discovery). Moreover, Mr. Pinnisi claims that specific examples of harm need to be shown in order to justify a protective order. However, defendants herein have provided numerous specific examples over the course of this litigation which demonstrate that Court should set limits prior to discovery.

The most egregious example is Mr. Pinnisi's recent publication of confidential documents subject to Court Order on the public docket. While he was properly apologetic after the Court ordered the documents immediately removed and filed under seal, Mr. Pinnisi was flippant in his correspondence with counsel and failed to make any efforts to correct his error in filing confidential documents on the public docket. Plaintiffs thus are skeptical of his

9


generalized assurances that he will avoid privileged and protected subject matter, if allowed to depose plaintiffs' attorneys and investigators.[10] In fact, Mr. Pinnisi has on numerous occasions voiced his intent to question plaintiffs' counsel regarding several issues covered under the attorney-client privilege or the work product doctrine. The same can be said for Mr. Ingber, who snuck the name of attorney Mason Weisz in as a person to be deposed in his proposed discovery order, even though Mr. Weisz's name had not been discussed during the November 26 conference. Kaplan Dec., ¶ 51, Ex. 26. Defendants have repeatedly tried to expand the scope of the Court's discovery orders. It is clear that counsel for defendants do not want any specific guidelines issued, so they can subsequently claim ignorance or inapplicability.

Unless a protective order is in place limiting the scope of defendants' discovery, plaintiffs have no doubt that defendants will continue to seek discovery beyond that which the Court has permitted, resulting in more letters to the Court, more conferences requiring appearances, and more time and expense to plaintiffs. Defendants argue that plaintiffs can object during the depositions, but plaintiffs have no doubt that defendants will pepper plaintiffs' witnesses with improper questions to elicit objections, which defendants will then bring to the Court to paint plaintiffs as trying to hide evidence. Setting the ground rules now would streamline proceedings and avoid wasteful applications to the Court; thus, a protective order should be entered.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court reconsider and vacate its December 17, 2007 Order directing plaintiffs to produce Ralph J. Sutton, Esq.,

---

[10] Notwithstanding the fact that he did not believe he did anything wrong, Mr. Pinnisi asserted that he knew of no way to have something taken off of the docket that was filed improperly. Mr. Pinnisi did not even attempt to call the Court or the Clerk's Office to try to have the documents removed, which is a standard procedure.

{A061270.DOC\2}

Lisa K. Digernes, Esq. and Mason A. Weisz, Esq. for deposition and enter the above-described protective order.

Dated  New York, New York
       January 28, 2008

                                          COWAN, DeBAETS, ABRAHAMS &
                                          SHEPPARD, LLP

                                          By: _____
                                              Toby M.J. Butterfield
                                             Matthew A. Kaplan
                                        41 Madison Avenue- 34th Floor
                                        New York, New York 10010
                                        Tel:  (212) 974-7474
                                        *Attorneys for Plaintiffs*
                                        *Lyons Partnership, L.P., et al.*

**PROOF OF SERVICE**

Deborah Mays, being duly sworn, deposes and states as follows:

1. The statements made herein are true of my own personal knowledge. If called upon to testify, I could and would testify competently thereto.

2. I am employed in the County of New York, State of New York. I am over the age of 18 and not a party to the within action; my business address is 41 Madison Avenue, 34th Floor, New York, New York 10014.

3. On January 28, 2008, I caused to be served **by ECF**, the attached **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR RECONSIDERATION OF ORDER PERMITTING DEPOSITIONS OF COUNSEL, AND FOR A PROTECTIVE ORDER**, addressed as follows:

>Brian J. Greenfield, Esq.
>Greenfield, Pusateri & Ruhl
>626 Rexcorp Plaza
>Uniondale, NY 11516
>E-mail: brian.greenfield@gprlaw.com
>
>Mark J. Ingber, Esq.
>Ingber & Gelber, LLP
>181 Millburn Ave
>Millburn, NJ 07041
>E-mail: ingber.law@verizon.net
>
>Gary Adelman, Esq.
>Robinson Brog Leinwand Greene Genovese & Gluck, P.C.
>1345 Avenue of the Americas, 31st Floor
>New York, New York 10150
>E-mail: gpa@robinsonbrog.com
>
>and
>
>Michael D. Pinnisi, Esq.
>Pinnisi & Anderson, LLP
>11 North Tioga Street, Suite 200
>Ithaca, NY 14850
>E-mail: mpinnisi@pinnisianderson.com

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at New York, New York on this 28th day of January, 2008.

*/s/ Deborah Mays*
DEBORAH MAYS

{A061275.DOC\1}